# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

FILED

2026 MAY 27 PM 12: 51

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TH

KEVIN M. DONOVAN,

Plaintiff,

v.

Case No. 3:26-cv-0700

BENT CREEK HOMEOWNERS ASSOCIATION, INC.; TIMMONS PROPERTIES, INC.; KAMAN & CUSIMANO, LLC; LYNN BURKA, individually and as agent of Timmons Properties; ROBERT STEVE CODY, individually and as President of the Board; JEREMY EDGE, individually and as Board Member; DAVID RAISSI, individually and as Board Member; JARED BURKE, individually and as Board Member; MELISSA PLANK, individually and as Vice President; SUSANNAH MILLAR, individually and as Secretary; TIM BARRY, individually and as Board Member; SCOTT D. WEISS, individually and as agent of K&C; KIEL KOVALCIK, individually and as agent of K&C; DANIEL J. MISKE, individually and as agent of K&C; HEIDI NATHAN, individually

Defendants.

**JURY TRIAL DEMANDED**

# COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

## I. INTRODUCTION

**1.** Plaintiff Kevin M. Donovan ("Plaintiff" or "Donovan"), by and through this Complaint, brings this action against the above-named Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104 et seq.; and various common law causes of action arising from a campaign to impose unauthorized fines, escalate enforcement actions, and retaliate against Plaintiff through the instrumentalities of a homeowners association.

**2.** This action arises from a campaign by the Bent Creek Homeowners Association ("HOA"), its Board of Directors, its management company Timmons Properties, Inc. ("Timmons"), and its legal counsel Kaman & Cusimano, LLC ("K&C"), to target Plaintiff and his family through: (a) the imposition of fines without any provision in the recorded CC&Rs or the twenty-five recorded amendments authorizing such fines (Exhibit A); (b) systematic misuse and diversion of HOA reserve funds; (c) retaliatory enforcement actions after Plaintiff exercised his rights to request reasonable accommodations and to inspect HOA records; (d) public defamation accusing Plaintiff of being a "perpetrator" of stalking and threats; (e) directing law enforcement to Plaintiff's residence; (f) republication of defamatory statements to the broader community.

**3.** Plaintiff seeks compensatory damages, treble damages under RICO, statutory damages, punitive damages, injunctive relief, declaratory relief, and attorneys' fees and costs.

## II. PARTIES

### A. Plaintiff

4. Plaintiff Kevin M. Donovan is a natural person, an attorney licensed in the State of Michigan (Bar No. P79530), and a resident and homeowner at 6008 Christmas Drive, Nolensville, Tennessee 37135, within the Bent Creek subdivision. Plaintiff resides at the property with his wife and three children, two of whom are minors. Plaintiff is a person with a disability as defined under the Fair Housing Act, 42 U.S.C. § 3602(h).

### B. Defendants

5. Defendant Bent Creek Homeowners Association, Inc. ("the HOA" or "Bent Creek HOA") is a Tennessee nonprofit corporation organized under the Tennessee Nonprofit Corporation Act, Tenn. Code Ann. § 48-51-101 et seq., with its principal office located at the offices of Timmons Properties in Nashville, Davidson County, Tennessee. The HOA governs the Bent Creek residential subdivision located in Nolensville, Williamson County, Tennessee.

6. Defendant Timmons Properties, Inc. ("Timmons") is a Tennessee corporation with its principal office in Nashville, Davidson County, Tennessee. Timmons has served as the property management company for the Bent Creek HOA since approximately 2023, managing day-to-day operations including violation enforcement, fine issuance, and financial management through the Vantaca portal system.

7. Defendant Kaman & Cusimano, LLC ("K&C") is a law firm organized under the laws of Ohio, with offices in Ohio, Kentucky, Wisconsin, and Tennessee. K&C serves as legal counsel to the Bent Creek HOA and regularly engages in the business of collecting assessments and fines

on behalf of community associations, including sending collection letters and threatening legal action for disputed fines against Plaintiff and other Bent Creek homeowners, without holding a Tennessee Collection Service license as required by Tenn. Code Ann. § 62-20-101 et seq.

8. Defendant Lynn Burka ("Burka") is a natural person who serves as President and Managing Partner of Timmons Properties, Inc. Burka is named individually and in her capacity as agent of Timmons. Burka authored the materially false statement that Plaintiff's disability disclosure was "the first instance" of such a claim, imposed a sidewalk restriction on Plaintiff during the accommodation process, and directed continued enforcement after notice of falsity.

9. Defendant Robert Steve Cody ("Cody") is a natural person who serves as President of the Bent Creek HOA Board of Directors. Cody resides in the Bent Creek subdivision. Cody is named individually and in his capacity as a fiduciary of the HOA.

10. Defendant Jeremy Edge ("Edge") is a natural person who serves as a member of the Bent Creek HOA Board of Directors. Edge resides in the Bent Creek subdivision. Edge is named individually and in his capacity as a fiduciary of the HOA. Edge has publicly posted statements on social media defaming Plaintiff and directing the expenditure of HOA funds for personal security.

11. Defendants David Raissi, Jared Burke, Melissa Plank, Susannah Millar, and Tim Barry are natural persons who serve or have served as members of the Bent Creek HOA Board of Directors. Each is named individually and in their capacity as fiduciaries of the HOA.

12. Defendant Scott D. Weiss ("Weiss") is a natural person and attorney associated with K&C (BPR No. 020552). Weiss has participated in the collection and enforcement actions against Plaintiff, including acknowledging receipt of Plaintiff's physician documentation on July 28,

2025, then rejecting it as "insufficient" without specifying what additional documentation would satisfy the request.

**13.** Defendant Kiel Kovalcik ("Kovalcik") is a natural person and attorney associated with K&C. Kovalcik has participated in the collection and enforcement actions against Plaintiff.

**14.** Defendant Daniel J. Miske ("Miske") is a natural person and attorney associated with K&C (Wisconsin Bar No. 1010608). Miske is named individually and as agent of K&C. Miske filed a bar complaint against Plaintiff with the Michigan Attorney Grievance Commission on July 10, 2025. The Michigan Attorney Grievance Commission dismissed the bar complaint forty-nine days after filing, on August 28, 2025 (AGC File 25-1797). The filing of the complaint occurred after Plaintiff engaged in protected activity under the Fair Housing Act.

**15.** Defendant Heidi Nathan ("Nathan") is a natural person who serves as administrator of the Bent Creek Neighborhood Facebook group, which has approximately 1,300 members. Nathan is named individually. Nathan republished defamatory content originating from Timmons' enforcement communications to the community group, added her own commentary, and banned Plaintiff from the group, preventing him from responding to the defamatory statements.

### III. JURISDICTION AND VENUE

**16.** This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims arising under RICO (18 U.S.C. §§ 1961–1968), the Fair Housing Act (42 U.S.C. §§ 3601–3619), and the FDCPA (15 U.S.C. § 1692 et seq.).

**17.** This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, which arise from the same case or controversy as the federal claims.

**18.** This Court has jurisdiction under 42 U.S.C. § 3613(a)(1)(A), which provides that an aggrieved person may commence a civil action in an appropriate United States district court to obtain appropriate relief with respect to a discriminatory housing practice.

**19.** Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Williamson County, Tennessee, within the Middle District of Tennessee, and because Defendants Bent Creek HOA, Timmons, Cody, Edge, and other individual Defendants reside or conduct business in this district.

**20.** This Court has personal jurisdiction over each Defendant. Defendants Bent Creek HOA, Cody, Edge, Raissi, Burke, Plank, Millar, and Barry reside in or operate within this District and directed enforcement actions, fines, communications, and common-area restrictions at Plaintiff's property in Williamson County, Tennessee. Defendants Timmons Properties, Inc. and Burka maintain their principal place of business in Davidson County, Tennessee, and conducted daily management, violation enforcement, portal charges, and accommodation processing directed at properties within this District. Defendants Kaman & Cusimano, LLC, Weiss, and Kovalcik purposefully availed themselves of this forum by repeatedly transmitting collection demands, enforcement notices, and the July 28, 2025 rejection of Plaintiff's physician documentation into this District on behalf of their Tennessee client. Defendant Miske purposefully directed conduct at Plaintiff, a resident of this District, by filing a bar complaint against him in Michigan on July 10, 2025, in retaliation for FHA-protected activity occurring in Tennessee; the effects of that conduct were felt in this District. See *Burger King Corp v. Rudzewicz*, 471 U.S. 462 (1985); *Calder v Jones*, 465 U.S. 783 (1984).

