**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE- NASHVILLE DIVISION**

KEVIN M. DONOVAN, CASE NO. 3:26-cv-00700

Plaintiff,

v.

BENT CREEK HOMEOWNERS
ASSOCIATION, INC., et al.,

Defendants.
_______________________________/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) & INCORPORATED MEMORANDUM OF LAW**

Defendants, Timmons Properties, Inc. and Lynn Burka ("Defendants"), by and through their undersigned counsel, respectfully moves this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil to dismiss Counts IV and V of Plaintiff's Second Amended Complaint ("Complaint"). In support of this Motion, the Defendants state as follows:

1. Plaintiff alleges, in Count IV of his Complaint that Defendant Timmon Properties, Inc. ("Timmons") violated the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692-1692p)("FDCPA"). 2nd Am. Comp., ECF "29."
2. The Plaintiff contends that Timmons is a debt collector and that the sums that Timmons sought to collect are debts under the FDCPA. 2nd Am. Comp., ECF "29." ¶¶ 232 and 233.
3. The Plaintiff claims that Timmons violated the FDCPA based upon its May 30, 2025 letter and the Vantaa ledger which are attached to the Complaint as Exhibits "H" and "P." 2nd Am. Comp., ECF "29," ¶¶ 149 and 242.
4. The Plaintiff classifies the fines as "monetary penalties" and "violation-based penalty charges" 2nd Am. Comp., ECF "29," ¶239.

5. The Plaintiff alleges that the following violated the Tennessee Consumer Protection Act:

   a. making materially false factual statements about Plaintiffs conduct and account history, including the false "first instance" characterization of Plaintiffs May 2025 disability accommodation request (i! 84(a)-(e), Exhibit E) and the false "has not moved" characterizations transmitted on April 25, 2025 and May 12, 2025 (Exhibits J, K);

   b. misrepresenting the status, character, and amount of debts owed by Plaintiff, including representing the listed fines and administrative charges as valid and enforceable obligations notwithstanding the absence of any fining provision in the recorded CC&Rs and twenty-five recorded amendments (¶¶ 41 through 66, Exhibit A);

   c. using deceptive collection communications, including the July 28, 2025 communication declining to act on Plaintiffs physician documentation and demanding additional disability-and-necessity documentation on the Association's own forms; and

   d. demanding payment of $290, including "$200" in fines, in the May 30, 2025 10-Day Collection Letter when the HOA's own Vantaca ledger showed $150 in fines and a total delinquency of $240.00 as of that date- an unfair and deceptive overstatement of the amount owed (¶ 151, Exhibits H, P). 2nd Am. Comp., ECF “29” ¶ 252.

6. The Plaintiff attaches a partial email as part of Exhibit “D” to his Complaint. Attached hereto as Exhibit “1” is the full and complete email with attachment (“Third Reminder Notice.” This email and attachment are authentic and central to Plaintiff’s claim.

7. The Plaintiff attaches a partial copy of the Association's Declaration of Covenants, Conditions and Restrictions. Attached hereto as Exhibit "2" is the full and complete Declaration of Covenants, Conditions and Restrictions recorded in O.R. Book 3422, Page 804, et. seq. of the Public Records of Williamson County, Tennessee. This document is authentic and central to Plaintiff's claim.

For the reasons set forth in the accompanying Memorandum of Law, the Defendants respectfully request that this Court dismiss Counts IV, V and VI of Plaintiff's Complaint with prejudice.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted factual inferences." McKerchie v. Wis. Cent. Ltd., 994 F. Supp. 2d 875 (W.D. Mich. 2014). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Ath. Equip., 48 F.4th 656 (6th Cir. 2022). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Hawthorne-Burdine v. Oakland Univ., 158 F. Supp. 3d 586, 590 (E.D. Mich. 2016). If the plaintiff does not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." England v. Denso Int'l Am. Inc., 136 F.4th 632, 634 (6th Cir. 2025). Although factual allegations are accepted as true, a plaintiff's legal conclusions stemming from those factual allegations are open

to scrutiny. Hobart-Mayfield, Inc., 48 F.4th 656. To survive a Rule 12(b)(6) motion to dismiss, a complaint's legal conclusions must be plausible considering the factual allegations made. Id. A plaintiff must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Moreover, "[t]his assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). Grinnell v. Bridlewood on Westland LLC, U.S. Dist. LEXIS 252319 (E.D. Tenn. Mar. 21, 2022). Indeed, our Circuit has made clear that "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss." Leonard v. Nokel LLC, 2021 U.S. Dist. LEXIS 133748 (E.D. Mich. July 19, 2021).

