**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KEVIN M. DONOVAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BENT CREEK HOMEOWNERS ASSOCIATION, INC.; TIMMONS PROPERTIES, INC.; KAMAN & CUSIMANO, LLC, LYNN BURKA, individually and as agent of Timmons Properties; ROBERT STEVE CODY, individually and as President of the Board; JEREMY EDGE, individually and as Board Member; DAVID RAISSI, individually and as Board Member; JARED BURKE, individually and as Board Member; MELISSA PLANK, individually and as Vice President; SUSANNAH MILLAR, individually and as Secretary; TIM BARRY, individually and as Board Member; SCOTT D. WEISS, individually and as agent of K&C; KIEL KOVALCIK, individually and as agent of K&C; DANIEL J. MISKE, individually and as agent of K&C; HEIDI NATHAN, individually,**<br><br>**Defendants.** | ) | **Case No. 3:26-CV-00700**<br><br>**JURY TRIAL DEMANDED** |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF</u>**
**<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

COME NOW Defendants, Kaman & Cusimano, LLC ("K&C"), Scott D. Weiss, individually and as agent of K&C, Kiel Kovalcik, individually and as agent of K&C, and Daniel J. Miske, individually and as agent of K&C (collectively the "K&C Defendants"), and move this Court for entry of an Order dismissing Plaintiff Kevin M. Donovan's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). Despite amendment, Plaintiff's Second Amended Complaint is nothing but a shotgun pleading that contains immaterial factual allegations and legal conclusions. Plaintiff also makes statutory claims against the K&C

Defendants that fail as a matter of law. In support of their Motion, the K&C Defendants state as follows:

## ALLEGED FACTS

This matter arises out of a simple homeowners association dispute. Plaintiff owns a home in Bent Creek, a residential subdivision located in Nolensville, Tennessee. Compl., at ¶ 5, 36. Bent Creek has long been governed by a homeowners association, Defendant Bent Creek Homeowners Association, Inc. ("the HOA"). Compl., at ¶ 7. Apparently, Plaintiff is not satisfied by the manner in which the HOA governs his subdivision. He seeks to impose liability on the HOA for what he alleges to be its campaign to target him personally through its existing instrumentalities, such as the imposition of authorized fines and escalation of enforcement procedures. Compl., at ¶ 1, 2. Yet it is not only the HOA that Plaintiff takes issue with here. He rather alleges that the outside law firm engaged to represent the HOA was somehow part of this campaign as well. Compl., at ¶ 2, 12-14.

Though it is difficult to determine exactly which of the alleged facts that Plaintiff includes in his Second Amended Complaint are actually relevant, Plaintiff appears to take issue with the manner in which the HOA and its property management company Timmons Properties, Inc.'s ("Defendant Timmons Properties") imposition of fines and enforcement mechanisms, particularly related to what they viewed as Plaintiff's HOA violations. *See, e.g.*, Compl., at ¶ 2, 36-39, 87-100.

The Second Amended Complaint alleges that Plaintiff suffers from a disability that is recognized under the Fair Housing Act. Compl., at ¶ 38. Apparently, this disability substantially limits Plaintiff's ability to perform certain physical tasks, "including the exterior property maintenance demanded by the HOA." Compl., at ¶ 39. Plaintiff claims that he requires "the reasonable accommodation of additional time to cure exterior violations." Compl., at ¶ 39. Plaintiff

requested such an accommodation by email to Defendant Timmons Properties on May 19, 2025. Compl., at ¶ 97. Plaintiff apparently needed more time to relocate a camper he had parked in front of his home outside the subdivision than was given under the HOA covenants and rules. *See, e.g.*, Compl., at ¶ 88-99.

According to the Second Amended Complaint, Plaintiff followed his request for accommodation by email with a formal written request for accommodation to Defendant Timmons Properties on June 1, 2025. Compl., at ¶ 100. Defendant Timmons Properties then referred the matter to K&C for "legal escalation." Compl., at ¶ 100. This is the only way the accommodation dispute reached K&C, causing it to become involved in the issues presented by Plaintiff's Second Amended Complaint. However, based on this referral, apparently the K&C Defendants became part of a wide-reaching campaign to target Plaintiff through various means incoherently described throughout the Second Amended Complaint.

