**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE- NASHVILLE DIVISION**

KEVIN M. DONOVAN, CASE NO. 3:26-cv-00700

Plaintiff,

v.

BENT CREEK HOMEOWNERS
ASSOCIATION, INC., et al.,

Defendants.
___________________________________/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT & INCORPORATED MEMORANDUM OF LAW**

Defendants, Bent Creek Homeowners Association, Inc. ("Association"), Timmons Properties, Inc. ("Timmons"), Lynn Burka, Robert Steve Cody, Jeremy Edge, David Raissi, Jared Burke, Melissa Plank, Susannah Millar, and Tim Barry ("Defendants"), by and through undersigned counsel, respectfully moves this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil to dismiss Plaintiff's Second Amended Complaint. In support of this Motion to Dismiss, the Defendants state as follows:

1. Plaintiff has alleged, in Count I, that the Association, Timmons and Ms. Burka violated the Fair Housing Act based on a failure to accommodate.
2. Plaintiff has alleged, in Count V, that the Association, Timmons and Ms. Burka violated the Fair Housing Act based on retaliation.
3. Plaintiff has alleged, in Count III, that the Association breached its covenants.
4. Plaintiff has alleged, in Count VI, that Mr. Cody, Mr. Edge, Mr. Raissi, Mr. Burke, Ms. Plank, Ms. Millar and Mr. Barry (collectively "individual directors") and Timmons breached their fiduciary obligations.
5. Plaintiff has alleged, in Count VIII that Ms. Burka committed civil RICO.

6. Plaintiff had alleged, in Count IX, that the Association, the individual directors, Ms. Burka and Timmons committed a civil conspiracy under RICO.
7. Plaintiff attaches as part of Exhibit "E" an email dated May 19, 2025. This email is not complete. Attached hereto as Exhibit "1" is the attachment to that email. This attachment is authentic and central to Plaintiff's claim.
8. Plaintiff attaches as Exhibit "G" a form filled out by his chiropractor. This form is not what the Plaintiff submitted to the Association. Attached hereto as Exhibit "2" is the actual form that the Plaintiff submitted. This attachment is authentic and central to Plaintiff's claim.
9. The Plaintiff attaches a partial copy of the Association's Declaration of Covenants, Conditions and Restrictions. Attached hereto as Exhibit "3" is the full and complete Declaration of Covenants, Conditions and Restrictions recorded in O.R. Book 3422, Page 804, et. seq. of the Public Records of Williamson County, Tennessee. This document is authentic and central to Plaintiff's claim.
10. Plaintiff attaches as part of Exhibit "D" an email dated May 1, 2025. This email is not complete. Attached hereto as Exhibit "4" is the full and complete email chain. This email chain is authentic and central to Plaintiff's claim.
11. Plaintiff attaches as part of Exhibit "D" an email dated February 28, 2025. This email is not complete. Attached hereto as Exhibit "5" is the attachment referenced therein. This attachment is authentic and central to Plaintiff's claim.

For the reasons set forth in the accompanying Memorandum of Law, the Defendants respectfully request that this Court dismiss Counts I, II, III, VI, VIII and IX of Plaintiff's

Complaint with prejudice[1].

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted factual inferences." McKerchie v. Wis. Cent. Ltd., 994 F. Supp. 2d 875 (W.D. Mich. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations in the complaint. GE Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074 (7th Cir. 1997). But there is an exception under which a court may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim. This incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case." Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687 (7th Cir. 2012)." "[T]he plaintiff cannot achieve the same result by presenting only a partial version of the document. Omissions and partial omissions are treated the same." Muthana v. Mullin, 171 F.4th 967 (7th Cir. 2026).

**COUNT I- Violation of the Fair Housing Act- Failure to Make Reasonable Accommodation**

To state a cause of action for failure to accommodate under the Fair Housing Act (FHA) in the Sixth Circuit, a plaintiff must prove that: (1) the plaintiff suffers from a disability within the meaning of the FHA; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy

[1] For brevity, many internal citations have been omitted.

the dwelling; (4) the requested accommodation is reasonable; and (5) the defendant refused to make the accommodation. Overlook Mut. Homes, Inc. v. Spencer, 415 F. App'x 617 (6th Cir. 2011).

In this case, the Plaintiff has failed to plead any facts which would establish the required elements.

**Plaintiff Fails to State a Claim Because Prior to May 16, 2025, the Defendants Were Not on Notice of the Plaintiff's Alleged Disability**

"[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant "must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [landlord] to make appropriate inquiries about the possible need for an accommodation." United States v. Hialeah Hous. Auth., 418 F. App'x 872 (11th Cir. 2011). The Plaintiff's claims that the following statements were sufficient to place the Defendants on notice of his alleged disability:

"On or about January 2025, Plaintiff reported health issues through the Vantaca portal system." 2nd Am. Comp. ¶84, ECF 29.

"On February 28, 2025, Plaintiff emailed Timmons stating: "I am trying to get this fixed. ***We were*** sick and haven't been able to get the part. Please give me some grace." (emphasis added). Pl. NOF. Ex. "D," page 30 of 138, ECF 30.