## IV. FACTUAL ALLEGATIONS

### A. Background

**21.** Plaintiff purchased his home at 6008 Christmas Drive in the Bent Creek subdivision in Nolensville, Tennessee. The Bent Creek subdivision is governed by Covenants, Conditions, and Restrictions ("CC&Rs") and is managed by the HOA through its Board of Directors.

**22.** Plaintiff resides at the property with his wife and three children, two of whom are minors.

**23.** Plaintiff suffers from a qualifying disability under the Fair Housing Act. As documented in a Supplementary Attending Physician's Statement dated July 21, 2025, completed by Dr. Justin Dearing, D.C. (License No. 2528), Plaintiff has been diagnosed with post-viral fatigue, auto-immune neurological dysfunction, and endocrine and post-viral reactivations. Plaintiff has been disabled since March 18, 2025. These conditions affect Plaintiff's mobility, pace, energy level, and capacity to perform physical tasks, including the exterior property maintenance demanded by the HOA within compressed timeframes. Plaintiff requires the reasonable accommodation of additional time to cure exterior violations. (Exhibit L.)

**24.** In approximately 2023, the HOA engaged Timmons Properties, Inc. as its property management company and Kaman & Cusimano, LLC as its legal counsel.

### B. The Unauthorized Fining Practices

**25.** Prior to Timmons assuming management of the HOA, fining revenue at Bent Creek was minimal. HOA financial records show the following fining revenue trajectory: $230 in 2021; $110 in 2022; $6,620 in 2023 (the first year under Timmons management); $8,520 in 2024; and $9,980 in 2025. (Exhibits A, B, C.)

**26.** The increase in fining revenue coincided precisely with the engagement of Timmons as management company and K&C as legal counsel. Neither the HOA's annual budgets for 2023, 2024, nor 2025 included any line item for fining revenue, indicating that the fining program was not authorized through the normal budgetary process.

**27.** Fines were issued through a systematic process in which Timmons property manager Kaley Vaughn would send violation notices with a uniform 10-day cure period, followed by escalating fines of $50, $100, and $150 per the Fine Policy, followed by referral to K&C for collection. This process was applied to Plaintiff and to other homeowners selectively. Specifically, homeowner Joanna Wright experienced enforcement disputes regarding common-area drainage damage to her property and a forced ten-day exterior repaint directive from Defendants Cody and Edge; homeowner Jaime Reiter, an attorney, was subjected to enforcement over a trampoline canopy and publicly identified that the Association lacked fining authority; and homeowner Rebekah Bartlett's husband's employer was contacted by the HOA over the parking of a work truck in the family's own driveway. The basis for these allegations includes Plaintiff's contemporaneous review of HOA financial records, witness statements from these homeowners, and HOA enforcement correspondence reviewed by Plaintiff; Plaintiff expects to develop the full pattern through discovery of board records and Timmons' enforcement files, which are peculiarly within Defendants' control.

**28.** The Bent Creek HOA is organized as a Tennessee nonprofit corporation under Tenn. Code Ann. § 48-51-101 et seq. A complete review of the CC&Rs and all twenty-five recorded amendments reveals that the governing documents contain no provision authorizing the imposition of monetary fines against homeowners. (Exhibit A.) The CC&Rs authorize only: (a) liens for unpaid assessments; (b) injunctive relief; and (c) regular and special assessments. The

Fine Policy adopted by the Board in September 2022 and revised in June 2025 (Exhibits B, C) claims authority under Tenn. Code Ann. § 48-53-102, but that statute enumerates the general powers of nonprofit corporations and does not include the power to impose fines on members. The fines imposed on Plaintiff and other homeowners are therefore ultra vires and void. On information and belief, the HOA's former legal counsel, Mary Beth Hagen, advised the Board that the Association lacked authority to impose fines under the governing documents, and the Board subsequently terminated her engagement. This allegation, pleaded on information and belief, rests on statements made by former board officials present at meetings where fining authority was discussed, and is corroborated by the Board's termination of that counsel shortly after such concerns were raised; both the underlying advice and the termination minutes are matters peculiarly within Defendants' control, and Plaintiff expects to confirm the substance of this allegation through discovery of board minutes and related communications.

**29.** Even if the CC&Rs purported to authorize fines, fundamental due process principles and the HOA's own Fine Policy require that before any fine may be imposed, the homeowner must receive notice of the alleged violation and an opportunity to be heard before the Board. The HOA failed to provide Plaintiff with any hearing prior to imposing fines. Appeals were processed by Timmons through a paper form, not through a hearing before the Board. The Fine Policy itself prescribes a hearing procedure that was never followed. The challenged fining practices were not unique to Plaintiff but were applied to other homeowners within the community, demonstrating that the conduct was systemic rather than isolated.

## C. Financial Irregularities and Reserve Fund Misuse and Diversion

**30.** Analysis of the HOA's financial statements from 2021 through 2025 reveals significant financial irregularities, including systematic operating budget overruns, unauthorized expenditures, and reserve fund depletion.

**31.** The HOA's reserve fund declined from $1,333,728 in December 2021 to approximately $955,748 in December 2025, a net decline of $377,980 (28.3%). The unallocated reserve specifically declined from $543,728 to $181,248, a loss of 66.7%. (Exhibit F.)

**32.** Significant unauthorized expenditures from reserve funds include: Contractor Renovation (Falling Water Entrance) of $159,522 in 2024; One-Time Capital Expenses of $107,385 in 2025 (not budgeted); Tree Removal of $56,640 in 2025 versus a $7,500 budget (655% over budget); Landscaping of $112,801 in 2022 versus a $10,000 budget (1,028% over budget); Pest Control of $75,580 in 2023 (not budgeted); and Pool Furniture of $39,899 in 2023 (not budgeted).

**33.** On June 1, 2025, Defendant Jeremy Edge, in his capacity as a Bent Creek HOA Board member, publicly admitted in a post on the Bent Creek Neighborhood -Uncensored- Facebook group (Exhibit Q) that the Falling Water Entrance project was completed in three phases at a total cost of approximately $230,000. Edge described the phases as follows: (i) removal of the existing entrance monument and replacement of pavement, approximately $60,000; (ii) construction of a new entrance monument and installation of electrical systems, approximately $40,000; and (iii) construction of a new sitting area with landscaping (including trees, plants, flower beds), lighting, and irrigation, approximately $130,000, including engineering and architectural drawings. Edge further admitted that the project's design and construction commenced over seven years prior to the post, that approval was obtained from the Nolensville

Planning Commission, and that the project was rebid due to issues with the contract and engineer. The HOA's 2023 Reserve Study (Exhibit T) defines reserves as funds for "repair or replace" of existing reserve components only. The Reserve Study budgets the "Signage, Renovation, Entrance Monuments" reserve component at line items totaling approximately $73,000 across its outlook for the renovation of existing entrance monuments. The Falling Water Entrance project, as described by Edge, includes elements that exceed both the budget and the scope of any reserve component identified in the Reserve Study. In particular, Phase 3 of the project — which Edge himself described as the construction of "a sitting area, landscaping including trees, plants, flower beds, lighting, and irrigation" at a cost of approximately $130,000 — is not the "repair or replace" of an existing reserve component but rather the construction of a new common-area amenity that did not previously exist. A sitting area, new landscaping, new lighting, and new irrigation are not within the scope of the "Signage, Renovation, Entrance Monuments" reserve component. The remainder of the project — including the installation of two new monuments where the prior entrance had only one — further exceeds both the budget and the scope of any reserve component identified in the Reserve Study. The Association's 2024 Year-End Financial Statement (Exhibit F4) confirms that approximately $159,521 of the project was expended in 2024 and posted to "UNAPPROP. RESERVE — Task I Fee — Falling Water Entrance," with additional Falling Water-related expenditures continuing into 2025 (Exhibit F5). Plaintiff publicly questioned the propriety of the project on the same Facebook thread, asking where the project was listed in meeting minutes, who voted for it, where the bids were, and how it was approved to come out of reserve funds when it was not an existing project (Exhibit Q).

**34.** The HOA's Reserve Study (Exhibit T), last commissioned November 1, 2023, expressly recommends that the Board "budget for an Update to this Reserve Study in two- to three years."