**COUNT IV: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

To prevail on a claim under the FDCPA, a plaintiff must show that (1) he or she is a "'consumer' as defined by the FDCPA, (2) the 'debt' arose out of transactions which are 'primarily for personal, family or household purposes[,]' (3) the defendant is a 'debt collector' as defined by the FDCPA, and (4) the defendant violated the prohibitions set forth in § 1692e." Bauman v. Bank of Am., N.A., 808 F.3d 1097, 1100 (6th Cir. 2015).

**1. Plaintiff Fails to State a Claim Under the Fair Debt Collection Practices Act Because Fines Are Not "Debts" Within the Meaning of 15 U.S.C. § 1692a(5)**

Plaintiff's FDCPA claim must be dismissed because fines do not constitute a "debt" as defined by the statute. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 USCS § 1692a. This definition imposes three requirements: the obligation must arise from (1) a transaction involving

(2) money, property, insurance, or services that are (3) primarily for personal, family, or household purposes. Oppenheim v. I.C. Sys., 627 F.3d 833 (11th Cir. 2010).

The statute's plain text excludes fines and penalties because they do not "aris[e] out of a transaction" in the requisite sense. A fine is a penalty imposed for breaking the law or obligation—not the result of a consensual transaction—so under the plain wording of the FDCPA, a complaint predicated on fines fails to state a claim. Gulley v. Markoff & Krasny, 664 F.3d 1073, 1074 (7th Cir. 2011). The text defines "debt" in a manner that necessarily excludes fines from coverage. Id. The consensus judicial interpretation is that the statute is limited in its reach "to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." Turner v. Cook, 362 F.3d 1219, 1222 (9th Cir. 2004). Indeed, the "arising out of" language limits the FDCPA's reach to only those obligations that are created by the contracts the parties used to give legal force to their transaction. Franklin v. Parking Revenue Recovery Servs., 832 F.3d 741 (7th Cir. 2016). Courts have consistently held that property taxes, municipal fines, per capita taxes, and similar government-imposed obligations are not "debts" under the FDCPA. Indeed, as to fines levied by community association, it has been found that "[t]he HOA fines were penalties against Plaintiff for violations of HOA rules and were not the result of a business dealing or an obligation to pay for goods or services . . . The unpaid fines are more akin to the tort award described by the Eleventh Circuit in Hawthorne, 140 F.3d at 1371-72, than the association fees and dues described by the Tenth Circuit in Ladick, 146 F.3d at 1206. Thus, the fines assessed against Plaintiff by the HOA do not create a "debt" under the FDCPA. Defendants therefore cannot be debt collectors within the meaning of the statute, and Count I of the Complaint must be dismissed." Durso v. Summer Brook Pres. Homeowners Ass'n, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008).

In this case, the Plaintiff is clear that the "charges at issue in this Count are not periodic assessments serviced in the ordinary course: they are violation-based penalty charges" 2nd Am. Comp. ¶239. The Plaintiff's position that the "sums sought" by Timmons are "debts" under the FDCPA because they arose from his "property ownership" based upon his "obligation to pay monetary assessments," is belied by his own allegations. Plaintiff alleges that "[a] monetary penalty imposed for an alleged rule violation is not a due, an assessment, or a fee for a service rendered, and the fines and violation-based administrative charges assessed against Plaintiff accrued on disputed rule-violation penalties, not on any service rendered to Plaintiff or on any assessment duly levied." 2nd Am. Comp. ¶51. The Plaintiff's allegations make it clear that the fines are unrelated to the assessments that he is obligated to pay pursuant to Exhibit 2 as his expressly notes that "[t]he Declaration authorizes liens only for unpaid assessments; it authorizes no lien for fines." 2nd Am. Comp. ¶226. Exhibits "A" and "2" identically define the purpose of assessments as "[t]he assessments levied by the Association shall be used exclusively to promote the recreation, health, safety and welfare of the residents of the Properties, and for the improvement and maintenance of the Common Area, as defined herein, including but not limited to the cost of labor, equipment, materials, landscaping, signs, management and supervision, payment of taxes assessed against the Common Areas, the procurement and maintenance of insurance in accordance with the Bylaws and in such amount or amounts as is customarily and normally maintained in subdivisions within the area, the employment of attorneys to represent the Association when necessary, arid such other needs as may arise." D. Mtn. Dis. Ex. "2," page 7 of 139 and ECF 30.