Even so, the conduct that Plaintiff attributes to the K&C Defendants is nothing more than the work of counsel in an enforcement dispute. They responded to Plaintiff's accommodation request, pursued collection of disputed charges, and the like all as part of their legal representation of the HOA. This common thread is implicit in all allegations made in Plaintiff's Second Amended Complaint.

Plaintiff ultimately filed a Complaint on May 27, 2026. He then filed a First Amended Complaint shortly thereafter, on June 4, 2026. Plaintiff then filed a Second Amended Complaint on August 17, 2026.

Plaintiff's Second Amended Complaint is seventy-nine pages in length, spanning three-hundred and seventy-eight paragraphs. It asserts at least ten overlapping causes of action, including violations of the Fair Housing Act, the Fair Debt Collection Practices Act, the Tennessee

Consumer Protection Act, and the Racketeer Influenced and Corrupt Organizations Act, as well as various state-law claims. The Second Amended Complaint sues fourteen Defendants, including the K&C Defendants. While not entirely clear, it appears that Plaintiff brings seven of the ten causes of action included in his Second Amended Complaint against at least one or more of the K&C Defendants.

## **STANDARD OF REVIEW**

The failure to state a claim upon which relief can be granted subjects a complaint to dismissal by grant of a motion brought under Federal Rule of Civil Procedure 12(b)(6). The court must accept as true all well-pled factual allegations made in the complaint. The complaint is well-pled if it contains "enough facts to state a claim for relied that is plausible on its face," allowing the court to draw a reasonable inference that the defendant is liable for the allegations made. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). However, threadbare recitals of the elements of a cause of action are not enough. *Allergan, Inc. v. Revance Therapeutics, Inc.*, 711 F. Supp. 3d 873, 884 (M.D. Tenn. 2024) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)); *see also Thomas v. Tennessee Dep't of Hum. Servs.,* 2022 WL 2286780, at *4-5 (M.D. Tenn. June 23, 2022). Additionally, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. The complaint must demonstrate a right to relief that rises above a speculative level. *Kovalchuk v. City of Decherd, Tennessee,* 95 F.4th 1035, 1037, 2024 WL 1153487 (6th Cir. 2024) (quoting *Twombly,* 550 U.S. at 545).

The evaluation of a complaint on a Rule 12(b)(6) motion necessarily implicates the pleading requirements imposed by Rule 8(a)(2). This most foundational of these requirements is that a complaint must contain a "short and plain statement" of the claim showing that the plaintiff

is entitled to the relief he seeks. Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to ensure that defendants have "'adequate notice of the claims against them and the grounds upon which each claim rests.'" *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). Additionally, each of the complaint's allegations must be simple and concise. Fed. R. Civ. P. 8(d)(1). The failure to adhere to these pleading requirements subjects a complaint to dismissal pursuant to Rule 8(a)(2).

Finally, a claim sounding in fraud is subject to the heightened pleading requirements set forth in Rule 9(b). In addition to the plausibility required of other claims, a plaintiff asserting a fraud claim must plead "with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). This requirement is imposed in recognition of the "more specific form of notice" that is necessary to permit a defendant to develop an informed response to a fraud claim. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). The pleading must allege, at a minimum, "'the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal citations omitted). In short, the complaint must allege the fraud with sufficient particularity to support an inference that it was knowingly done, which requires specific factual allegations. *Id*.

## LAW & ARGUMENT

Plaintiff's Second Amended Complaint constitutes an impermissible shotgun pleading under Rules 8(a)(2) and 12(b)(6). It also fails to state a claim upon which relief can be granted as to each of the K&C Defendants. The claims made against the K&C Defendants are all based on statute. However, none of the statutes that Plaintiff claims the K&C Defendants have violated actually reach the conduct that he attributes to them, which is limited to work done in the course

of their legal representation of the HOA. As a result, Plaintiff's Second Amended Complaint should be dismissed in its entirety against the K&C Defendants.

## I. Plaintiff's Second Amended Complaint should be dismissed as an Improper Shotgun Pleading.

Plaintiff's Second Amended Complaint is nothing but the latest in a series of shotgun-style pleadings aimed at subjecting the K&C Defendants to the threat of litigation without articulating the specific claims Plaintiff has against them. This disregards the pleading requirements set forth in Rule 8(a)(2). As a result, the Second Amended Complaint should be dismissed against the K&C Defendants.