"On March 27, 2025, Plaintiff emailed Timmons stating: "I am trying to get this finished. I've ***been*** dealing with health issues and am preparing to sell my house. Please give me a bit of grace and time. Then we can all move along shortly." (emphasis added). Pl. NOF. Ex. "D," page 27 of 138, ECF 30.

"On March 28, 2025, Plaintiff emailed Timmons stating: "I sent an email yesterday that explained I am trying to fix the outside of the house and get it ready for sale. I ***was really sick when this was going*** on and have had some Lingering issues since. Could you please give me the grace and reverse the few please." (emphasis added). Pl. NOF. Ex. "D," page 28 of 138, ECF 30.

"On April 30, 2025, Plaintiff emailed Timmons stating: "I am currently off work with a disability. I'll pay this when I have the means." 2nd Am. Comp. ¶84, ECF 29.

May 16, 2025 email that he states "I am managing ongoing health issues which impact my mobility and pace." D. Mtn. Dis. Ex. "4."

June 1, 2025 letter stating "[t]hat all enforcement actions and HOA communications be paused or conducted only in writing; That deadline extensions be granted in light of my current condition; That all HOA-related individuals cease physical surveillance or unnecessary presence around my residence, my person and my family." The Plaintiff also noted that his previous request for an accommodation was "a pause in enforcement communications." Pl. NOF. Ex. "G," page 162 of 138, ECF 30.

Plaintiff's alleged "requests" can be broken down based upon the violations for which he allegedly sought accommodations. The first violation was for having a broken trash concealment. The second violation was for having items outside his home. The third violation was for parking his camper on the street. The fourth matter was related to the imposition of fines. Pl. NOF. Ex. "D," page 26, 27, 28 and 30 of 138, ECF 30.

As to the first violation, the Plaintiff asserts that he notified the Defendants of "health issues" at some point in January 2025, without providing any support for such a claim. Further, the Plaintiff cites to his 2/28/25 email as notification of his alleged disability and a request for an accommodation. Notably, on 2/28/25 the fines had already been placed on his account. Pl. NOF.

Ex. "P," page 84 of 138, ECF 30. The Plaintiff did not request that the fines be waived but rather the request was to "give [him] some grace" because he hadn't "been able to get the part" and had been sick. The Plaintiff stated was "trying to get this fixed." Plaintiff does not contend that he received another demand to make the necessary repair. Importantly, Plaintiff's reference to a sickness was notably in the past tense. Absent from Plaintiff's 2/28/25 statement is any indication that the Plaintiff was still sick. Pl. NOF. Ex. "D," page 30 of 138, ECF 30.

As to the second violation, this violation was issued on March 22, 2025. Pl. NOF. Ex. "D," page 27 of 138, ECF 30. The Plaintiff responded to this notice on March 27, 2025 by stating that "I am trying to get this finished. I've ***been*** dealing with health issues and am preparing to sell my house. Please give me a bit of grace and time." Again, the only request that the Plaintiff made was for "grace and time." Just as with his February 28, 2025 email, the Plaintiff used the past tense in reference to his "health issues" by using the phrase "I've been." Plaintiff does not contend that he received another violation notice for the outside items following his March 27, 2025 email.

As to the third violation, two letters were sent. The first violation letter was sent on May 1, 2025 and the second on May 16, 2025. Pl. NOF. Ex. "D," page 26 of 138, ECF 30 and D. Mtn. Dis. Ex. 4. The Plaintiff emailed Timmons on May 16, 2025 and stated "I am managing ongoing health issues which impact my mobility and pace." The Plaintiff then requested that Timmons "[c]ease all direct or indirect harassment of me and my family immediately. Rescind the $50 fine, which is unsupported by the facts or governing documents. Rescind any previous fines for a cracked fence that I told you I was having health issues originally about. Acknowledge your obligation to accommodate reasonable health-related needs under the Fair Housing Act. Confirm in writing that further surveillance, targeting, or retaliation will cease." In response to this email, the Association sent the Plaintiff a "Reasonable accommodations Request Form" and asked him

to provide the "the specific accommodations you are requesting." Pl. NOF. Ex. "E," page 33 of 138, ECF 30. Plaintiff responded on June 1, 2025 by stating that he notified [Timmons] of a medical condition . . . as early as January 2025." Pl. NOF. Ex. "G," page 62 of 138, ECF 30. The Plaintiff requesting that "[t]hat all enforcement actions and HOA communications be paused or conducted only in writing; That deadline extensions be granted in light of my current condition; That all HOA-related individuals cease physical surveillance or unnecessary presence around my residence, my person and my family." Pl. NOF. Ex. "G," page 62 of 138, ECF 30. The Plaintiff does not allege that he received any further violation notices following the May 16, 2025 violation notice. Plaintiff also does not allege that any further "physical surveillance" occurred or that any "unnecessary presence" continued.