More than two years have elapsed since the Reserve Study was issued, and Defendants have not commissioned an updated study. When an update is eventually performed, the depleted reserve fund will likely trigger a special assessment against all homeowners to replenish the reserves, directly harming all 700+ Bent Creek homeowners.

**35.** Operating expenses exceeded budget by a total of $316,103 across the 2021–2025 period: $16,242 in 2021; $105,994 in 2022, $102,209 in 2023 (11 months); $71,973 in 2024; and $19,685 in 2025. No board meeting minutes or vote records have been produced for any of these overruns. Such records are peculiarly within Defendants' control and are expected to be produced in discovery.

**D. The "First Instance" Lie and Prior Disability Disclosures**

**36.** On May 19, 2025, Defendant Burka transmitted a written communication to Plaintiff stating: "This is the first instance in which you've mentioned a disability or need for accommodation." (Exhibit E.) This statement was demonstrably false. Plaintiff had disclosed his disability or health-related limitations to the HOA and/or Timmons on at least five prior occasions:

(a) On or about January 2025, Plaintiff reported health issues through the Vantaca portal system. Timmons property manager Kaley Vaughn verbally acknowledged receipt of this disclosure and told Plaintiff he was "being monitored."

(b) On February 28, 2025, Plaintiff emailed Timmons stating: "We were sick and haven't been able to get the part." (Exhibit D, p. 11.)

(c) On March 27, 2025, Plaintiff emailed Timmons stating: "I've been dealing with health issues and am preparing to sell my house." (Exhibit D, p. 18.)

(d) On March 28, 2025, Plaintiff emailed Timmons stating: "I was really sick when this was going on and have had some lingering issues since." (Exhibit D, p. 22.)

(e) On April 30, 2025, Plaintiff emailed Timmons stating: "I am currently off work with disability. I'll pay this when I have the means." (Exhibit D, p. 28.)

**37.** Despite these five documented prior disclosures, Defendant Burka stated on May 19, 2025 that Plaintiff's disability claim was the "first instance" of such disclosure. Burka repeated this false characterization on May 29, 2025. These statements were made to justify delaying the interactive accommodation process, to continue enforcement of fines during the pendency of the accommodation request, and to impose a restriction prohibiting Plaintiff from "walking past [Board members'] homes and standing on the sidewalk" within the community. (Exhibit E.)

## E. Retaliation Against Plaintiff

**38.** After Plaintiff submitted written requests for reasonable accommodation through Timmons' own accommodation form, requesting additional time to cure exterior violations due to his disability, the Defendants escalated their enforcement actions rather than engaging in the interactive accommodation process required by law.

**39.** On June 1, 2025, Plaintiff submitted a formal written accommodation request to Timmons. (Exhibit G.) Rather than engaging in the interactive process, Defendants referred the matter to K&C for legal escalation.

**40.** On July 21, 2025, Plaintiff obtained a Supplementary Attending Physician's Statement from Dr. Justin Dearing documenting his disability, diagnosis, and functional limitations. (Exhibit L.)

13

On July 24, 2025, Plaintiff hand-delivered the physician statement to K&C's office. Vicki Thomas, K&C's Office Manager, signed a receipt confirming delivery. (Exhibit M.)

**41.** On July 28, 2025, Defendant Weiss acknowledged receipt of the physician statement by email but rejected it as "insufficient" without specifying what additional documentation would be required or engaging in any interactive process to determine appropriate accommodation.

**42.** On July 10, 2025, Defendant Miske filed a bar complaint against Plaintiff with the Michigan Attorney Grievance Commission. The complaint was dismissed forty-nine days after filing, on August 28, 2025 (AGC File 25-1797). (Exhibit N.) The filing of this bar complaint constituted retaliation for Plaintiff's exercise of protected rights under the Fair Housing Act, including requesting reasonable accommodation and challenging the HOA's enforcement practices.

**43.** On May 19, 2025, Defendant Burka directed Plaintiff to "cease and desist from all direct and indirect contact with the Bent Creek HOA Board members," including "walking past their homes and standing on the sidewalk staring at their house." (Exhibit E.) This restriction barred Plaintiff from using public sidewalks in his own community—common areas maintained by the HOA using homeowner dues that Plaintiff pays—and was imposed on the same day as the false "first instance" statement.

**44.** On June 17, 2025, Board member Jeremy Edge posted publicly on the Bent Creek Neighborhood -Uncensored- Facebook group: "At a significant cost, the Board has elected to hire security for the pool. This comes after a multitude of incidents, resident complaints, and significant amounts of poor behavior from unsupervised children. Issues can now be handled in real time and with urgency and immediacy." On information and belief, this expenditure targeted Plaintiff. (Exhibit Q.)

**45.** On June 23, 2025, Edge escalated by writing in the same Facebook group: "Maybe if residents dont threaten, stalk, and harass, this won't be an issue. You don't care that board members and their families are suffering, are frightened, and their children are scared." In the same thread, Edge wrote: "we are looking at serious threats, stalking, attempts to engage with my children from the sidewalk while my kids were playing, and the ability of the perpetrator to walk a fine line keeping any real legal action unavailable. Unfortunately, we are past the point of return as our safety is in question." (Exhibit Q.) These statements identify Plaintiff by context and were confirmed by community members as referring to Plaintiff.

**46.** On June 24, 2025, Edge posted: "Anyone who knows me or has been on the other Bent Creek group for more than 4 years or so, knows that I used to be VERY anti HOA. Can you guess the reason? It was all of the violation letters I used to get for my small childrens' toys in my front yard." (Exhibit Q.) This statement constitutes an admission that Edge experienced the same fining practices he now enforces against others. Edge further publicly admitted on or about June 23, 2025 in the same Facebook group: "If some of your dues go to security systems and cameras for board members because of threats then that is just what has to happen. I am sure it will cost less than the legal fees if something adverse happens to one of my family members." (Exhibit Q.) This statement constitutes a public admission that HOA dues collected from all homeowners were being directed to private security and camera systems for board members.

**47.** Law enforcement was dispatched to Plaintiff's residence on at least two occasions at the direction of Defendant Cody, the HOA Board President. On a separate occasion, when Plaintiff appeared at a Bent Creek HOA Board meeting to deliver a records-inspection demand, Defendants Cody and Edge caused law enforcement to be summoned, resulting in the issuance of a civil trespass warning to Plaintiff regarding Cody and Edge. Community member Erin Bowles

Perry publicly reported witnessing law enforcement being summoned during the Board-meeting incident.

**48.** The HOA and its agents blocked Plaintiff on social media, preventing him from viewing Board member communications and community updates posted by Edge and others, while simultaneously using those platforms to defame and accuse Plaintiff.

## F. Pattern of Targeting Families with Children

**49.** The Defendants' discriminatory enforcement pattern extends beyond Plaintiff. Benita Chapman, a homeowner at 600 Nevins Place in Bent Creek, has provided a written statement documenting substantially identical treatment. (Exhibit S.) Ms. Chapman adopted five biracial children in December 2021, shortly after moving to Bent Creek in August 2021.

**50.** Ms. Chapman received multiple violations processed by the same Timmons property manager (Kaley Vaughn) with the same 10-day cure periods: parking violations (fined $50 on May 5, 2025 when the vehicle was not present), landscaping violations, trash can placement, mailbox color, mailbox font, and unauthorized ARC work (fined $100). Her appeal of the parking fine was denied on May 23, 2025.

**51.** Ms. Chapman stated: "My kids are biracial and I have thought on more than one occasion that I was being harassed because of the kids' race." She further stated: "Since Steve Cody became President I have gotten more letters." Ms. Chapman's experience corroborates a pattern of selective enforcement targeting families with children.

**52.** The Defendants' pattern of selective enforcement and harassment extends to additional homeowners. Homeowner Wright reported that Defendants Cody and Edge repeatedly stalled

resolution of a drainage issue in which water from the common area was washing away her home's foundation, and then demanded she repaint her house within a 10-day turnaround. Wright retained her own attorney to address the matter. Homeowner Jaime Reiter, an attorney, was harassed for having a canopy on his children's trampoline; Reiter identified the legal deficiency in the HOA's fining authority and confronted the Board, which resulted in a stalemate. homeowner Rebekah Bartlett reported that the HOA contacted her husband's employer to complain about him parking his work truck in the driveway for approximately three hours while cleaning it out. On information and belief, additional witnesses and homeowner experiences will be developed through discovery of HOA enforcement files and Vantaca portal records, which are peculiarly within Defendants' control.