The Plaintiff relies on two cases in support of his contention that the fines constitute "debts;" Agrelo v. Affinity Mgmt. Servc., LLC and Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC. However, importantly, Agrelo did not find that the FDCPA applied to

homeowners association fines. Instead, that case found that under the Florida Consumer Collection Practices Act, fines constituted debts because the relevant documents treated fines as "assessments." Critically, the Agrelo court expressly found that "here, unlike in Hawthorne and Gulley, the homeowners' obligation arises from a contract—the governing documents—that explicitly treats HOA fines as assessments. According to the governing documents, "[a]ny fine levied against an Owner shall be deemed an individual assessment, and if not paid when due all of the provisions of [the governing documents] relating to the late payment of assessments shall be applicable. Consequently, the central question is whether a contractual obligation to pay HOA assessments creates a "debt" under the FCCPA. We hold that it does. HOA assessments stem directly from the consensual home-purchase transaction. When a home buyer must contractually agree to pay homeowners' assessments in order to purchase a home, that home buyer takes on "debts" for those assessments under the FCCPA . . . Because the governing documents contain a provision calling for the fine levied against the homeowners to be "deemed an individual assessment," the contractual language renders the fine in this case a "debt" subject to the FCCPA" Agrelo v. Affinity Mgmt. Servs., LLC, 841 F.3d 944 (11th Cir. 2016). Similarly, the Court in Haddad adopted the analysis of the Seventh Circuit wherein it held that "by paying for and accepting title to their home, the owners "became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association." Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 698 F.3d 290 (6th Cir. 2012). The "debt" at issue in the Haddad case was not fines at all but the actual regular assessments levied by the association. Id. In this case, as noted by the Plaintiff, Exhibit "A" does not treat fines as assessments. 2nd Am. Comp. ¶ 51 and 239 and ECF 30.

In the context of sums owed that are not treated as "assessments" under an association's governing documents, the undersigned was not able to locate any reported case where such sums have been found to constitute "debts" under the FDCPA. To the contrary, reported cases have found fines such as the type at issue, not to constitute debts. "[W]hile Plaintiffs did enter into certain contractual obligations when they purchased the Property, the relevant promise that arose from that purchase transaction is not an obligation to pay fines (in fact, Plaintiffs contest this very obligation), but rather an obligation to not rent the Property. When Plaintiffs breached that obligation, DCHA imposed fines. Whether or not such fines were authorized, the alleged financial obligation at issue in this lawsuit did not arise out of Plaintiffs' purchase of the Property, and instead came about because of Plaintiffs' subsequent breach of other obligations they made when they purchased the Property. Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP, 2014 U.S. Dist. LEXIS 163448 (N.D. Cal. 2014). The court in Mlnarik further found that "[b]ecause it is undisputed that Plaintiffs purchased the Property as a home, the fines at issue here must therefore be like the homeowners' association assessments that courts have found to be qualified consumer "debts" under the FDCPA . . . Thus, the fines arose from Plaintiffs' breach of the restrictive covenants, and not from their agreement to abide by the covenants at the time they purchased the Property. Defendants do not dispute (nor does this Court) the contention that an ongoing obligation to pay assessments to a homeowners' association is a consumer "debt" under the FDCPA because the promise to pay occurs when the homeowner purchases the property and therefore "arises" out of the consumer real estate transaction." Id. In another case it was held that "[t]he mere fact that Spiegel can tell a story that starts with his condominium purchase (and thus the Restated Declaration), and many steps later ends with the Cook County litigation, does not bring the financial demand Kim pursued in state court within the FDCPA's reach. To show that

Kim sought to collect a debt, Spiegel needed to more directly establish that the litigation demand for attorneys' fees "ar[ose] out of" a consumer transaction." Spiegel v. Kim, 952 F.3d 844, 847 (7th Cir. 2020). To be explicitly clear, the Plaintiff himself has pled that the fines "accrued . . . not on any assessment duly levied" but based on "disputed rule-violation[s]." 2nd Am. Comp. ¶51.