The shotgun approach to pleading involves the failure to articulate its claims with sufficient clarity to allow the defendant to respond to them. It sets forth its allegations in a manner that makes it "'virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief.'" *Cazalas v. Int'l Paper Co.*, 2025 WL 539957, at *3 (W.D. Tenn. Feb. 18, 2025) (quoting *Arnold v. CooperSurgical, Inc.*, 681 F.Supp.3d 803, 824 (S.D. Ohio 2023)); *see also Lee,* 951 F.3d at 393. This is often done by overwhelming the defendant with an "'unclear mass of allegations,'" most of which are immaterial to the claims being made. *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 640 (E.D. Mich. 2024) (internal citations omitted). The matter is made even worse when the pleading implicates multiple defendants, making it difficult to determine which specific defendant is liable for which claim. *Loggins v. Costco Wholesale Corp.,* 2022 WL 2161521, at *3 (W.D. Tenn. June 15, 2022) (quoting *Banks v. Bosch Rexroth Corp.*, 2014 WL 868118, at *7 (E.D. Ky. Mar. 5, 2014)). In short, a shotgun pleading fails to provide the notice required by the pleading standards set forth in our jurisprudence. They are thus impermissible.

Plaintiff's Second Amended Complaint is a classic shotgun pleading, fraught with allegations presented in a manner that renders it unintelligible. This is evident from its sheer length

alone. The Second Amended Complaint is seventy-nine pages, spanning three-hundred and seventy-eight numbered paragraphs. It brings an assortment of claims against a wide array of defendants in what largely appears to be an effort to throw everything at the wall in the hope that some of it will stick. This is a far cry from the short and plain statement contemplated by Rule 8(a)(2).

Yet more significant is the Second Amended Complaint's presentation of its factual allegations. Plaintiff devotes over a third of his Second Amended Complaint to his so-called Factual Allegations, which is set forth in a manner that is difficult to follow. Compl., at ¶ 36-201. Nearly all of these Factual Allegations amount to immaterial background information that appear unrelated to the claims that Plaintiff makes against the K&C Defendants. *See Lucena v. Tootsies Entm't, LLC*, 2026 WL 469476, at *4 (M.D. Tenn. Feb. 3, 2026). While there may be some material allegations, they are "buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). This manner of pleading leaves the K&C Defendants unable to determine which factual allegations support the causes of action made against them. Put simply, it fails to give Defendants fair notice of the claims that Plaintiff seeks to make against them.

This is especially true given the Second Amended Complaint's group pleading approach. Plaintiff often groups the many defendants he has sued together, without distinguishing between any of them. The Second Amended Complaint is replete with references to the general term "Defendants." *See, e.g.*, Compl., at ¶ 57, 78, 82, 87, 95-96, 99-100, 135, 170-171. However, there are fourteen parties who have been sued as defendants in this case. The reference to "Defendants" alone is not enough to place each separate defendant on notice of the allegations supporting the claims that Plaintiff specifically makes against them. Certainly, the K&C Defendants cannot be

expected to provide informed responses to allegations that fail to differentiate between them and other unrelated defendants in this case.

Overall, Plaintiff's shotgun approach to pleading has left the K&C Defendants unable to frame any kind of meaningful response to his Second Amended Complaint. The breadth of the immaterial factual allegations and legal conclusions asserted in the Second Amended Complaint render it indecipherable. *Lucerna*, 2026 WL 469476, at *4. In failing to present his claims in the manner required by Rule 8(a)(2), Plaintiff has deprived the K&C Defendants of the notice they are entitled to when they are before this Court. The K&C Defendants should not be left with no choice but to speculate as to the nature of the claims made against them. As a result, the Second Amended Complaint should be dismissed for failure to adhere to the notice pleading requirements.

Significantly, Plaintiff's efforts to amend his pleading have not cured its many deficiencies. While the Second Amended Complaint addressed the format of the pleading as a whole, the individual allegations in the pleading remain unintelligible. Plaintiff continues to make sweeping allegations against a wide array of defendants without properly differentiating between them or otherwise providing notice of the specific claims he makes against them. Rather, Plaintiff would still have all the defendants to this action and the Court sift through hundreds of allegations to determine which factual allegations support which claim, against which defendants. The preliminary statement that Plaintiff makes does nothing to change that. It certainly cannot substitute the short and plain statement that is required by the Rule 8(a)(2).