As to the fourth issue, the fines, the Plaintiff did not address the fines until March 28, 2025, when the Plaintiff sent an email stating "I sent an email yesterday that explained I am trying to fix the outside of the house and get it ready for sale. I ***<u>was really sick when this was going</u>*** on and have had some Lingering issues since. Could you please give me the grace and reverse the few please." As noted in Exhibit 5, the fines were levied for the first violation. D. Mtn. Dis. Ex. "5." Again, the Plaintiff uses the past tense to describe being sick saying "I was really sick when this was going on." The Plaintiff only notes that he was having "lingering issues." In this email, the only request that the Plaintiff made was to reverse the fines. On April 30, 2025, the Plaintiff sent an email stating "I am currently off work with a disability. I'll pay this when I have the means." Pl. NOF. Ex. "D," page 28 of 138, ECF 30.

Critically, the Plaintiff only alleged that he had been sick or had been dealing with health issues until May 16, 2025. "[I]llness is not tantamount to a disability. <u>McCall v. Montgomery Hous. Auth.</u>, 2017 U.S. Dist. LEXIS 162340 (M.D. Ala. Sep. 29, 2017). Indeed, while not directly

on point, it is persuasive to note that under the Family and Medical Leave Act, the Act specifically states that "[c]alling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. 29 CFR 825.303. Plaintiff's own Complaint establishes that the first and second violations, including the fines issued as to the first violation, occurred prior to his date of disability. *See* 2nd Am. Comp. ¶38 ("Plaintiff has been disabled since March 18, 2025").

Moreover, until May 16, 2025, all the Plaintiff had conveyed to the Defendants was that he had been- past tense- sick and dealing with medical issues. In examining whether a defendant knew or was on notice that a plaintiff was disabled, the following cases are instructive:

"Plaintiff essentially asks that Defendants be charged with knowledge of her alcoholism condition even though she never told Defendants about it because they should have collected, identified, and examined evidence accumulated over the several-month period she was on leave like detectives and deduced that she was in a treatment facility for alcoholism . . . when the disability is not open an obvious, the employee must take responsibility for putting her employer on notice of the disability and the need to accommodate it." Ledbetter v. IDN-Armstrong's, Inc., 812 F. App'x 956 (11th Cir. 2020).

"In an attempt to establish that HHA knew of Mr. Rodriguez's disability and the necessity of his requested accommodation, Plaintiff argues that HHA was sufficiently put on notice by way of Mr. Rodriguez's January 21, 2005 letter. The letter provides as follows: "We want to appeal to the decision about the transfer, because we did not realize that we did not see the conditions of the place first … There is no bathroom downstairs and [Mr. Rodriguez] and I had surgery, we cannot go upstairs each time we need to use the bathroom" . . . it would have been insufficient to impute knowledge of Mr. Rodriguez's disability and the necessity of the requested accommodation upon

HHA. As in Hawn, the letter did not "indicat[e] whether [Mr. Rodriguez's] limitations and difficulties were temporary or permanent, nor did [it] indicate that [the requested accommodation] was 'necessary to afford [him] equal opportunity to use and enjoy his dwelling[.]'" Indeed, the letter only contained a vague reference to Mr. Rodriguez's "surgery" and did not describe the nature and extent of his disability." United States v. Hialeah Hous. Auth., 2010 LX 46028 (S.D. Fla. Apr. 19, 2010).

**No Duty to Grant an Accommodation**

Following the Plaintiff's May 16, 2025, email, the Association requested that he submit the Reasonable Accommodations Form. Pl. NOF. Ex. "E," page 32 of 138, ECF 30. Instead of submitting the form, the Plaintiff sent the June 1, 2025 letter. Ironically, even in this June 1, 2025 letter, the Plaintiff does not state that he is disabled. Pl. NOF. Ex. "G," page 62 of 138, ECF 30. The letter only refers to a "medical condition" and "health issues." The Plaintiff then provides the Association with Exhibit "L." Relative to the Association, Exhibit "L" does not indicate anything other than that the Plaintiff was unable work and that he "has been continuously disabled (unable to work) from 03/18/2025 through 07/17/2025." Notably, the Plaintiff elected to redact the first section which was "reasons for continued disability" in his submission to the Association but leaves it unredacted for this case. D. Mtn. Dis. Ex. 3. Plaintiff does not contend that he submitted the Reasonable Accommodations Form requested by the Association. The Plaintiff acknowledges that in response to Exhibit "G," counsel for the Association noted, allegedly, "that the statement did not "confirm that you have a disability" or that the requested accommodations were "necessary," and conditioning any further consideration on Plaintiffs completion of the Association's Reasonable Accommodation Request and Verification forms. 2nd Am. Comp. ¶103.

Oddly, the Plaintiff describes the information sought in the form as “repetitive” but Exhibit 1 clearly shows the opposite. 2nd Am. Comp. ¶103.

The Plaintiff, in refusing to provide anything other than his June 1, 2025 letter and his chiropractor’s employment disability form, failed to allow the Defendants an ability to conduct a meaningful review of his request. Accordingly, the Defendants cannot be held liable for failing to honor the requests that the Plaintiff made in his May 16, 2025 email and June 1, 2025 letter. “The duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants … must instead have … the ability to conduct a meaningful review of the requested accommodation. “[T]here are no facts alleged that the plaintiff gave the defendant an opportunity to conduct a meaningful review to determine the requested accommodation, if any, under the FHA. Id. at 1286. As a result, defendant's motion to dismiss under Rule 12(b)(6) is granted as to plaintiff's claims under the Fair Housing Act.” <u>Poursaied v. Res. at Research Park LLC</u>, 379 F. Supp. 3d 1182 (N.D. Ala. 2019).