## G. Republication of Defamatory Content by Heidi Nathan

53. Defendant Heidi Nathan serves as administrator of the Bent Creek Neighborhood Facebook group, which has approximately 1,300 members. In or around June 2025, Nathan republished defamatory content originating from Timmons' enforcement communications and Edge's Facebook posts to the community group. (Exhibit O.)

54. Nathan admitted in a Facebook Messenger exchange with Plaintiff that she republished the challenged content, adding her own commentary. Nathan then banned Plaintiff from the group, preventing him from viewing or responding to the defamatory statements while they remained accessible to the community.

55. Nathan's republication of defamatory content to an audience of approximately 1,300 community members constitutes an independent act of publication under Tennessee's republication doctrine. *See Cadle Co. v Hardwick*, 159 S.W.3d 849 (Tenn. 2005).

## H. Unlicensed Debt Collection by K&C

**56.** K&C sent collection letters to Plaintiff demanding payment of disputed fines (Case Nos. XN1108821 and XN1054197). K&C operates as a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a(6), because it regularly collects debts owed to another (the HOA) using instrumentalities of interstate commerce.

**57.** K&C is not registered as a Collection Service with the Tennessee Department of Commerce and Insurance as required by the Tennessee Collection Service Act, Tenn. Code Ann. § 62-20-101 et seq. Operating as an unlicensed collection service in Tennessee is a Class A misdemeanor under Tenn. Code Ann. § 62-20-115.

**58.** On May 30, 2025, K&C mailed a 10-Day Collection Letter demanding $290 ($200 in fines, $75 in administrative charges, and $15 for certified mailing) with a deadline to pay or face further escalation. (Exhibit H.) On June 28, 2025, Plaintiff sent a written verification demand under 15 U.S.C. § 1692g(a). (Exhibit I.) K&C failed to provide adequate validation and continued collection activity.

**59.** K&C further directed the conduct of the HOA Board, including controlling board communications. On June 23, 2025, Defendant Edge publicly admitted in the Bent Creek Neighborhood -Uncensored- Facebook group (Exhibit Q): "Legal matters cannot be discussed. I tend to do what our lawyers advise me to do." This admission, made in response to a homeowner's request for transparent answers to community questions, confirms that K&C exercised substantial control over Board communications and policy discussions, directing the conduct of the HOA Board including controlling Board responses to homeowner inquiries. K&C

18

thus operated not as legal counsel but as the de facto decision-maker directing the enterprise's retaliatory conduct.

## V. CLAIMS FOR RELIEF

### COUNT I: Violation of the Fair Housing Act — Failure to Make Reasonable Accommodation (42 U.S.C. § 3604(f)(3)(B))

*(Against Bent Creek HOA, Inc., Timmons Properties, Inc ; Lynn Burka, Kaman & Cusimano, LLC, and Scott Weiss)*

**60.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**61.** Plaintiff has a qualifying disability as defined under the FHA, 42 U.S.C. § 3602(h), as documented by Dr. Justin Dearing, D.C. (License No. 2528) in a Supplementary Attending Physician's Statement dated July 21, 2025. (Exhibit L.) Defendants knew or reasonably should have known of Plaintiff's disability based on at least five prior written and verbal disclosures between January and April 2025, as set forth in paragraphs 36(a) through 36(e) above. Plaintiff requested a reasonable accommodation — additional time to cure minor exterior violations — which is a common and routine accommodation for mobility- and fatigue-related disabilities that imposes no financial or administrative burden on the HOA. Plaintiff submitted a formal written request for reasonable accommodation on June 1, 2025. (Exhibits E, G.)

Defendant-specific conduct: (a) Defendant Bent Creek HOA (i) approved the May 19, 2025 sidewalk restriction (Exhibit E); (ii) ratified the continuing enforcement actions described in ¶¶ 31 through 44; and (iii) did not engage in the interactive process required by 42 U.S.C. § 3604(f)(3)(B) following the prior disability disclosures stored in Timmons' records (¶¶ 36(a)–(e), Exhibit D); (b) Defendant Timmons Properties received and stored the five prior disability

disclosures (¶¶ 36(a)–(e)) and continued posting fines and administrative fees against Plaintiff's Vantaca account during the pendency of the accommodation request; (c) Defendant Lynn Burka issued the May 19, 2025 "first instance" email and imposed the same-day sidewalk restriction; and (d) Defendant Kaman & Cusimano, LLC, through Defendant Scott Weiss, acknowledged receipt of the Supplementary Attending Physician's Statement on July 24, 2025, and rejected it on July 28, 2025 as "insufficient" without identifying any specific deficiency. Plaintiff's disability impairs his ability to perform exterior repair work within standard cure deadlines due to fatigue, temperature sensitivity, and neurological limitations, making extended compliance periods necessary to afford equal use and enjoyment of the property. The requested accommodation was reasonable and necessary to afford Plaintiff equal use and enjoyment of his dwelling within the meaning of 42 U.S.C. § 3604(f)(3)(B).

Each Defendant named in this Count, as identified in the defendant-specific allegations above, refused to engage in the interactive process required by law: (a) they falsely claimed Plaintiff's request was the "first instance" of any disability disclosure; (b) they failed to communicate what documentation would be sufficient; (c) they imposed a unilateral sidewalk restriction during the pendency of the accommodation request, prohibiting Plaintiff from walking on community sidewalks (Exhibit E); (d) they rejected the physician statement provided without specifying deficiencies; and (e) they continued to impose fines and enforcement actions while the accommodation request remained pending.

Despite receipt of physician documentation and prior written disclosures, Defendants continued enforcement and fee escalation without modifying deadlines or suspending enforcement during the pendency of the request, which constitutes constructive denial of the requested accommodation under 42 U.S.C. § 3604(f)(3)(B).

Defendants' failure to provide reasonable accommodation violates 42 U.S.C. § 3604(f)(3)(B). Plaintiff seeks compensatory damages for emotional distress, economic losses including property value diminution, punitive damages, and injunctive relief.

**COUNT II: Violation of the Fair Housing Act — Retaliation (42 U.S.C. § 3617)**

*(Against Bent Creek HOA, Inc , Timmons Properties, Inc , Lynn Burka, Kaman & Cusimano, LLC, Scott Weiss, Kiel Kovalcik, Daniel J  Miske, Robert Steve Cody, and Jeremy Edge)*

**62.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**63.** Plaintiff engaged in protected activity under the FHA by requesting reasonable accommodations, protesting discriminatory enforcement, filing a HUD complaint (Inquiry No. 851640), and asserting his rights to inspect HOA records. In response, Defendants retaliated by: escalating violation notices and fines; sending threatening letters; publicly defaming Plaintiff; directing law enforcement to Plaintiff's residence; barring Plaintiff from public sidewalks; hiring private security with stated purpose of addressing alleged threats and conduct directed at Defendant Edge's family, as publicly stated by Edge on or about June 17, 2025 in the Bent Creek Neighborhood -Uncensored- Facebook group (Exhibit Q); blocking Plaintiff on social media; referring disputed fines to K&C for collection; filing the bar complaint against Plaintiff (Miske, July 10, 2025) that was subsequently dismissed by the Michigan Attorney Grievance Commission; and republishing defamatory content to the community (Nathan). Defendant-specific conduct: (a) Defendants Bent Creek HOA, Cody, and Edge (i) ratified the continued enforcement actions described above; (ii) authorized the private community security retention publicly announced by Defendant Edge on or about June 17, 2025 (Exhibit Q); and (iii) directed law-enforcement contact to Plaintiff's residence; (b) Defendants Timmons Properties

and Burka imposed the May 19, 2025 sidewalk restriction the same day as Plaintiff's accommodation request and continued enforcement during the pendency of the request; (c) Defendants Kaman & Cusimano, LLC, Weiss, and Kovalcik rejected the physician statement and continued collection activity; (d) Defendant Daniel J. Miske filed the Michigan bar complaint against Plaintiff on July 10, 2025, which was subsequently dismissed by the Michigan Attorney Grievance Commission (File 25-1797, dismissed August 28, 2025); and (e) Defendant Edge authored the June 17, June 23, and June 24, 2025 Facebook posts (Exhibit Q).