Further, even if the Association did not have the authority to levy fines pursuant to its governing documents, which is denied as Exhibit "B" to Exhibit "2" expressly allows the Association to "establish penalties for [] infractions," such a scenario still does not give rise to a cause of action. D. Mtn. Dis. Ex. 2, page 38 of 139. "Plaintiffs alternatively argue—without citing any case authority—that because DCHA did not have authority to impose fines under the relevant covenants, it is a violation of 15 U.S.C. § 1692f(1) to collect on such fines because they are not "expressly authorized by the agreement creating the debt" or "legally added." Plaintiffs' argument misconstrues § 1692f(1) and misses the mark. Section 1692f does not define what qualifies as a "debt" under the FDCPA but rather proscribes debt collector conduct: a debt collector may not use "unfair and unconscionable means" to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). Section 1692f(1) thus presupposes a qualifying consumer debt on top of which a debt collector may not add unauthorized fees or charges. The allegations in the FAC establish that the fines at issue here are not "incidental" to some underlying principal monetary obligation, nor do they directly stem from some underlying agreement in which Plaintiffs agreed to pay money. Rather, the fines were imposed due to Plaintiffs' breach of a restrictive covenant on the manner in which they could use the Property. Thus, Defendants' authority to impose fines for violating those covenants is of no

consequence to whether those fines are consumer "debts." Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP, 2014 U.S. Dist. LEXIS 163448 ((N.D. Cal. 2014).

Accordingly, as the fines at issue in this case are not "debts" within the meaning of the FDCPA and Count IV fails as a matter of law because Plaintiff's cannot support a required element of the cause of action.

**2. Plaintiff Fails to State a Claim Under the Fair Debt Collection Practices Act Because Timmons is Not a "Debt Collector" Within the Meaning of 15 U.S.C. § 1692a**

Plaintiff's FDCPA claim must be dismissed because Timmons is not a "debt collector within the meaning of the FDCPA. "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6) [15 USCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include— (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person. 15 USCS § 1692a.

In this case, Timmons does not qualify as a debt collector because (1) it was attempting to collect the fines incidental to a bona fide fiduciary obligation, and (2) the fines were not in default at the time Timmons obtained the matter.

**Fiduciary Obligation**

The Plaintiff pled that Timmons is the Associations "agent[s]" 2nd Am. Comp. ¶227. Plaintiff specifically and repeatedly refers to Timmons as the Association's "managing agent" and "Defendant Timmons Properties, as the Association's agent and property manager" 2nd Am. Comp. ¶¶ 262 and 265(d). In Tennessee, "[o]ur courts have long treated the relationship between principal and agent as fiduciary in nature and one of trust and confidence as to any matter arising from the agency relationship. Marshall v. Sevier Cty., 639 S.W.2d 440 (Tenn. Ct. App. 1982). Indeed, "[a]n "agent" is "a person authorized by another to act for him, one entrusted with another's business." SKS Commc'ns, Inc. v. Globe Commc'ns, Inc., 1994 Tenn. App. LEXIS 596 (Tenn. Ct. App. Oct. 21, 1994). "Agency relationships are fiduciary in nature, with the agent being bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer." E.C.T. v. Oldcastle Materials Southeast, 2006 U.S. Dist. LEXIS 113386 (E.D. Tenn. 2006).

In the context of property management, in a similar case, it was found that a management company owed a fiduciary obligation to the Association it managed. Specifically, the Eleventh Circuit found "[f]irst, Liberty owed a fiduciary obligation to the Association. Everything that Liberty did pursuant to the management agreement — including the collection of unpaid assessments and the enforcement of the amendment to the Association's governing declarations — was as the agent of the Association, and under Georgia law a "confidential relationship" Harris v. Liberty Cmty. Mgmt., 702 F.3d 1298, 1302 (11th Cir. 2012). Furthermore, the Tennessee Court of Appeals has found a fiduciary relationship where the property manager was the agent of the

property owners. Specifically, the court held that "t]he relationship between Carolyn Lyle, as property manager, and Appellants was fiduciary per se, and thus Ms. Lyle owed a fiduciary duty to Appellants Key v. Lyle, 2010 Tenn. App. LEXIS 264 (Ct. App. Apr. 13, 2010).