Plaintiff has now had three bites of the proverbial apple. However, he still cannot seem to make his case in accordance with the pleading requirements set forth in the Federal Rules. This is impermissible. As a result, Plaintiff's Second Amended Complaint should be dismissed with prejudice against the K&C Defendants.

## II. Plaintiff's Second Amended Complaint should be dismissed for Failure to State a Claim against the K&C Defendants.

Plaintiff's shotgun approach to pleading has left the K&C Defendants with no choice but to speculate about the allegations supporting the claims made against them. What does appear clear, however, is that the Second Amended Complaint names not only K&C, but three of its individual attorneys as defendants in this case. Compl., at ¶ 20, 23, and 25. Plaintiff brings suit against these K&C attorneys both in their individual capacities and as agents of K&C. Compl., at ¶ 20, 23, and 25. However, Plaintiff fails to state a claim as to any of the K&C Defendants in several respects.

This is especially true of K&C attorneys Kovalcik and Miske. The plain reading of the Second Amended Complaint demonstrates a lack of any real allegation of actionable conduct on the part of these two K&C Defendants. Plaintiff waxes on about his grievances for nearly four-hundred paragraphs in his Second Amended Complaint. However, only one of these paragraphs makes a direct allegation toward Defendant Kovalcik. Compl., at ¶ 133. Plaintiff states in this one paragraph that Defendant Kovalcik asserted in a telephone call to Plaintiff that "Defendants possessed video recordings of Plaintiff making threats," but that "Plaintiff made no such threats." Compl., at ¶ 133. He wedges this allegation between two paragraphs concerning a video conference with Defendant Weiss, again emphasizing the disjointed nature of his Second Amended Complaint. Compl., at ¶ 132-134. However, at no point does Plaintiff connect this one factual allegation concerning Defendant Kovalcik to any of the causes of action he attempts makes against him. The Second Amended Complaint is entirely devoid of any other mention of Defendant Kovalcik, aside from the few allegations in which Defendant Kovalick is simply grouped in with the other K&C Defendants without any further thought to his specific actions. Compl., at ¶ 232, 251, 291, 304, and 346. This is precisely the type of conclusory pleading that does not suffice

under Rule 12(b)(6). Plaintiff cannot rely on Defendant Kovalick's mere association with K&C to make his claims against Kovalick plausible. Additionally, the only claims that Plaintiff has asserted against Defendant Kovalcik are statutory violations. Compl., at Counts II, IV, V, and IX. Plaintiff has failed to plead any of the elements of these statutory violations as to Defendant Kovalcik, specifically. As a result, Plaintiff has failed to state a claim against Defendant Kovalcik and all claims against him should be dismissed.

The same is true of Defendant Miske. Plaintiff's grievances with Defendant Miske are centered on a bar complaint that Defendant Miske filed against Plaintiff, an attorney licensed in Michigan. Compl., at ¶ 25, 105-112. Plaintiff claims that Defendant Miske filed this bar complaint in retaliation for Plaintiff's exercise of his protected rights under the Fair Housing Act, in violation of 42 U.S.C. § 3617. Compl., at ¶ 109, 214-220. However, this is not enough to state a claim against Defendant Miske under the FHA. Plaintiff has failed to plead any of the elements that he must establish to hold Defendant Miske liable under this statute. *Hood v. Midwest Sav. Bank,* 95 Fed.Appx. 768, 779 (6th Cir. 2004). Significantly, the Second Amended Complaint lacks allegations that the bar complaint actually interfered with Plaintiff's ability to secure his requested accommodation or any other right. *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994). It likewise fails to allege that Defendant Miske participated in the review of his accommodation request. Rather, the only allegation that Plaintiff has made is that Defendant Miske filed a "retaliatory" bar complaint, which by Plaintiff's own admission was dismissed on August 28, 2025. Compl., at ¶ 25. This conclusory allegation is not enough. Thus, Plaintiff's FHA claim fails as to Defendant Miske and should be dismissed.

Plaintiff's attempt to convert his grievances surrounding the bar complaint into a basis for liability under the other three statutes fares no better. The only claims that Plaintiff has asserted

against Defendant Miske are statutory violations, just as is true of the claims asserted against Defendant Kovalick. Compl., at Counts II, IV, V, and IX. However, Plaintiff has failed to plead any of the elements of these statutory violations as to Defendant Miske as well.