**<u>No Accommodations Were Denied</u>**

Despite not having to grant an accommodation to the Plaintiff as a result of his failure to provide information which would address the nexus and need for the requested accommodations, the Defendants in fact did what he requested in terms of allowing for additional time to correct the violations and reversing the fines. As noted above, the Plaintiff’s requested “accommodations” as to the violations were not blanket requests but were specific to the violations. Each time, no further violations were issued as to the violations and no fines were issued thereafter. While Plaintiff contends that following his “prior written disclosures,” the Defendants “continued enforcement and maintained the assessed charges,” the Exhibits to his Second Amended Complaint show the opposite. The “continued enforcement” was related to vehicle/camper parking and not as to the

prior two violations. 2nd Am. Comp. ¶88, ECF 29 and Pl. NOF. Ex. "D," ECF 30. In Paragraph 187 of Plaintiff's Second Amended Complaint, the Plaintiff confirms that the reversal of the fines occurred on "April 13, 2026." 2nd Am. Comp. ¶187, ECF 29. This reversal predates the initiation of this action. Accordingly, Count I fails as a matter of law because Plaintiff's cannot support a required element of the cause of action.

**COUNT II- VIOLATION OF FAIR HOUSING ACT – RETALIATION**

In the context of retaliation for housing accommodation requests, the elements are stated as: (1) the plaintiff engaged in a protected activity; (2) the exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action Sublett v. Masonic Homes of Ky., Inc., No. 21-5959, 2022 U.S. App. LEXIS 19876 (6th Cir. July 18, 2022). Further "[t]he plaintiff must show a discriminatory animus for section 3617 claims." Owens v. Willow Bridge Prop. Co., 2026 LEXIS 261250 (M.D. Tenn. May 26, 2026). "Discriminatory animus requires plaintiffs to put forth some evidence of discriminatory effect or intent on the defendant's part." Id. In this case, the Plaintiff alleges the following as the "protected activity" he engaged in: (1) requesting reasonable accommodations, (2) protesting discriminatory enforcement, (3) submitting formal requests to inspect the HOA's books and records and (4) asserting his rights under the Fair Housing Act. The Plaintiff alleges that conduct alleged in paragraphs 216(a) through (e) were retaliatory acts.

Plaintiff has failed to state a cause of action for retaliation because he has not, nor can he, plead discriminatory animus. Furthermore, as to Defendants Cody and Edge, the Plaintiff fails to state a cause of action because he has not, nor can he plead, any facts which support an allegation that those Defendants knew of the alleged "protected activity." The Plaintiff also fails to plead any

facts which demonstrate a causal connection between protected activities and the retaliatory acts. Indeed, as an example, the reasonable inference as to the motivation of the Defendant for the "sidewalk" restriction" was due to the Plaintiff's improper conduct involving his "recent threatening and disruptive behavior during in-person interactions and phone conversations." Pl. NOF. Ex. "E," ECF 30. While the Plaintiff may not agree with the foregoing characterization of his conduct, there is no other inference that can be made from his Complaint. Notably, the sidewalk restriction itself was limited and only prohibited the Plaintiff from certain activities related to the members of the Board, by restricting him from "visiting their homes, walking past their homes and standing on the sidewalk staring at their house" which further reinforces the point that the restriction was in response to the Plaintiff's conduct. Pl. NOF. Ex. "E," ECF 30. The Plaintiff even acknowledges that he received a civil trespass warning as to Defendants Cody and Edge. 2nd Am. Comp. ¶ 126. Accordingly, Count II fails as a matter of law because Plaintiff's cannot support a required element of the cause of action.

**COUNT III- BREACH OF THE RECORDED COVENANTS**

Under Tennessee law, a claim for breach of restrictive covenants is interpreted and treated under the same standard as a general breach of contract claim. Aldridge v. Morgan, 912 S.W.2d 151; 1995 Tenn. App. LEXIS 344. To succeed on a claim for breach of contract, a plaintiff must establish three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. Leedy v. Hickory Ridge, LLC, 663 S.W.3d 537 (Tenn. Ct. App. 2022).

As will be shown, Count III of Plaintiff's Complaint fails to state a cause of action as a matter of law because (1) the Defendant had the right to impose fines an administrative charges, and (2) assuming arguendo that the Association did not have the right to impose a lien, such an

assertion was as to a potential future "breach" and the Association repudiated such an action when it reversed the fines.

### 1. **<u>Authority To Fine & Impose Charges:</u>**

Plaintiff alleges that the Association breached the recorded covenants by levying a fine against him and imposing fees. ¶225. In this case, and fatal to Count III of the Plaintiff's Complaint, is the fact that Bylaws of the Association are Exhibit "B" to the Declaration of Covenants, Conditions and Restrictions for Bent Creek. D. Mtn. Dis. Ex. 3. The Bylaws authorizes the Association to levy fines. Specifically, Article VII, Powers and Duties of the Board of Directors of the Bylaws states "(a) adopt and publish rules and regulations governing maintenance and the use of the Common Area and to establish penalties and infraction thereof."