Each retaliatory act occurred within days or weeks of a specific protected activity: the "first instance" lie was issued the same day as Plaintiff's accommodation request (May 19, 2025); K&C referral followed the formal accommodation request (June 1, 2025) by approximately two weeks; the physician statement was rejected four days after delivery (July 28, 2025); and the bar complaint was filed eighteen days before K&C acknowledged receipt of medical documentation.

**64.** While routine violation notices predated Plaintiff's protected activity, the severity and escalation of enforcement—including referral to counsel, additional fines, public defamation, the sidewalk restriction, and the bar complaint—occurred only after Plaintiff requested accommodation and filed formal complaints. The temporal proximity, escalating severity, and coordinated nature of these acts demonstrate retaliatory motive. The escalation of enforcement following protected activity, coupled with Defendants' refusal to correct factual inaccuracies despite notice, supports a plausible inference of retaliatory motive.

This conduct violates 42 U.S.C. § 3617. Plaintiff seeks compensatory damages for emotional distress, economic losses including property value diminution, punitive damages, and injunctive relief.

**COUNT III: Violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.)**

*(Against Kaman & Cusimano, LLC, Scott Weiss; Kiel Kovalcik, and Daniel J. Miske)*

**65.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**66.** Defendants K&C, Weiss, Kovalcik, and Miske are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6), regularly collecting debts owed to another using instrumentalities of interstate commerce. The sums sought arose from Plaintiff's obligation as a homeowner to pay monetary assessments imposed in connection with property ownership and therefore constitute "debts" incurred primarily for personal, family, or household purposes within the meaning of 15 U.S.C. § 1692a(5). Homeowners association assessments and related charges arising from property ownership constitute debts under the FDCPA because they represent obligations to pay money for personal, family, or household purposes pursuant to a consumer transaction. *See Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777 (6th Cir. 2014). The obligation arose from Plaintiff's status as a homeowner within a consumer residential subdivision and therefore constitutes a consumer debt under controlling Sixth Circuit precedent. The FDCPA imposes strict liability for violations; knowledge of falsity is not required. Defendants Kaman & Cusimano, LLC, Scott Weiss, Kiel Kovalcik, and Daniel J. Miske violated the FDCPA by:

(a) falsely representing the character, amount, and legal status of alleged debts by demanding payment of sums not permitted by law and misrepresenting them as legally enforceable debts (15 U.S.C. § 1692e(2)(A));

(b) collecting amounts not expressly authorized by the agreement creating the obligation or permitted by law (15 U.S.C. § 1692f(1));

(c) failing to provide adequate validation after Plaintiff's timely written dispute and verification demand (15 U.S.C. § 1692g(a));

(d) failing to cease collection of the debt while validation was outstanding, in violation of 15 U.S.C. § 1692g(b); and

(e) using false, deceptive, or misleading representations or means in connection with the collection of any debt, including misrepresenting fines as enforceable obligations (15 U.S.C. § 1692e(10)).

Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to actual damages, statutory damages of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorneys' fees and costs.

**COUNT IV: Violation of the Tennessee Consumer Protection Act (Tenn. Code Ann. § 47-18-104)**

*(Against Timmons Properties, Inc ; Lynn Burka, Kaman & Cusimano, LLC, Scott Weiss, Kiel Kovalcik, and Daniel J Miske)*

67. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68. Timmons and K&C are compensated service providers that provide property management and debt collection services to homeowners associations in exchange for fees, and engaged in those services in the regular course of trade or commerce as defined under Tenn. Code Ann. § 47-18-103(19). Defendant-specific conduct: Defendants Timmons Properties and Lynn Burka misrepresented the validity of charges to Plaintiff via the Vantaca portal and mass-email communications. Defendants Kaman & Cusimano, LLC, Scott Weiss, Kiel Kovalcik, and Daniel J. Miske misrepresented the status and enforceability of debts through formal collection

communications, including the July 28, 2025 rejection of physician documentation. Defendants engaged in unfair or deceptive acts or practices affecting the conduct of trade or commerce in violation of Tenn. Code Ann. § 47-18-104, including: (a) making materially false factual statements about Plaintiff's conduct and account history, including the false "first instance" characterization of Plaintiff's May 2025 disability accommodation request (¶¶ 36(a)–(e), Exhibit E) and the false "abandoned vehicle" / "has not moved" characterizations transmitted on April 25, 2025 and May 12, 2025 (Exhibits J, K); (b) misrepresenting the status, character, and amount of debts owed by Plaintiff, including representing the listed fines and administrative charges as valid and enforceable obligations notwithstanding the absence of any fining provision in the recorded CC&Rs and twenty-five recorded amendments (¶¶ 27–29, Exhibit A); and (c) using deceptive collection communications, including the July 28, 2025 rejection of physician documentation as "insufficient" without identifying any specific deficiency. Pursuant to Tenn. Code Ann. § 47-18-109, Plaintiff is entitled to treble damages and reasonable attorneys' fees.

### COUNT V: Breach of Fiduciary Duty

*(Against Robert Steve Cody, Jeremy Edge; David Raissi, Jared Burke; Melissa Plank, Susannah Millar, Tim Barry; and Timmons Properties, Inc.)*

**69.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**70.** Duty: The individual Board member Defendants owe fiduciary duties of care, loyalty, and good faith to all HOA members, including Plaintiff. Timmons, as the HOA's agent and property manager, owes similar duties. Defendant-specific conduct: Defendant Robert Steve Cody, as President and as the sole invoice-approving authority of the Association, unilaterally approved expenditures including the diversion of approximately $230,000 to Falling Water Entrance

construction without documented separation of duties or member approval. Defendants Edge, Raissi, Burke, Plank, Millar, and Barry, as Board members, ratified or failed to challenge the pattern of expenditures exceeding budgeted amounts and failed to require member approval for reserve transfers. Defendant Timmons Properties, as the Association's agent and property manager, administered the unauthorized expenditures, posted fines through the Vantaca portal, and failed to disclose the financial irregularities to members. Breach: Defendants breached those duties by: (a) approving expenditures exceeding budgeted amounts by $316,103 across 2021–2025 without member approval; (b) depleting reserve funds from $1,333,728 (2021) to $955,748 (2025), a net decline of $377,980, including approving the $230,000+ Falling Water Entrance expenditure from unappropriated reserves in deviation from the budgeted Signage/Renovation/Entrance Monuments line items in the Reserve Study; (c) approving reserve fund expenditures and transfers without member approval and in deviation from the purposes documented in the Association's 2023 Reserve Study (Exhibit T), including the expenditure of approximately $230,000 on Falling Water Entrance construction in 2024–2025, which substantially exceeded the Signage/Renovation/Entrance Monuments line items budgeted in the 2023 Reserve Study and was paid from unappropriated reserve funds without separate member approval; (d) approving expenditures on private community security services without documented procurement procedures or member disclosure, as reflected in Defendant Edge's public statement on or about June 17, 2025 announcing the retention of private security (Exhibit Q) including through testimony of former Board member Stacey Brans; (e) implementing a fining program without legal authority, generating $25,120 in fines (2023–2025) not authorized by the CC&Rs; and (f) failing to hold open meetings or provide financial transparency. Causation: Each breach caused direct economic harm to Plaintiff as a dues-paying member

whose funds were diverted to unauthorized purposes and whose account was assessed fines the HOA lacked authority to impose. Damages: Plaintiff's claim is premised primarily on individualized harm arising from unauthorized fines and targeted enforcement actions uniquely imposed upon his property — separate and apart from any injury to the Association. In addition to this individualized injury, the reserve mismanagement described above caused further harm to Plaintiff as a dues-paying member. To the extent any portion of this claim is deemed derivative, Plaintiff seeks leave to amend to proceed derivatively. Plaintiff has been harmed by the assessment of $240.00 in unauthorized fines and fees, the diminution in value of reserve fund assets to which Plaintiff's dues contributed, diminution in the market value of Plaintiff's property resulting from the enforcement disputes and Plaintiff's legal obligation to disclose them to prospective purchasers, which forced withdrawal of the property listing at $699,000, and the increased likelihood of a special assessment resulting from the depleted reserves.