Notably, the case cited by the Plaintiff, Condo. Mgmt. Assocs. v. Fairway Vill. Owner's Ass'n, in support of his contention that Timmons did not perform its collections activities "incidental to any bona fide fiduciary duty," is inapposite. The court in Condo. Mgmt. Assocs. did not find or address whether the property manager was an agent of the association. Condo. Mgmt. Assocs. v. Fairway Vill. Owner's Ass'n, 2010 Tenn. App. LEXIS 105 (Ct. App. Feb. 8, 2010). Here, the Plaintiff explicitly has pled that Timmons is the agent of the Association.

Further, the Plaintiff cannot argue on that one hand, in Count VI, that he enjoyed a fiduciary relationship with Timmons while on the other hand arguing that Timmons does not have a fiduciary relationship with the Association. The very allegations that the Plaintiff relies on in Count VI further supports the fact that Timmons has a fiduciary relationship with the Association. In paragraph 261, the Plaintiff states Timmons owed the Plaintiff a fiduciary duty and such duty arose "from the special relationship created by Timmons' receipt and handling of Plaintiffs funds, its exclusive dominion and control over Plaintiffs account, its records, and his personal information, and Plaintiffs necessary reliance on Timmons' administration of that account." The actions the Plaintiff utilizes to support his claim of a fiduciary relationship only occurred because Timmons is the agent of the Association and tasked with such duties. Accordingly, the Plaintiff has failed to state a cause of action under the FDCPA against Timmons because it is not a "debt collector" since it is an agent and fiduciary of the Association.

**The Fines Were Not in Default**

The Plaintiff alleges that the collection of the fines "arose only after the charges became disputed and delinquent," but such a contention is at odds with the Exhibits to the Plaintiff's Complaint. Specifically, the Plaintiff admits that Timmons "posted the fines through the Vantaca portal" 2nd Am. Comp. ¶ 265(c). The posting, per Exhibit "P" occurred on 2/6/25 and 2/27/25. 2nd Am. Comp. Ex. "P," page 84 of 138, ECF 29 and 30. The Plaintiff also states that Timmons was responsible for "managing day-to-day operations including violation enforcement, fine issuance, and financial management through the Vantaca portal system. 2nd Am. Comp. ¶ 9. Exhibit "P" clearly shows that the fines were placed on his account on 2/6/25 and 2/27/25 but it was not until 3/28/25 that any collection notice was issued to the Plaintiff by Timmons. 2nd Am. Comp. Ex. "P," page 84 of 138, ECF 29 and 30. The violations were posted to the Plaintiff's account at the earliest nearly a month prior to the collection notice.

The Plaintiff's allegation that Defendant Timmons "authority to undertake collection of these particular violation-based charges" "arose only after the charges become delinquent" is directly contradicted by the February 27, 2025 "Third Reminder Notice" and Exhibit "P" because the "Third Reminder Notice" informed the Plaintiff that the fine had been added to the account and Exhibit "P" confirms that the fine was in fact added to the account on that date. 2nd Am. Comp. Ex. "P," and D. Mtn. Dis. Ex. 1. The Third Reminder Notice did not demand payment or state that the fine was delinquent. "When an exhibit contradicts the complaint, the exhibit trumps the allegations." Kaplan v. Univ. of Louisville, 10 F.4th 569, 572 (6th Cir. 2021).

The Exhibits to the Plaintiff's Complaint demonstrate that the fines were not in default at the time that Timmons began handling the matter. Accordingly, the Plaintiff has failed to state a cause of action under the FDCPA against Timmons because it is not a "debt collector" since the fines were not in default at the time it began handling the matter.

**COUNT V: Violation of the Tennessee Consumer Protection Act**

1. **Plaintiff Fails to State a Claim Under the Tennessee Consumer Protection Act**

In order to recover under the TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act; and (2) that the defendant's conduct caused an "ascertainable loss of money or property . . . ." Id. (quoting Tenn. Code Ann. §47-18-109(a)(1)); see also Cloud Nine, L.L.C. v. Whaley, 650 F. Supp. 2d 789, 798 (E.D. Tenn. 2009) ("plaintiffs asserting claims under the [TCPA] are required to show that the defendant's wrongful conduct proximately caused their injury). The statute of limitations governing private actions brought under the TCPA is one year from the date of discovery of the unlawful act." Audio Visual Artistry v. Tanzer, 403 S.W.3d 789 (Tenn. Ct. App. 2012). Relative to this action and as pled by the Plaintiff in paragraph 252 of the Complaint, the Plaintiff alleges that the Defendants violated the following section of the statute:

(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

(12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law. 2nd Am. Comp. ¶252.