The claims asserted against Defendant Kovalick and Miske under the Fair Debt Collection Practices Act serve as a good example. Compl., at Count IV. The Second Amended Complaint includes a conclusory allegation that Defendants Kovalick and Miske are debt collectors under the FDCPA. Compl., at ¶ 232. Yet it does not identify a single debt-related communication made by Defendants Kovalick or Miske. Plaintiff has once again failed to plead any of the elements of this alleged statutory violation as is required by Rules 8(a)(2) and 12(b)(6). The same is true of the claims he makes against these individual defendants under the other statutes. Compl., at Counts V and IX. Instead, Plaintiff resorts to improper group pleading without including any facts sufficient to demonstrate that Defendants Kovalick and Miske engaged in specifically-identifiable conduct subjecting them to liability themselves. As a result, the claims that Plaintiff attempts to make against Defendants Kovalick and Miske should be dismissed for failure to state a claim.

### A. Plaintiff's Tennessee Consumer Protection Act Claim (Count V) Fails as to the K&C Defendants

The Second Amended Complaint attempts to impose liability on all of the K&C Defendants, individually and as a firm, for violation of the Tennessee Consumer Protection Act (TCPA). Compl., at ¶ 249-258. However, Plaintiff has no basis to assert such a claim against the K&C Defendants. Attorneys engaging in their professional roles are exempt from the TCPA. *Franks v. Sykes,* 600 S.W.3d 908, 911-912 (Tenn. 2020). This professional exemption has been recognized time and time again, including by the Sixth Circuit. *Pagliara v. Johnston Barton Proctor & Rose, LLP*, 708 F.3d 813, 820 (6th Cir. 2013) (recognizing that Tennessee courts "have held in no uncertain terms that the TCPA cannot be used to impose liability on lawyers practicing

law."). Put simply, the TCPA cannot be used to impose liability on attorneys practicing law. *Id.*; *see also Sykes,* 600 S.W.3d 908, 911.

This exemption makes sense. The practice of law does not involve trade or commerce as those terms are meant under the TCPA. *In re Law Sols. Chicago LLC,* 629 S.W.3d 124, 131 (Tenn. Ct. App. 2021). While attorneys can be held liable under the TCPA for matters related to the business aspects of their practice, they cannot be held liable for matters related to their legal services themselves. *Id.*; *see also Sykes,* 600 S.W.3d at 911-912. As a result, the TCPA does not reach an attorney's negotiation, communication, or other actions undertaken as part of his legal representation of a client. *Pagliara,* 708 F.3d 813, 820 (6th Cir. 2013).

The conduct that the Second Amended Complaint attributes to the K&C Defendants is classic legal practice. Plaintiff specifically alleges that K&C was retained to serve as counsel for the HOA. Compl., at ¶ 12, 40. He then attempts to claim that the K&C Defendants "misrepresented the status and enforceability of debts through formal collection communications, including the July 28, 2025 response to physician documents." Compl., at ¶ 251. However, the K&C Defendants only sent these communications on behalf of the HOA, their client. Compl., at ¶ 12-13. This can only be described as the provision of legal services. Certainly, responding to an accommodation request and pursuing disputed charges on behalf of a client are actions that the K&C Defendants took in their professional capacities, not their business capacity. As a result, the very allegations in the Second Amended Complaint demonstrate that the K&C Defendants are exempt from the TCPA. Thus, this claim fails as a matter of law as to the K&C Defendants.

### B. Plaintiff's RICO Claims (Counts VIII and IX) Fail as to the K&C Defendants

The Second Amended Complaint also attempts to impose liability on the K&C Defendants for alleged violations of the Racketeer Influenced and Corrupt Organizations Act. It alleges a civil

RICO violation against Defendant Scott D. Weiss, an attorney at K&C. Compl., at ¶ 282-367. It also alleges RICO Conspiracy against all of the K&C Defendants, as relevant here. Compl., at ¶ 368-375.

For his underlying RICO claim under 18 U.S.C. § 1962(c), Plaintiff alleges that Defendant Weiss conducted the affairs of the enterprise that he alleges K&C was part of through a pattern of racketeering activities. Compl., at ¶ 284. To state a RICO claim, a plaintiff is required to plead the following elements: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity. *Ouwinga v. Benistar 419 Plan Servs., Inc*., 694 F.3d 783, 791 (6th Cir. 2012) (internal citations omitted). Plaintiff has failed to appropriately plead these elements here.