The Bylaws expressly allow the Board to establish penalties for infractions. The Fine Policy established the penalties for infractions by imposing fines and costs against owners. Relevant to this case, the 2022 policy states:

> b. <u>Second Written Notice:</u> If the violation continues after the first written notice, the Owner and tenant/occupant (if applicable) will be mailed a second written notice detailing the violation, action(s) which must be taken to resolve the infraction, that a fine of $50.00 has been levied against their account and that resolution of the violation shall be achieved within ten (10) calendar days of the date written on the second written notice.
>
> c. <u>Third Written Notice:</u> If the violation continues after the second written notice, the Owner and tenant/occupant (if applicable) will be mailed a third written notice
>
> detailing the violation, action(s) which must be taken to resolve the infraction; that a fine of $100.00 has been levied against their account; that resolution of the violation shall be achieved within ten (10) calendar days of the date written on the third written notice.
>
> terminating the violation. All fines authorized by this Fine Policy plus all costs and reasonable attorney's fees shall be a charge on the land and a continuing lien against the Lot and all improvements located thereon, owned by the Lot Owner or occupied by the occupant thereof, and all such fines, costs and reasonable attorney's fees shall be the personal obligation of the Lot Owner and/or tenant or occupant of the Lot against which such fines, costs and reasonable attorney's fees have been secured.

As pled by the Plaintiff, he had two fines imposed against him together with the costs of the administrative fee for collection notices and the certified letter fee. The Plaintiff expressly characterizes the fines as a “monetary penalty.” 2nd Am. Comp. ¶51. Plaintiff’s Complaint establishes that no breach of the covenants occurred and therefore fails to state a claim for which relief may be had.

**2. <u>Statement as to a Lien</u>**

In this case, Plaintiff concedes that the fines and fees were removed from his account on April 13, 2026, prior to his filing of this case. 2nd Am. Comp. ¶187. Furthermore, no lien was ever recorded against the Plaintiff property as evidenced by the lack of any allegation to the contrary. Plaintiff’s only allegation with respect to a lien was that Exhibit “H” states that a “lien will be filed on your property” if the amounts owed were not paid within “ten (10) days.” Pl. NOF. Ex. “G,” ECF 30. Notably, the Plaintiff, in response to Exhibit “H” disputed the matter by email on June 28, 2025. Pl. NOF. Ex. “I,” ECF 30. The Plaintiff does not contend that he paid the amounts set forth in in Exhibit “H” and concedes that the amounts were removed from his account. 2nd Am. Comp. ¶ 187.

Accordingly, the statement in Exhibit “H” related to placing a lien on the Plaintiff’s property, even if such action would not have been authorized by the governing documents of the Association (which is denied), at best constitutes an anticipatory breach of the covenants which was not properly pled. Importantly, Plaintiff cannot plead now the necessary elements. “Even if an anticipatory repudiation could be found in the defendant's telegram and statement, we think the buyer lost the right to rely on this purported breach by failing to make the required election before the buyer's own performance was due. If an anticipatory repudiation is to constitute a breach, the innocent party must elect to treat it as such and act upon it. While the innocent party may wait until

performance is due to sue, and may attempt to convince the repudiator to withdraw his repudiation without losing his right to elect, an anticipatory repudiation not treated as such may not later be asserted in an action to enforce the contract. If the innocent party elects to treat the contract as still in force, he must perform his own obligations as they become due. *Id.* In *Tate v. Betterson,*3 Tenn.App. 696 (1926) the court held that the failure of an innocent party to elect to treat an alleged anticipatory repudiation as a breach prevented his later assertion of a breach after the repudiation was withdrawn. Thus, the election requirement has been recognized in Tennessee." CAUDILL Props., INC. v. COX, 1984 Tenn. App. LEXIS 3269 (Ct. App. Nov. 1, 1984). Accordingly, Count III fails as a matter of law because Plaintiff's cannot support a required element of the cause of action.

**COUNT VI: BREACH OF FIDUCIARY DUTY**

**1. Plaintiff's Breach of Fiduciary Duty Claim Is Subject to the Tennessee Nonprofit Corporation Act's Derivative Action Requirements**

Although not plead as such, the causes of action brought in this count are derivative and subject to the pre-suit requirements of T.C.A §48-56-401. Because the Plaintiff has not complied with the pre-suit requirements for derivative actions the Complaint must be dismissed as to those causes of action. The Association is a Tennessee not-for-profit corporation. P's Compl. ¶7. As such, it is subject to Chapter 48, T.C.A. In the context of a Tennessee not-for-profit corporation, prior to bringing a derivative lawsuit, a member of the corporation must comply with the statutory pre-suit requirements outlined in T.C.A. §48-56-401. T.C.A. §48-56-401(c) provides: "(c) A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the directors and either why the plaintiffs could not obtain the action or why they did not make the demand. If a demand for action was made

and the corporation's investigation of the demand is in progress when the proceeding is filed, the court may stay the suit until the investigation is completed." Under the statute, members of non-profit corporations must bring their complaints to the board of directors to allow the corporation to conduct an investigation and if it deems appropriate, initiate a lawsuit.