## COUNT VI: Defamation Per Se

*(Against Jeremy Edge, individually)*

71. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

72. Defendant Edge published false statements of fact to the Bent Creek community via the Bent Creek Neighborhood -Uncensored- Facebook group on multiple occasions. On June 23, 2025, Edge wrote: "Maybe if residents dont threaten, stalk, and harass, this won't be an issue. You don't care that board members and their families are suffering, are frightened, and their children are scared." In the same thread, Edge stated: "we are looking at serious threats, stalking, attempts to engage with my children from the sidewalk while my kids were playing, and the ability of the perpetrator to walk a fine line keeping any real legal action unavailable." (Exhibit Q.) These

27

statements are defamatory per se under Tennessee law because they impute the commission of crimes — specifically stalking (Tenn. Code Ann. § 39-17-315) and making threats — to Plaintiff. Accusations of "stalking," "threats," and being a "perpetrator" constitute verifiable factual assertions implying criminal conduct, not mere opinion or rhetorical hyperbole. Defamation per se entitles Plaintiff to presumed damages without proof of special damages. The statements were published to the community with knowledge of their falsity or with reckless disregard for their truth. Plaintiff did not engage in stalking, threats, or any criminal conduct, and Edge knew or should have known that these characterizations were false. Edge knew that Plaintiff had not engaged in stalking or criminal conduct and had never been charged with, arrested for, or convicted of any such offense. The statements caused damage to Plaintiff's reputation, standing in the community, and emotional well-being.

## COUNT VII: Defamation — Republication

*(Against Heidi Nathan, individually)*

**73.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**74.** Defendant Nathan, as administrator of the Bent Creek Neighborhood Facebook group (approximately 1,300 members), republished defamatory content originating from Timmons' enforcement communications and Edge's public accusations to the group  Nathan republished within the Bent Creek Neighborhood Facebook group, on or about June 2025, the allegations originating from Defendant Edge that Plaintiff engaged in "stalking," "threats," and conduct as a "perpetrator" (¶¶ 72–73, Exhibits O, Q), and added her own commentary reinforcing and amplifying those accusations to the group's approximately 1,300 members. Nathan further issued, within the group, statements characterizing Plaintiff's communications as creating

"obstruction of protected rights" and warned Plaintiff with a cease-and-desist demand, and ultimately banned Plaintiff from the group on or about June 2025 to prevent his response to the defamatory content republished and amplified within the group. Nathan further indicated within the group that she was restricting discussion of HOA-related matters and removed posts when questioned by group members, supporting an inference of coordinated suppression of Plaintiff's response. (Exhibit O.) The statement and its subsequent deletion support a plausible inference that Nathan acted in coordination with the HOA Board and Timmons to suppress homeowner discussion of enforcement and governance concerns.

**75.** Under Tennessee's republication doctrine, one who republishes defamatory material is subject to liability as if she were the original publisher. *Cadle Co v Hardwick*, 159 S.W 3d 849 (Tenn. 2005). Nathan's republication was not passive hosting of third-party content — she actively selected, republished, and commented upon the defamatory material, thereby materially contributing to the creation and development of the defamatory content, and then banned Plaintiff from the group to prevent his response. Nathan's conduct does not qualify for immunity under 47 U.S.C. § 230 because she acted as a content creator, not as a provider of a platform.

**76.** The statements republished by Nathan were understood by readers of the Bent Creek Neighborhood Facebook group to refer to Plaintiff. Nathan's republication caused additional damage to Plaintiff's reputation by disseminating the defamatory statements to approximately 1,300 community members of the Bent Creek Neighborhood Facebook group while simultaneously depriving Plaintiff of the ability to respond to the false statements within that audience.

## COUNT VIII: Civil RICO — Conduct of Enterprise Through Pattern of Racketeering Activity (18 U.S.C. § 1962(c))

*(Against Robert Steve Cody, Jeremy Edge; David Raissi, Jared Burke, Melissa Plank, Susannah Millar, Tim Barry; Lynn Burka; Scott D Weiss; Kiel Kovalcik; and Daniel J Miske — the individual Defendants named in the caption)*

**77.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Pursuant to *Cedric Kushner Promotions, Ltd v King*, 533 U.S. 158 (2001), the "person" liable under 18 U.S.C. § 1962(c) must be distinct from the "enterprise" through which the conduct occurs. Plaintiff alleges the enterprise as an association-in-fact comprising the Bent Creek HOA, Timmons Properties, Inc., and Kaman & Cusimano, LLC — and therefore those entities are not named as Count VIII defendants. The individual Defendants named in this Count are alleged to have conducted the affairs of that enterprise through a pattern of racketeering activity.

### A. The Enterprise (18 U.S.C. § 1961(4))

**78.** At all relevant times, the Bent Creek HOA, Timmons Properties, Inc., and Kaman & Cusimano, LLC, together with the individual Defendants named in this Count, associated in fact as an "enterprise" within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise").

**79.** The Enterprise had a common purpose: to deploy an enforcement-and-collections apparatus that used deceptive communications to coerce compliance, deter challenges, and restrict owner oversight and accountability.

**80.** The Enterprise had ongoing relationships and structure: the Board authorized enforcement and restrictions; Timmons implemented inspections, notices, mailings, and portal charges; K&C

provided escalation support, drafted and approved enforcement positions, and maintained pressure through collection communications and refusal to correct known falsehoods.

**81.** The Enterprise functioned as a continuing unit from at least 2023 through the present, repeatedly using the same methods and channels (mail, email, and portal communications) against Plaintiff and other owners.

**B. Participation in Conduct of Enterprise Affairs (Reves)**

**82.** The Board Defendants participated in the operation and management of the Enterprise by authorizing enforcement actions and restrictions, approving or ratifying communications, directing escalation, and using enforcement communications to deter oversight.

**83.** Through Burka and Vaughn, Timmons participated in the operation and management of the Enterprise by generating and transmitting the core enforcement communications and account charges—by mail and via interstate electronic systems—and by executing escalation even after being provided contrary facts and corrections.

**84.** Through Weiss, Kovalcik, and Miske, K&C participated in the operation and management of the Enterprise by acting as the escalation gatekeeper and by maintaining the enforcement posture after notice of factual falsity, including adopting positions designed to avoid correcting the file record and continuing collection pressure. Timmons administered the enforcement apparatus, the HOA Board authorized the policies, and K&C executed and escalated collection activity, each playing a distinct role in directing the enterprise's affairs.

## C. The Scheme to Defraud (Mail/Wire Fraud)

**85.** The Enterprise carried out a course of conduct to defraud Plaintiff (and similarly situated owners) of money and property by transmitting written demands and public accusations that contained materially false statements of fact and materially misleading omissions — including statements that were verifiable at the time made and contradicted by Defendants' own records — calculated to induce payment, restrict communications, and chill oversight.

**86.** The course of conduct relied on repeated use of the U.S. mails and interstate wires, and it continued after Defendants were placed on notice that key factual assertions were false.

## D. Predicate Acts — Rule 9(b) Schedule

*(Each predicate is pled with speaker, date, exact statement, means of transmission, why false at time made, scienter, and materiality.)*

**87.** The following predicate acts demonstrate a repeated pattern of knowingly false factual statements, transmitted by mail or interstate wire, used to induce payment of unauthorized charges, delay the interactive accommodation process, and chill Plaintiff's protected activity. Each predicate is anchored to a specific document or communication identified below by date, speaker, medium, and exhibit reference.

### Predicate 1 — Wire Fraud: Public "Abandoned Vehicle" Accusation (May 12, 2025)

**88.** On May 12, 2025, Defendant Timmons Properties, Inc. transmitted via mass email (interstate wire) to the Bent Creek community a notice regarding a vehicle belonging to Plaintiff stating, in pertinent part: the vehicle "has been parked on Fishing Creek Road since Thursday of last week and has not moved" and "will be towed." (Exhibit K.) This statement was false. The vehicle was

lawfully parked at the time of the notice and had been temporarily relocated by Plaintiff's real estate agent in connection with an open house showing scheduled for Plaintiff's then-active property listing. Timmons knew or recklessly disregarded the falsity because the circumstances of the vehicle's lawful placement — including the active property listing and open-house schedule — were readily ascertainable from Timmons' own enforcement records and Plaintiff's prior correspondence with Timmons concerning the listing. Timmons used the false statement to publicly brand Plaintiff as violating community rules, coerce compliance, and reinforce the validity of outstanding monetary charges against him.