Count V of Plaintiff's Complaint is subject to dismissal for failure to state a cause of action because (1) the actions of the Defendants, even if true (which they are not) do not qualify/involve as trade, commerce or consumer transactions and (2) the Plaintiff failed to plead Count V with the requisite particularity required.

1. **No Trade, Commerce or Consumer Transaction Occurred or is Implicated.**

The TCPA states "[t]rade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever

situated. Tenn. Code Ann. § 47-18-103. Relying in part on the Act's purpose of "maintaining ethical standards of dealing *between persons engaged in business* and the consuming public," Tenn. Code Ann. § 47-18-102(4) (emphasis added), courts have limited the Act's application to "transactions between businesses and consumers and not to casual, non-commercial transactions between two individuals." Fayne v. Vincent, 301 S.W.3d 162 (Tenn. 2009).

In this case, the conduct/action which form the basis of Plaintiff's TCPA claim relate to (1) community-wide violation notices, (2) statements/communications made in connection with the Plaintiff's request for an accommodation under the Fair Housing Act, (3) levying fines, and (4) collection of fines.

As to paragraphs 252(a), (b) and (c) of Plaintiff's Complaint, the conduct/actions complained of do not involve a consumer transaction. It is clear, and indeed, there are no allegations in the Complaint, that the conduct/actions involved the advertising of any goods, services or property, that the conduct/actions involved the offering for sale of any goods, services or property, that the conduct/actions involved the offering for sale, lease or rental of any goods, services or property, or that the conduct/actions involved the distribution of any goods, services or property. "The parameters of the Act . . . do not extend to every action of every business in the State. The terms "trade or commerce" are specifically defined to limit the Act's application." Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838 (Tenn. 1996). In examining the scope of the Act, the court found that "[t]he actions of the Bank and its agent, even if considered to be unfair or deceptive, did not affect the "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Pursell's allegation, if taken as true, establishes only that the defendants breached an agreement to return to him his own property. Such

allegations do not form the basis of an action under the Tennessee Consumer Protection Act. *Cf. City of Cars, Inc. v. Simms,* 526 So. 2d 119 (Fla. Ct. App. 1988) (Litigation relating to repossession and disposition of collateral does not support an award under the Florida Deceptive and Unfair Trade Practices Act). Id.

As to paragraph 252(d), the collection of the fines does not constitute trade or commerce. "The TCPA does not reach debt collection activity unless that activity stems from an underlying transaction that constitutes trade or commerce. Compare Hunter v. Washington Mut. Bank, No. 2:08-CV-069, 2008 U.S. Dist. LEXIS 71587, 2008 WL 4206604, at *5-6 (E.D. Tenn. Sept. 10, 2008) (stating that the TCPA does not apply to debt collection activities associated with a home foreclosure) and Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 841-42 (Tenn. 1996) (concluding that repossession of collateral securing a loan does not affect "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property" as required by the TCPA)." Wright v. Linebarger Googan Blair & Sampson, LLP, 782 F. Supp. 2d 593, 609 (W.D. T.N. 2011).

As noted by the Plaintiff, the fines were levied because of "rule-violation[s]." 2nd Am. Comp. ¶ 51. Thus, the underlying transaction which gave rise to the fines was not the Plaintiff's purchase of his property but his post-acquisition violation of the rules of the Association. Indeed, the violations occurred nearly ten years after the Plaintiff's acquisition of the property. Just as with the FDCPA analysis above, simply because the Plaintiff's story begins with his purchase of the property, that does not mean that the conduct/actions he complains of fall within the definition of trade, commerce or consumer transactions. In a similar case, it was found that "it is difficult—if not impossible—to characterize a misrepresentation in the exercise of this lien as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or

intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." § 47-18-103(24). After all, retrieving property securing an outstanding payment is not "advertising, offering for sale ... or distribut[ing]" any goods or services. In fact, retrieving the property is not even part of HYC performing its affirmative obligations under the contract; instead, it is HYC applying a contractual remedy to OJC's failure to perform. (See Ex. 3.) And that collections practice is far removed from the transaction for logistics services. HYC Logistics Inc. v. OJCommerce, LLC, 2025 U.S. Dist. LEXIS 121654, *24-25 (W.D. Tenn. 2025).