First, Plaintiff fails to set forth allegations sufficient to demonstrate conduct. Section 1982(c) reaches only those who participated in the conduct of the RICO enterprise's affairs. *Id*. at 791-92 (citing 18 U.S.C. § 1962(c)). This requires proof that the defendant participated in the "operation or management" of the enterprise. *Id*. (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 183 (1993)). Significantly, attorneys who provide outside professional services "do not, without more, participate in the operation or management of the enterprise." *Kattula v. Jade*, 2008 WL 495298, at *4 (E.D. Mich. Feb. 20, 2008).

The Second Amended Complaint does not sufficiently allege that Defendant Weiss directed the affairs of the pleaded enterprise. It claims that through Defendant Weiss, "K&C participated in the operation and management of the Enterprise by acting as the legal escalation gatekeeper, supplying the enforcement rational used by the HOA and Timmons, and maintaining the enforcement posture after notice of factual and legal defects." Compl., at ¶ 304. This is a conclusory allegation that should not be accepted as true. However, it is really a description of the legal services that the K&C Defendants are alleged to have provided to the HOA. The Second

Amended Complaint does not otherwise plead facts showing that Defendant Weiss made decisions for or otherwise participated in the enterprise's affairs beyond provision of legal services. Thus, Plaintiff has failed to establish that Defendant Weiss engaged in the level of conduct required by the statute.

Additionally, Plaintiff has failed to plead a pattern of racketeering activity as relevant to Defendant Weiss. Section 1962(c) requires a minimum of two acts of racketeering within ten years of each other to establish a substantive pattern. However, two acts is not necessarily sufficient. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409 (6th Cir. 2012). The pattern element requires that the racketeering predicates be related, and amount to or pose a threat of continued criminal activity. *Id*. (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989)). This is commonly referred to as the "relationship plus continuity" test. *Id*. The relationship prong of the test is satisfied by alleging that the predicate acts have "similar purposes, results participants, victims, or methods of commission." *Id*. The continuity prong of the test is satisfied by alleging either a closed-ended or an open-ended pattern. *Id*. In either type of continuity, the objective of the inquiry is to "determine whether the alleged violations establish the kind of 'long-term criminal conduct' with which Congress was concerned when it passed the RICO statute." *Chattanooga Spine & Nerve Inst., Inc. v. Fish Tales, LLC*, 2017 WL 7691858, at *4 (E.D. Tenn. Nov. 13, 2017). The allegations of predicate acts lasting only a few weeks or months are not sufficient to constitute long-term criminal conduct. *Heinrich,* 668 F.3d at 409-10 (citing *H.J. Inc.*, 492 U.S. at 242)).

The Sixth Circuit has repeatedly held that a single scheme directed at a single victim does not establish a pattern for purposes of Section 1962(c). It has declined to find that allegations of conduct involving "a single victim and a single scheme for a single purpose over seventeen

months" constitute the type of long-term criminal conduct contemplated by RICO. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994). Similarly, it has continued to hold that allegations centering on a single scheme with a single object are not enough to establish continuity as required to establish a pattern. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 726 (6th Cir. 2006) (collecting cases).

The allegations that Plaintiff attempts to make against Defendant Weiss are insufficient to establish a pattern. The Second Amended Complaint asserts that the enterprise carried out a scheme to "defraud Plaintiff of money and property by transmitting written demands and public accusations that contained materially false statements of fact." Compl., at ¶ 306. To that end, it includes six predicates. However, only one of those predicates involves any action taken by Defendant Weiss. Compl., at ¶ 335-340. Plaintiff alleges that Defendant Weiss transmitted two emails to Plaintiff regarding Plaintiff's accommodation request. Compl., at ¶ 335. Significantly, Defendant Weiss is alleged to have transmitted these two emails on the same day, July 28, 2025.[1] This is not sufficient to meet the relationship plus continuity test. There are no allegations of related predicates by Defendant Weiss over a substantial period of time. Rather, the Second Amended Complaint alleges no more than a single scheme with a single purpose directed at a single victim, Plaintiff. This is not enough to constitute a pattern of racketeering activity engaged in by Defendant Weiss. Thus, Plaintiff has failed to state a RICO claim against him for this reason as well.