"A homeowner's association, as a nonprofit corporation, [is] subject to the Act and therefore . . . the authority of its board [can] only be challenged through a derivative proceeding brought in the right of the corporation to procure a judgment in its favor as set forth in Tennessee Code Annotated section 48-53- 104(b) and Tennessee Code Annotated section 48-56-401(a)(1). Id." Kirby Parkway Prof'l Condo. Ass'n v. Cindy-Jarvis Ltd. L.P., 2020 Tenn. App. LEXIS 598 (Ct. App. Dec. 30, 2020).

As to claims for breach of fiduciary duty, such a claim is derivative. *See* Keller v. Estate of McRedmond, 495 S.W.3d 852 (Tenn. 2016) (holding "a claim based on directors' or officers' breach of fiduciary duty to the corporation through mismanagement of the corporation, waste of corporate assets, or self-dealing is usually considered derivative in nature, because any harm resulting from the wrongful conduct was to the corporation.). The Plaintiff's claims are all derivative. The Plaintiff has not, nor can he, plead any set of facts that give him individualized rights as to his cause of action and relief sought. "Stockholders may bring an action individually to recover for an injury done directly to them distinct from that incurred by the corporation and arising out of a special duty owed to the shareholders by the wrongdoer." Even though, as in Hadden, the injury sustained by the corporation "directly affected" the individuals, "as a practical matter," "this fact does not entitle [the shareholders] to bring a cause of action to recover damages sustained by the corporation." Keller v. Estate of McRedmond, 495 S.W.3d 852 (Tenn. 2016). "In determining whether a stockholder's claim is derivative or direct. That issue must turn solely on

the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually).” Id. In this case, the Plaintiff alleges the following wrongs: (1) unilaterally approved expenditures including the diversion of approximately $230,000 to Falling Water Entrance construction without documented separation of duties or member approval; and (2) ratified or failed to challenge the pattern of expenditures exceeding budgeted amounts and failed to require member approval for reserve transfers. 2nd Am. Comp. ¶ 265. The Plaintiff then goes on the list more specific actions that he contends constitutes violations of the directors’ fiduciary duties. 2nd Am. Comp. ¶266. Each and every one of the alleged breaches represent claims held, if they exist, by the Association and, as such are derivative. The Plaintiff cannot now, or ever, bring a derivative suit, even if properly pled, as he does not have a sufficient interest in the Association. In a factually similar case, the court found a plaintiff lacked standing and dismiss the plaintiff’s case finding “[m]oreover, not only did the Appellants fail to initiate their challenges to the Board's authority in the form of derivative proceeding but, as the Appellee correctly points out, the Appellants do not even have standing to bring such a proceeding. Pursuant to Tennessee Code Annotated section §48-56-401(a), a derivative proceeding may only be brought by "[a]ny member or members having five percent (5%) or more of the voting power or by fifty (50) members, whichever is less." Therefore, in order for the Appellants to have legal standing to bring a derivative proceeding to challenge the Appellee's authority, they must hold 5% or more of the voting power ... Therefore, even if the Appellants had properly challenged the Appellee's authority by filing a derivative proceeding, it would still fail since the Appellants do not have the requisite statutory standing to bring such a proceeding.” Id.

### 3. <u>The Complaint Should be Dismissed Against the Individual Directors for Failure to State a Claim that Would Overcome the Individual Directors' Immunity Under the Governing Documents and/or T.C.A. § 48-58-301 and § 48-58-601</u>

The individual directors are immune from suit as to the Plaintiff's cause of action. T.C.A. § 48-58-301 and § 48-58-601 grants immunity to the individual directors as follows: "(d) A director is not liable for any action taken as a director or any failure to take action, if the director performed the duties of the office in compliance with this section, or if the director is immune from suit under § *48-58-601"*. T.C.A. §48-58-601 provides: "(c) All directors, trustees or members of the governing bodies of nonprofit cooperatives, corporations, clubs, associations and organizations described in subsection (d), whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such cooperatives, corporations, clubs, associations or organizations. Such immunity from suit shall be removed when such conduct amounts to willful, wanton or gross negligence." Importantly, "[a]ssociation directors are immune from suit as a matter of law unless Plaintiffs put forth evidence establishing a material question of fact as to whether the members' conduct of the Association's affairs amounted to willful, wanton, or gross negligence." <u>Urbanavage v. Capital Bank</u>, 2018 Tenn. App. LEXIS 376 (Ct. App. June 29, 2018). Accordingly, as to Plaintiff's cause of action against the individual directors, that cause of action is barred.