*Predicate 2 — Wire Fraud: "Has Not Moved" Tow Threat (April 25, 2025)*

**89.** On April 25, 2025, Kaley Vaughn, acting on behalf of Defendant Timmons Properties, Inc., transmitted via email (interstate wire) to Plaintiff a notice regarding Plaintiff's camper stating, in pertinent part: the camper "was dropped off a few days ago and has not moved," coupled with a same-day towing threat. (Exhibit J.) This statement was false. The camper was lawfully placed on community property; the "dropped off" and "has not moved" characterizations were inconsistent with Timmons' own observation records and inspection logs maintained for Bent Creek properties. Timmons knew or recklessly disregarded the falsity because the inspection logs and prior correspondence contradicting the assertions were within Timmons' possession and supervisory control. Timmons used the false statement to threaten enforcement action against Plaintiff, escalate pressure for compliance, and threaten the deprivation of Plaintiff's personal property by same-day towing.

*Predicate 3 — Mail and Wire Fraud: False "First Instance" Disability Statement (May 19, 2025)*

**90.** On May 19, 2025, Defendant Lynn Burka sent Plaintiff an email (Exhibit E) stating: "This is the first instance in which you've mentioned a disability or need for accommodation." This statement was false. Plaintiff had previously disclosed his disability and health-related limitations to Timmons on at least five occasions: (a) a January 2025 Vantaca portal report acknowledged verbally by Kaley Vaughn; (b) a February 28, 2025 email ("We were sick…"); (c) a March 27, 2025 email; (d) a March 28, 2025 email; and (e) an April 30, 2025 email ("I am currently off work with disability…"). (See ¶ 35(a)–(e) and Exhibit D.) Burka knew the statement was false because the prior disclosures were stored in Timmons' own records and Vantaca portal, which Burka supervised. Burka used the false statement to delay the interactive accommodation process, impose a sidewalk restriction the same day (Exhibit E), and continue fines and enforcement actions while Plaintiff's accommodation request remained pending.

*Predicate 4 — Wire Fraud: Repeated "First Time" Misrepresentation (May 29, 2025)*

**91.** On May 29, 2025, Defendant Lynn Burka transmitted via email (interstate wire) to Plaintiff a follow-up communication repeating the "first time" disability misrepresentation made on May 19, 2025. (Exhibit D.) This statement was false for the reasons set forth in ¶ 90 — Plaintiff had previously disclosed his disability on five prior occasions, all of which were stored in Timmons' own records and Vantaca portal under Burka's supervisory authority. Burka knew or recklessly disregarded the falsity because four of the prior disclosures had been provided to Timmons in writing (¶ 35(b)–(e), Exhibit D) before May 19, 2025, and the May 19, 2025 communication itself (Exhibit E) demonstrated Burka had reviewed Plaintiff's account file. Burka used the

repeated false statement to continue delaying the interactive accommodation process, sustain the May 19 sidewalk restriction, and continue fines and enforcement actions against Plaintiff.

*Predicate 5 — Mail Fraud: 10-Day Collection Letter (May 30, 2025)*

**92.** On May 30, 2025, Defendant Timmons Properties, Inc. transmitted via U.S. Mail to Plaintiff a 10-Day Collection Letter demanding $290 — comprising $200 in fines, $75 in administrative charges, and $15 for certified mailing — and threatening referral to K&C for collection if not paid within ten days. (Exhibit H.) The letter contained false representations. First, it represented the listed fines as valid and enforceable obligations, when the recorded CC&Rs and twenty-five recorded amendments contain no provision authorizing such fines (Exhibit A). Second, it relied on the already-corrected "first instance" and "abandoned vehicle" factual predicates that had been corrected in writing by Plaintiff before issuance. Timmons knew or recklessly disregarded the falsity because the absence of fining authority appeared on the face of the recorded governing documents and the prior disability disclosures and vehicle-status corrections were stored in Timmons' own records and Plaintiff's correspondence. Timmons used the letter to coerce payment under a compressed deadline and to set up the K&C escalation that followed.

*Predicate 6 — Wire Fraud: Portal-Based Demands After Notice of Falsity*

**93.** Between February 6, 2025 and May 30, 2025, Defendant Timmons Properties, Inc. transmitted via the Vantaca portal (portal.timmonsproperties.com) interstate electronic demands and posted charges and fees to Plaintiff's account (Account No. 1814619), specifically: a $50.00 fine on February 6, 2025; a $100.00 fine on February 27, 2025; administrative fees of $15.00 each on March 28, April 14, April 30, May 15, and May 30, 2025; and a $15.00 certified-letter fee on May 30, 2025 — accumulating a balance of $240.00 carried on the portal continuously

from May 30, 2025 to the present. (Exhibit P.) These charges and demands were false at the time made. They were predicated on the "first instance" misrepresentation contradicted by Plaintiff's five prior disability disclosures (¶ 35(a)–(e), Exhibit D) and on the "abandoned / has not moved" vehicle-status assertions contradicted by Plaintiff's correspondence and the realtor's open-house records. Timmons knew or recklessly disregarded the falsity because both factual predicates had been corrected in writing by Plaintiff and were stored in Timmons' own records and Vantaca portal under Timmons' supervisory control. Timmons used the portal demands to maintain a continuing record of indebtedness against Plaintiff, coerce payment, and justify the continued enforcement posture against him.

### Predicate 7 — Wire/Mail Fraud: K&C Escalation Maintaining the False Record

**94.** On July 28, 2025, Defendant Scott Weiss transmitted via email to Plaintiff a communication characterizing Plaintiff's physician documentation as "insufficient." This characterization was false because the document Weiss received and acknowledged was a complete Supplementary Attending Physician's Statement signed by Dr. Justin Dearing, D.C. (License No. 2528), identifying diagnosis (post-viral fatigue, auto-immune neurological dysfunction, and endocrine and post-viral reactivations), functional limitations (mobility, pace, energy level, and capacity for physical tasks), and disability date (March 18, 2025) — documentation containing diagnosis, functional limitations, and disability onset date typically sufficient to evaluate accommodation requests. (Exhibit L.) Weiss knew or recklessly disregarded the falsity of the "insufficient" characterization because he had received and acknowledged the complete document and identified no specific deficiency in his rejection. Weiss used the false characterization to prolong enforcement, sustain the account charges, and chill Plaintiff's protected activity under the Fair Housing Act. The misrepresentation was material because it induced continued payment pressure

on Plaintiff's account, perpetuated the unauthorized fines and fees on Plaintiff's Vantaca ledger, and forestalled the resumption of the interactive accommodation process Plaintiff had requested. Defendant Weiss took these actions after having been involved as counsel in *Burgess v. Bradford Hills HOA*, Davidson County Case No. 20C1835, in which substantially similar enforcement practices were at issue.

**E. Pattern (Relatedness + Continuity)**

**95.** The predicate acts alleged herein are not based on a dispute regarding interpretation of governing documents. Defendants Burka, Vaughn (acting on behalf of Timmons Properties), Weiss (acting on behalf of K&C), and the Board Defendants repeatedly communicated specific factual representations — including that Plaintiff's disability disclosure was the "first instance," that vehicles were improperly abandoned, and that enforcement deadlines had lawfully expired — that were demonstrably false at the time made and were used to induce payment of charges and fees. The coordinated repetition of materially false characterizations across multiple written communications, even after written correction and documentary proof, permits a reasonable inference of intent to obtain payment through deception. Defendants Cody, Edge, Raissi, Burke, Plank, Millar, Barry, Burka, Weiss, Kovalcik, and Miske were not only placed on notice by Plaintiff but also by other homeowners and former board officials who questioned the legality of the fining authority and escalation procedures. Continued issuance of notices containing materially false factual representations after such notice supports a strong inference of intent.

**96.** The predicate acts are related: they shared common participants, common methods (mail, email, and portal demands), common targets (Plaintiff and owners challenging enforcement), and common objectives (coercion, compliance, deterrence of oversight).