Moreover, even if Plaintiff is correct that a lien could not be placed on his property for non-payment of the fines, such a claim still does not give rise to a violation of the TCPA. *See* Mini Sys. v. Alexander, 2020 Tenn. App. LEXIS 530) (holding "[s]econd, it is clear that any allegations concerning threats of a lawsuit or the filing of a mechanic's lien do not concern the representation of a good or service as required by section 47-18-104(b)(7)."

**2. Plaintiff Has Failed to Plead his TCPA with the Particularity of Common-Law Fraud Claims Under Tenn. R. Civ. P. 9.02**

Lastly, the Plaintiff has failed to plead Count V with the requisite particularity required. "[C]laims under the TCPA must meet the particularity requirements of Rule 9.02 of the Tennessee Rules of Civil Procedure. *Glanton v. Bob Parks Realty*, No. M2003-01144-COA-R3-CV, 2005 Tenn. App. LEXIS 263, 2005 WL 1021559, at *6 (Tenn. Ct. App. Apr. 27, 2005) (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275-76 (Tenn. Ct. App. 1999); *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990)) (holding that TCPA "claims must be stated with the particularity of common-law fraud claims under Tenn. R. Civ. P. 9.02"). Rule 9.02 provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." " Meade v. Paducah Nissan, LLC, 2022 Tenn. App. LEXIS 225 (Ct. App. June 9, 2022). Plaintiff does not even plead that he is a "consumer" under

the TCPA. Importantly, the Plaintiff does not qualify as a consumer with respect to the allegations of Count V. Under the TCPA, a "consumer" seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated by any person who purchases or to whom is offered for sale a franchise or distributorship agreement or any similar type of business opportunity. § 47-18-103(6). In an instructive case, it was found that the Plaintiff "OJC was a consumer when it initially purchased logistics services from HYC. But this claim centers around misrepresentations to the California port when HYC was exercising its lien. As the jury found, OJC had already breached the contract by failing to pay for services HYC had rendered, so HYC was trying to recover past-due charges. It was not attempting to solicit additional business. Also OJC was not "seek[ing] or acquir[ing]" new or additional services from HYC. In fact, OJC could not have been doing so because it was not involved in any of these discussions at the port." HYC Logistics Inc. v. OJCommerce, LLC, 2025 LX 101813 (W.D. Tenn. June 26, 2025).

**COUNT VI: BREACH OF FIDUCIARY DUTY**

Plaintiff fails to state a cause of action against Timmons for breach of fiduciary duty. The elements of a claim for breach of confidential relationship are: "(1) the defendant was in a position to influence or control the plaintiff; (2) the defendant used the confidences given to him or her to obtain some benefit from, or advantage over, the plaintiff; and (3) the plaintiff, as the dominated party in the relationship, suffered some detriment at the hands of the defendant." Heflin v. Iberiabank Corp., 571 S.W.3d 727, 736 (Tenn. Ct. App. 2017).

As an initial matter, the Plaintiff has failed to plead any facts supporting the second element. Importantly, the facts pled in support of there being a "confidential relationship" are

directly contrary to the case cited by the Plaintiff in support of Count IV, Condo. Mgmt. Assocs. v. Fairway Vill. Owner's Ass'n. In this case, the Tennessee Court of Appeals held that no fiduciary or confidential relationship existed between a manager and a community association. Condo. Mgmt. Assocs., 2010 Tenn. App. LEXIS 105. The facts pled by the Plaintiff are nearly identical to the duties and actions required of the manager in the Condo. Mgmt. Assocs. v. Fairway Vill. Owner's Ass'n case (receipt and handling of funds, administration of accounts, maintaining records, etc.). The court found that such duties "reveal[] that the parties were merely engaged in an arm's length business transaction, for which no fiduciary status is conferred." Id. The Plaintiff again seems to want to have it both ways by arguing that Timmons is not in a confidential relationship with the Association for purposes of trying to impose FDCPA liability of it but on the other hand, in order to impose liability of Timmons in this count that he enjoys such a relationship. Instead, the Plaintiff's relationship to Timmons is more similar to the relationship examined in the following case as between a tenant and property manager: "The relationship between Briggs and Quadrelle was not a fiduciary relationship or a relationship characterized by one party placing trust and confidence in the other. Under the "as is, where is" lease, the parties were dealing with each other in an arm's length commercial transaction." Briggs & Stratton Power Prods. Grp., LLC v. Osram Sylvania, Inc., 2017 Tenn. App. LEXIS 783 (Tn. Ct. App. 2017).