[1] The statements that Defendant Weiss made in these emails were expressions of the HOA's legal position, not representations of existing fact. As a result, they are not even valid mail- or wire-fraud predicates. Additionally, the allegations related to these emails are not plead with the particularity required by Rule 9(b). *Heinrich*, 668 F.3d 393, 404. The Second Amended Complaint does not explain, for example, why the statements were fraudulent, or how they defrauded Plaintiff. *See id*. The RICO claim should be dismissed against Defendant Weiss for this reason as well.

Finally, Plaintiff's RICO claim fails as to Defendant Weiss because he has not alleged an injury caused by a RICO violation. A plaintiff only has standing to pursue a Section 1962(c) claim if "he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). This type of injury is a concrete financial loss involving an economic type of damage. *VRF Eye Specialty Grp., PLC v. Yoser*, 765 F. Supp. 2d 1023, 1030 (W.D. Tenn. 2011). Additionally, the plaintiff must sufficiently allege that the RICO violation caused this injury with facts that show "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Heinrich,* 668 F.3d at 405.

The Second Amended Complaint forecloses the injury requirement by its own allegations. Plaintiff admits that Defendants deleted the disputed fines from Plaintiff's account. Compl., at ¶ 174-176. Plaintiff also states that he "does not allege that he paid those charges out of pocket." Compl., at ¶ 362. The injuries that Plaintiff does assert, including costs "incurred in responding to Defendants' unlawful enforcement and collection demands and in preserving his rights," "consequential losses arising from the forced withdrawal of Plaintiff's home from the market in May 2025," and "medical expenses incurred for treatment and care" do not establish a concrete financial loss to business or property caused by the one predicate act that Defendant Weiss allegedly engaged in. Compl., at ¶ 359. As a result, Plaintiff has suffered no cognizable injury giving him standing to pursue a RICO claim. This claim should be dismissed with prejudice as to Defendant Weiss.

The RICO conspiracy claim made against all of the K&C Defendants also fails to state a claim upon which relief can be granted under Rule 12(b)(6). A Section 1962(d) conspiracy claim requires a plaintiff to allege "all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich,* 668 F.3d at 411

(citing *United States v. Sinito,* 723 F.2d 1250, 1260 (6th Cir. 1983)). In other words, a RICO conspiracy claim cannot stand without a substantive RICO claim underlying it.

Plaintiff's RICO conspiracy claim depends entirely on the allegations that defeat the substantive RICO claim. These allegations fail to establish a substantive RICO violation for the reasons given above. Since the substantive RICO claim is not viable, the RICO conspiracy claim, built on identical allegations, collapses as well. The RICO conspiracy claim should be dismissed as to all of the K&C Defendants for failure to state a claim.

**C. Plaintiff's FDCPA Claim (Count IV) Fails as to the K&C Defendants.**

Plaintiff's Second Amend Complaint attempts to make a claim against the K&C Defendants under the Fair Debt Collection Practices Act. This claim likewise fails as a matter of law as to the K&C Defendants.

It is well established that liability under the FDCPA only extends to debt collectors, who are defined as persons who "use[] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition ties a person's status as a debt collector not to what he specifically did in a given case, but to what he generally does. *Bates v. Green Farms Condominium Association,* 958 F.3d 470, 480-81 (6th Cir. 2020); *see also Schroyer v. Frankel,* 197 F.3d 1170, 1176-77 (6th Cir. 1999). Accordingly, a successful FDCPA claim requires a plaintiff to make sufficient allegations regarding the defendant's principal business or regular activities. The conclusory allegation that a defendant was acting as a debt collector is not enough. *See Bates,* 958 F.3d at 482-83.

Plaintiff has not sufficiently alleged that the K&C Defendants are debt collectors within the meaning of the FDCPA. This is especially true of the individual attorney K&C Defendants.

Plaintiff has not made any allegations regarding the principal purpose of the business that the K&C Defendants are engaged or the regularity with which the K&C Defendants supposedly collect debts. He rather states in conclusory fashion that the K&C Defendants are debt collectors within the meaning of the statute—an allegation that this Court is not required to accept as true. Compl., at ¶ 232. The other allegations made against the individual attorney K&C Defendants are all limited to their participation in the "collection and enforcement actions against Plaintiff," specifically—not as a whole. Compl., at ¶ 21, 23.[2] For example, Plaintiff does not allege that Defendants Weiss, Kovalcik, or Miske are in a business the principal purpose of which is to collect debts. He likewise does not expand on the scope of their legal practices or how much of their practices is devoted to debt collection. The face of Plaintiff's Second Amended Complaint thus illustrates that Plaintiff has failed to allege that the K&C Defendants are debt collectors at all.