Plaintiff attempts to plead around the limitations set forth above by alleging the conduct was willful, etc. However, "[i]n order to prevail on a claim of gross negligence, a plaintiff must prove that the act was 'done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." <u>Id</u>. "Recklessness occurs when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation

from the standard of care that an ordinary person would exercise under all the circumstances." Lawson v. Hawkins Cty., 2021 Tenn. App. LEXIS 276 (Ct. App. July 14, 2021). Simply characterizing an action as "gross negligence" or "reckless" is not sufficient; the "facts set out in the complaint must show a level of culpability beyond mere negligence." Kimble v. Dyer Cty. Tenn., 2020 Tenn. App. LEXIS 573 (Ct. App. Dec. 16, 2020). Here, the Plaintiff has not alleged a single fact that addresses T.C.A § 48-58-301 or pleads facts necessary to support a cause of action based on conduct that is willful, wanton or for grossly negligent.

**COUNT VIII: CIVIL RICO – CONDUCT OF ENTERPRISE THROUGH PATTERN OF RACKETEERING ACTIVITY**

"The civil-suit provision of the RICO statute grants the "extraordinary remedy" of treble damages and attorney's fees . . . Civil RICO claims "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12 (1st Cir. 2000). "[I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991). "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly . . . ." Id. Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation. . . "To establish the "racketeering activity" element of a civil RICO violation, plaintiffs must demonstrate that defendants have engaged in conduct that is indictable under one of the federal criminal statutes listed in 18 U.S.C.S. § 1961(1)(B)." Anderson v. Collins, 1999 U.S. App. LEXIS 23752 (6th Cir. Sep. 24, 1999).

"When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. . . Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356 (6th Cir. 2001). "'The courts have uniformly held inadequate a complaint's general averment of the defendant's knowledge of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Foster v. Amarnek, 2014 U.S. Dist. LEXIS 66997 (M.D. Tenn. May 14, 2014).

**Plaintiff Has Failed to State a Cause of Action Based on a Failure to Properly Plead and Establish the Requisite Predicate Acts.**

A plaintiff alleging a violation of 18 USCS § 1962 must adequately plead a pattern of racketeering activity by alleging at least two predicate acts with particularity. Lachmund v. ADM Inv'r Servs., 191 F.3d 777 (7th Cir. 1999). Failure to identify the specific content of the false representations, the identities of the parties to the communications, or the timing and location of the fraud will result in dismissal for failure to satisfy Rule 9(b). Id.

Here, the Plaintiff's predicate acts in relation to the Defendants involve (1) the notice set forth in Exhibit "K," (2) the notice set forth in Exhibit "J," (3) the statement in Exhibit "E" wherein Ms. Burka stated that "[t]his is the first instance in which you've mentioned a disability that may impact your mobility," (4) Exhibit "H," and (5) Exhibit "P." The Plaintiff's "predicate acts" are utterly frivolous and do not support a cause of action under RICO. First, as to the violation notices to the community, Exhibit "A" to the Plaintiff's Complaint expressly prohibits the parking of those vehicles on the street in the manner stated. Pl. NOF. Ex. "A," pages 11 of 138, ECF 30. Plaintiff's

allegations are nonsensical and actually confirm the violations existed. As to the truck, the Plaintiff states that it had been "temporarily relocated to that location" while Plaintiff was "out of town" and as to the camper 2nd Am. Comp. ¶ 313. As to the camper, the Plaintiff tries to allege that it was "placed openly in connection with Plaintiff's accommodation," but yet as of April 25, 2025, Plaintiff had not made any such request for an accommodation. *See* Count I analysis, supra. Further, the keeping of the camper on the street for more than a day was in fact a violation. The Plaintiff states that the camper was parked in "late April" and also on May 16, 2025. 2nd Am. Comp. ¶ 88 and 93. Accordingly, there is nothing false about the two notices. Next, the Plaintiff contends that that the statement in the May 19, 2025 email was false. As discussed in the Count I analysis, *supra*, any rational readings of the communications prior to the Plaintiff's May 16, 2025 do not indicate that the Plaintiff has a "disability that may impact [his] mobility." There is nothing that objectively supports the Plaintiff's contention that the statement was false. As to the Vantaca ledger and the 10-Day Collection letter, as discussed in Count III, supra, the Association in fact has the authority to levy fines based on its Bylaws and its Fine Policy. Thus, there is nothing false about the imposition of the fines and charges. As the Predicate Acts are not based on false statements, clearly then there could be no intent to defraud. The Predicate Acts, amounting to violation notices and the imposition of fines in the context of a homeowners association, are not one that are indictable.

Furthermore, the Plaintiff, in an effort to plead at least two predicate acts, takes what amounts to two "acts," the issuance of violation notices over parking and the imposition of fines, and pleads the predicates as if they are separate matters. "[P]laintiffs cannot fragment a singular act into multiple acts in order to invoke RICO . . . "Courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." Andrea

Doreen Ltd. v. Bldg. Material Local Union 282, 299 F. Supp. 2d 129 (E.D.N.Y. 2004). Lastly, the "predicate acts" identified as Predicate 1 and 2 were clearly sent by someone other than Ms. Burka. Predicate 4 was signed "Bent Creek Homeowners Association, Inc." Plaintiff's conclusory allegation that Ms. Burka caused the sender to send to the communications lacks any factual basis and does not meet the heightened pleading required. Moreover, even if the issues raised as Predicates 1, 2, 3, 4 and 5 were false, they still do not give rise to a claim for civil RICO. "[S]imply put, whatever the merits of Plaintiff's complaints against his HOA, this action does not belong in federal court. The HOA, its volunteer leader, management company and attorney are not a "RICO enterprise," nor has Plaintiff sufficiently alleged unlawful racketeering. Rather, at most, he has alleged that the HOA was not authorized to impose the assessments and dues increase he challenges and should have provided more documents to him under North Carolina law." Sylvan v. Quail Run on Sharon Homeowners Ass'n, 2026 LEXIS 134211 (W.D.N.C. Mar. 12, 2026).