**97.** The predicate acts occurred over a period of at least five months, involved multiple distinct communications, and were executed through standardized enforcement procedures implemented by the HOA, Timmons, and K&C. These acts reflect Defendants' regular way of conducting enforcement and collection activity and present both closed-ended continuity through repeated predicate acts and an open-ended threat of repetition inherent in the ongoing enforcement framework. The fining-and-collection practices described herein were implemented prior to Plaintiff's first violation notice and have continued after Plaintiff placed Defendants on notice of the falsity of specific statements. Multiple homeowners, including Jaime Reiter, publicly challenged the Association's fining authority, and the Association's former counsel and treasurer were advised of those concerns. Despite such notice, Defendants continued issuing standardized violation notices and pursuing monetary charges through the same procedures. The enforcement practices at issue are similarly evidenced in Burgess v. Bradford Hills Homeowners Association, Davidson County Case No. 20C1835, which involved substantially similar enforcement practices conducted by Timmons Properties as management company and Kaman & Cusimano, LLC as legal counsel, and in which the trial court entered a declaratory judgment on December 15, 2023. These allegations demonstrate that the predicate acts were part of Defendants' regular way of conducting business and present an ongoing threat of repetition extending beyond Plaintiff's individual dispute.

### F. Causation and Injury (Business or Property)

**98.** By reason of Defendants' racketeering conduct, Plaintiff suffered injury to property, including: (a) payment and/or assessment of fines, administrative charges, and collection-related fees totaling $240.00, consisting of two exterior maintenance fines ($50.00 on February 6, 2025 and $100.00 on February 27, 2025), five administrative fees of $15.00 each, and one certified

letter fee of $15.00, all posted to Plaintiff's Vantaca account (Account No. 1814619) and carried as an outstanding balance from May 30, 2025 to the present; (b) out-of-pocket costs incurred in responding to enforcement demands and preserving rights, including printer supplies, paper, certified mailings, and document preparation costs, totaling approximately $1,000.00; and (c) diminution in property value in an amount to be determined at trial. Under Tennessee law, sellers must disclose material disputes affecting property value and marketability. Plaintiff was required to disclose active HOA enforcement actions and outstanding balances to prospective purchasers. A reasonable buyer would discount or avoid a property subject to ongoing enforcement and threatened litigation, directly impairing Plaintiff's ability to sell at fair market value and causing measurable economic harm. Plaintiff listed the property at $699,000, received three showing inquiries during the thirteen-day listing period, and was forced to withdraw the listing due to disclosure obligations (Exhibit R); and (d) documented out-of-pocket medical expenses incurred for treatment and care, constituting economic loss recoverable as injury to property, in an amount to be proven at trial. *See Medical Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025) (economic damages derivative of personal injury are recoverable under 18 U.S.C. § 1964(c) where the injury sought to be recovered is itself economic). As a direct and proximate result of Defendants' predicate acts, Plaintiff incurred unlawful fines, expended resources responding to fabricated enforcement actions, and suffered out-of-pocket economic loss. Each of the foregoing injuries was directly and proximately caused by Defendants' use of materially false enforcement communications and coercive collection demands transmitted through the mails and interstate wires, without which Plaintiff would not have incurred the assessed charges, defense expenses, or related medical costs. These injuries constitute injury to business or property within the meaning of 18 U.S.C. § 1964(c).

## G. Violation and Relief

**99.** Defendants, being associated with the Enterprise, conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

**100.** Plaintiff is entitled to recover treble damages and costs under 18 U.S.C. § 1964(c), and such other relief as the Court deems just and proper.

## COUNT IX: RICO Conspiracy (18 U.S.C. § 1962(d))

*(Against Bent Creek HOA, Inc , Timmons Properties, Inc., Kaman & Cusimano, LLC, Robert Steve Cody, Jeremy Edge, David Raissi; Jared Burke, Melissa Plank, Susannah Millar, Tim Barry, Lynn Burka, Scott D Weiss; Kiel Kovalcik, and Daniel J. Miske)*

**101.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**102.** The pleaded association-in-fact enterprise comprises legally distinct actors with separate roles, separate corporate identities, and separate economic incentives — the HOA setting policy, Timmons administering enforcement, and K&C escalating to collection. Each Defendant agreed to participate in the affairs of the Enterprise through a pattern of racketeering activity. The agreement is inferred from: (a) the coordinated and repeated nature of the predicate communications; (b) the distinct but interlocking roles assumed by the Board, Timmons, and K&C; and (c) the continuation of the conduct after notice of factual falsity. *See Beck v Prupis*, 529 U.S. 494 (2000) (civil RICO conspiracy liability under § 1962(d) requires injury from an overt act of racketeering).

**103.** Each Defendant named in this Count thereby violated 18 U.S.C. § 1962(d), and Plaintiff is entitled to damages as set forth above.

### COUNT X: Declaratory Relief (28 U.S.C. § 2201)

*(Against Bent Creek HOA, Inc , Timmons Properties, Inc ; and Kaman & Cusimano, LLC)*

**104.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**105.** An actual controversy exists between Plaintiff and Defendants regarding: (a) whether the HOA possesses legal authority under Tennessee law to impose fines on homeowners; (b) whether the fines imposed on Plaintiff are void; (c) whether the HOA's reserve fund transfers and expenditures during 2021–2025 conformed to the Association's 2023 Reserve Study (Exhibit T) and the Association's fiduciary obligations to its members; and (d) whether Plaintiff is entitled to inspect HOA books and records under Tenn. Code Ann. § 48-66-101. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 resolving these controversies.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kevin M. Donovan respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

1. Compensatory damages in an amount to be proven at trial for all injuries sustained;

2. Treble damages pursuant to 18 U.S.C. § 1964(c) on the RICO claims;

3. Treble damages pursuant to Tenn. Code Ann. § 47-18-109 on the consumer protection claims;

4. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A) on the FDCPA claims;

5. Punitive damages on counts for which they are available;

6. A declaratory judgment that: (i) the Bent Creek HOA lacks legal authority to impose fines under Tennessee law; (ii) all fines imposed on Plaintiff are void and must be refunded; and (iii) Plaintiff is entitled to inspect all HOA books, records, and financial documents under Tenn. Code Ann. § 48-66-101;

7. Injunctive relief requiring Defendants to cease imposing fines not authorized by the governing documents or Tennessee law, prohibiting the continued use of materially false enforcement communications, and requiring compliance with applicable provisions of the Tennessee Nonprofit Corporation Act and the governing documents;

8. Pre-judgment and post-judgment interest at the highest rate allowed by law;

9. Reasonable attorneys' fees and costs of suit pursuant to 18 U.S.C. § 1964(c), 42 U.S.C. § 3613(c)(2), 15 U.S.C. § 1692k(a)(3), and Tenn. Code Ann. § 47-18-109;

10. Such other and further relief as this Court deems just and proper.

### VII. JURY DEMAND

**106.** Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


Dated: _5/27_____, 2026

Kevin M. Donovan, Pro Se

MI Bar No. P79530; TN Bar No. 43740

6008 Christmas Drive

Nolensville, Tennessee 37135

(615) 428-9896

Kevin.donovan@artofplanninglaw.com

## EXHIBIT SCHEDULE

**A**     Covenants, Conditions & Restrictions (CC&Rs) and Governing Documents

**B**     HOA Fine Policy (September 2022)

**C**     Revised Fine Policy (June 2025)

**D**     Sent Emails from Kevin Donovan (Disability Disclosures, February–April 2025)

**E**     Email Correspondence — Lynn Burka, May 19, 2025 (#XN1137987)

**F**     HOA Financial Statements (2021–2025)

**G**     Plaintiff's Formal Written Reasonable Accommodation Request (June 1, 2025)

**H**     10-Day Collection Letter (May 30, 2025)

**I**     FDCPA Verification Demand Letter (June 28, 2025)

**J**     Camper Tow Email (April 25, 2025)

**K**     Truck Email (May 12, 2025)

**L** Supplementary Attending Physician's Statement (July 21, 2025)

**M** K&C Delivery Receipt, Signed by Vicki Thomas (July 24, 2025)

**N** Michigan Attorney Grievance Commission Dismissal Letter (August 28, 2025, File 25-1797)

**O** Heidi Nathan Facebook Group Screenshots (Republication and Censorship)

**P** Vantaca Transaction History (Account No. 1814619)

**Q** Jeremy Edge Facebook Posts (June 17, 23, 24, 2025)

**R** Third-Party Property Valuation Reports (Zillow, Realtor.com, Trulia, Movoto — April 28, 2026)

**S** Benita Chapman — Written Statement of HOA Enforcement Incidents

**T** HOA Reserve Study (November 1, 2023)

Case 3:26-cv-00700    Document 1    Filed 05/27/26    Page 44 of 44 PageID #: 44