As argued above, while Timmons was an agent of the Association and owed it fiduciary duties, the Plaintiff is not a beneficiary of said status such that he enjoys the same relationship with Timmons. Key v. Lyle, 2010 Tenn. App. LEXIS 264.

To the extent that the Plaintiff is actually asserting a claim for breach of contract, he would have no standing to do so. "As a general rule, a person who is not a party to a contract cannot sue for a breach of the contract even if the person receives some incidental benefit from the contract."

Greenacre Props. v. Rao, 933 So. 2d 19, 23 (Fla. Dist. Ct. App. 2006). "This contract creates no express rights for the homeowners vis-a-vis Greenacre Properties. While the homeowners may incidentally benefit from the record-keeping efforts of Greenacre Properties, it cannot be disputed that Greenacre Properties is performing that function primarily for the Association to assure that the Association fulfills its legal obligations." Id. "We see nothing in the indirect relationship between an association's members and the agents performing the association's duties under a written contract that would create a fiduciary duty affecting the matters described in the complaint." Id.

Furthermore, the allegations that the Plaintiff relies on to establish that Timmons breached a duty are all claims related not to the Plaintiff, his account, his funds, etc. but related to administering unauthorized expenditures, posting fines through the Vantaca portal, and failing to disclose the financial irregularities to members. 2nd Am. Comp. ¶ 265(c). These alleged improper actions are neither directed toward the Plaintiff nor uniquely involve the Plaintiff. Assuming arguendo that the claims are true (which they are not), if anything, the Association would have a claim against Timmons. Such a cause of action is held only by the Association and the Plaintiff cannot bring the claim individually. "A homeowner's association, as a nonprofit corporation, [is] subject to the Act and therefore . . . the authority of its board [can] only be challenged through a derivative proceeding brought in the right of the corporation to procure a judgment in its favor as set forth in Tennessee Code Annotated section 48-53- 104(b) and Tennessee Code Annotated section 48-56-401(a)(1). Id." Kirby Parkway Prof'l Condo. Ass'n v. Cindy-Jarvis Ltd. L.P., 2020 Tenn. App. LEXIS 598 (Tn. Ct. App. 2020). As to claims for breach of fiduciary duty, such a claim is derivative. *See* Keller v. Estate of McRedmond, 495 S.W.3d 852, 865 (Tenn. 2016) (holding "a claim based on directors' or officers' breach of fiduciary duty to the corporation through

mismanagement of the corporation, waste of corporate assets, or self-dealing is usually considered derivative in nature, because any harm resulting from the wrongful conduct was to the corporation.).

## CONCLUSION

For the foregoing reasons, Counts IV, V and VI of Plaintiff's Second Amended Complaint are subject to dismissal pursuant to Rule 12(b)(6) for failing to state causes of action. The Defendants, respectfully request that this Honorable Court grant their Motion, dismiss the Counts with prejudice, find that the Counts were frivolous, and award them attorney's fees and costs.

Respectfully, submitted,

/s/ Marielle Westerman, Esq.

Marielle Westerman, Esquire
BPR No. 040074
Westerman Law, PLLC
725 Cool Springs Blvd, Ste. 600
Franklin, TN 37067
Telephone No.: (629) 256-6179
Primary Email: mwesterman@westerman.law

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2026, I electronically filed the foregoing Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record who are registered CM/ECF users. I further certify that a copy of the foregoing was served by U.S. Mail upon the pro se Plaintiff, Kevin M. Donovan.

/s/ Marielle Westerman, Esq.
Marielle Westerman, Esquire
BPR No. 040074
Westerman Law, PLLC
725 Cool Springs Blvd, Ste. 600
Franklin, TN 37067
Telephone No.: (629) 256-6179
Primary Email: mwesterman@westerman.law