Additionally, Plaintiff has failed to allege that any of the K&C Defendants made a communication in connection with a collection of a debt. The FDCPA prohibits a debt collector from using any false representation "in connection with the collection of a debt." 15 U.S.C. § 1692(e). This essentially places a condition on the communications that are subject to the FDCPA. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). The Sixth Circuit has explicitly held that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id*. (internal citations omitted).

The Second Amended Complaint only attributes one communication to one of the K&C Defendants: the July 28, 2025 letter that Defendant Scott Weiss sent to Plaintiff. Compl., at ¶ 21-

[2] Plaintiff does not even allege this much as to Defendant Miske. *Compare* Compl., at ¶ 21, 23, and 24. In fact, Plaintiff's Second Amended Complaint is wholly devoid of any allegation that Miske participated in any debt collection at all.

22, 103.[3] Significantly, Plaintiff alleges that the substance of this communication was limited to Defendant Weiss's acknowledgement of Plaintiff's physician documentation and response regarding the same. Compl., at ¶ 21-22, 103. Defendant Weiss is alleged to have conditioned any further consideration of Plaintiff's medical documentation on Plaintiff's "completion of the Association's Reasonable Accommodation Request and Verification forms." Compl., at ¶ 103. While Plaintiff later attempts to characterize this communication as a collection letter, this is plainly not the case. Compl., at ¶ 142, 247. It was rather only a "response to physical documentation." Compl., at ¶ 251, 252(c). The Second Amended Complaint does not include a single allegation to support the idea that this July 28, 2025 letter was sent for the purpose of inducing payment or otherwise attempting to collect a debt. As a result, Plaintiff's Second Amended Complaint fails to attribute any communication the K&C Defendants that is actionable under the FDCPA. This claim should be dismissed as a matter of law as to all of the Defendants.

The K&C Defendants further incorporate the argument that the Bent Creek Defendants make regarding the inapplicability of the Fair Debt Collection Practices Act by reference as if fully set forth herein to the extent that it does not conflict with their own arguments here.

## CONCLUSION

Based on the above, Plaintiff has failed to adhere to the basic pleading requirements set forth in Rules 8(a)(2) and 12(b)(6). This remains true despite the fact that Plaintiff has now amended his pleadings twice. The K&C Defendants thus request that this Court enter an Order

[3] The only other communication identified in Plaintiff's Second Amended Complaint is the May 30, 2025 letter, which is specifically alleged to have been sent by the HOA and Timmons Properties, not any of the K&C Defendants. Compl., at ¶ 149, Exh. H. Additionally, the July 28, 2025 letter is only attributed to K&C and Defendant Weiss—not Defendants Kovalick or Miske.

granting their Motion to Dismiss Plaintiff's Second Amended Complaint against them with prejudice.

Respectfully submitted,

/s/ Lauren Paxton Roberts
Lauren Paxton Roberts (BPR No. 025049)
Anna Kate Ferrell (BPR No. 042397)
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
(615) 782-2200
lauren.roberts@stites.com
akferrell@stites.com

*Counsel for Defendants Kaman & Cusimano, LLC, Scott D. Weiss, Kiel Kovalcik, and Daniel J. Miske*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of August, 2026, a copy of the foregoing was electronically filed with the Clerk's office and served via the Court's e-filing system and/or via regular mail or email upon Plaintiff listed below.

Kevin M. Donovan (BPR No. 043740)
6008 Christmas Drive
Nolensville, Tennessee 37135
(615) 428-9896
kevin.donovan@artofplanninglaw.com

*Pro Se Plaintiff*

Marielle Westerman (BPR No. 040074)
Westerman Law, PLLC
725 Cool Springs Blvd., Suite 600
Franklin, Tennessee 37067
(629) 256-6179
mwesterman@westerman.law

*Counsel for Defendants Bent Creek HOA, Timmons Properties, Inc., Lynn Burka, Robert Cody, Jeremy Edge, David Raissi, Jared Burke, Melissa Plank, Susannah Millar, and Tim Barry*

/s/ Lauren Paxton Roberts
Lauren Paxton Roberts