In a case that seems too similar to the one at hand, it was found that "Pu's federal claims, however, suffer a much more egregious flaw than unsound interpretation of contract language. He has shoehorned a dispute over the meaning of condominium by-laws into federal claims based on RICO and FDCPA, statutes aimed at "long-term criminal activity" and "abusive debt collection practices," respectively. . . This litigation strategy--presumably geared to exploit the damage multiples for which the federal statutes provide--is baldly improper, but Pu is not the first to employ it. One court in this district has surmised "that every member of the federal bench has before him or her at least one-and possibly more-garden variety fraud or breach of contract cases that some Plaintiff has attempted to transform into a vehicle for treble damages by resort to what another respected jurist, Judge Allan Schwartz . . . has referred to as 'the litigation equivalent of a thermonuclear device'-a civil RICO suit." In the same vein, two other courts in this district have

issued notably sharp dismissals of RICO claims premised on real estate disputes similar to Pu's dispute with the condo Association. *See Calka v. Kucker Kraus & Bruh, LLP*, No. 99 Civ. 4999, 2000 U.S. Dist. LEXIS 6081, 2000 WL 557266, at *1 (S.D.N.Y. May 8, 2000) (Mukasey, J.) (calling suit "frivolous and obstructive" where plaintiff brought RICO claims for what was "essentially a landlord/tenant dispute"); *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, 2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sept. 29, 2004) (Sweet, J.) ("It has been suggested that the civil provisions of [RICO] are the most misused statutes in the federal corpus of law . . . . To this end, courts must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing.") (citation omitted)." Pu v. Charles H. Greenthal Mgmt. Corp, 2010 U.S. Dist. LEXIS 21875 (S.D.N.Y. Mar. 9, 2010).

**COUNT IX: RICO CONSPIRACY**

Plaintiff fails to state a cause of action as to this Count. § 1962(d) . . . provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. 18 U.S.C. § 1962(d). The Third Circuit has stated that, in order to plead a § 1962(d) violation, a plaintiff must "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose ... includ[ing] agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." Lightning Lube v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993). Safa v. City of Phila., 2014 U.S. Dist. LEXIS 16865 (E.D. Pa. Feb. 11, 2014). As noted, above, the Plaintiff has failed to plead facts establishing the requisite predicates. Furthermore, the Plaintiff's bare bones

allegations are insufficient to plead the required elements of this count especially as to the actual actions taken by the various Defendants to achieve the improper purpose.

**COUNT X- DECLARATORY RELIEF**

The Plaintiff fails to state a cause of action as to this Count. "The Declaratory Judgment Act, 28 U.S.C.S. § 2201, provides that in a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. But § 2201 does not create an independent cause of action." Davis v. United States, 499 F.3d 590 (6th Cir. 2007).

While Plaintiff utterly fails to state a cause of action, even if he were to be permitted to amend this Count, such an amendment would be futile because a challenge as to the authority of an association to take certain actions under the governing documents are subject to derivative processes and standing. See Germantown Manor Homeowners Ass'n v. GGAT Dev. Corp., 2017 Tenn. App. LEXIS 576 (Ct. App. Aug. 24, 2017) (holding a derivative proceeding is the sole recourse for Appellants to contest the authority of the board of directors to act, Appellants cannot challenge the board's assessment of association fees absent a properly pled derivative action.").

**WHEREFORE**, the Defendants respectfully requests that this Court: 1. Grant Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); 2. Dismiss Plaintiff's Complaint in its entirety with prejudice; 3. Award Defendants' their costs and attorneys' fees incurred in defending this action; and 4. Grant such other and further relief as the Court deems just and proper.

/s/ Marielle Westerman, Esq.
Marielle Westerman, Esquire
BPR No. 040074
Westerman Law, PLLC
725 Cool Springs Blvd, Ste. 600

Franklin, TN 37067
Telephone No.: (629) 256-6179
Primary Email: mwesterman@westerman.law

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, I electronically filed the foregoing Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record who are registered CM/ECF users. I further certify that a copy of the foregoing was served by U.S. Mail upon the pro se Plaintiff, Kevin M. Donovan.

/s/ Marielle Westerman, Esq.
Marielle Westerman, Esquire
BPR No. 040074
Westerman Law, PLLC
725 Cool Springs Blvd, Ste. 600
Franklin, TN 37067
Telephone No.: (629) 256-6179
Primary Email: mwesterman@westerman.law