IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**KEVIN M. DONOVAN,**
Plaintiff,

v.

BENT CREEK HOMEOWNERS ASSOCIATION, INC., et al.,
Defendants.

Case No. 3:26-cv-00700

Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Lynda M. Hill

JURY DEMAND

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS TIMMONS PROPERTIES, INC. AND LYNN BURKA'S AMENDED MOTION TO DISMISS (DOC. 35)

## INTRODUCTION

The motion's centerpiece is the argument that the charges Timmons demanded, carried on Plaintiff's account, and threatened to secure with a lien are not "debts." The authorities Defendants assemble for that argument and the exclusions built on it tell a different story. *Franklin*, which they cite for its transactional test, reversed a judgment for the collector and held that unpaid parking fees **and nonpayment penalties** are debts. *Wilson* and *Rowe*, which they cite for the fiduciary exemption, each rejected it at the threshold — *Rowe* reversing a Rule 12(b)(6) dismissal entered on the exclusion, *Wilson* reversing a summary judgment entered on a converted motion to dismiss. And the binding Sixth Circuit decision on the third exclusion, *Bridge v. Ocwen*, reversed the dismissal of a complaint against a servicer that made the same argument Timmons makes here.

Neither statutory exclusion Defendants invoke can be resolved in their favor on the pleadings. The fiduciary exclusion of § 1692a(6)(F)(i) requires that Timmons be a fiduciary whose collection work is incidental to a bona fide fiduciary obligation; the pleading alleges the

opposite, that collection of delinquent charges is a regular part of the compensated services Timmons sells. (SAC ¶ 241.) The default exclusion of § 1692a(6)(F)(iii) turns on when Timmons obtained the particular obligation and whether it was then in default. The pleading concedes what it should — Timmons administered Plaintiff's account generally — and alleges that its authority over these violation-based charges, as distinct from routine servicing of periodic assessments, arose only after the charges became disputed and delinquent, and that the management agreement and account records establishing that timing are in Defendants' possession. (SAC ¶ 240.) That is a fact question about a document Plaintiff has never seen, which is precisely why it cannot be decided now.

The remaining counts fare no better. The Tennessee Consumer Protection Act argument rests on the reasoning of an intermediate decision the Tennessee Supreme Court has since reversed, and the fiduciary-duty argument asks this Court to resolve what Tennessee law says is a question of fact. The motion should be denied.

## I. THE STANDARD, AND THE SCOPE OF THE MOTION.

A complaint survives Rule 12(b)(6) where it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; the court draws all reasonable inferences for the plaintiff, and the movant bears the burden of explaining why dismissal is appropriate. *Allergan, Inc. v. Revance Therapeutics, Inc.*, 711 F. Supp. 3d 873, 884–85 (M.D. Tenn. 2024); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

One housekeeping note. The motion's opening paragraph moves to dismiss "Counts IV and V," while its memorandum briefs, and its conclusion seeks dismissal of, Counts IV, V, and VI. Plaintiff responds to all three. Plaintiff does not object to the two exhibits Defendants attach

— the February 27, 2025 Third Reminder Notice and the complete recorded Declaration — and addresses both below.

## II. COUNT IV STATES A CLAIM UNDER THE FDCPA.

### A. The charges are "debts" under 15 U.S.C. § 1692a(5).

The Sixth Circuit holds that homeowners' obligations to their associations are debts under the FDCPA because the obligation arises from the purchase of the home — a consumer transaction — even where the timing and amount of particular assessments remain to be determined. *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293–94 (6th Cir. 2012), adopting *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 480–81 (7th Cir. 1997). The rule is stated in one sentence: "[a]s long as the transaction creates an obligation to pay, a debt is created." *Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997)) — where the obligation held to be a debt included a one-hundred-dollar *administrative fee*, and the dismissal was reversed.

Defendants' own lead authority joins that line. They quote *Franklin v. Parking Revenue Recovery Services, Inc.*, 832 F.3d 741 (7th Cir. 2016), for the proposition that the FDCPA reaches obligations "created by the contracts the parties used to give legal force to their transaction." *Franklin* applied that test, held that "[t]he obligations at issue here — unpaid parking fees and nonpayment penalties — are 'debts'" within the statute, and **reversed** the judgment in the collector's favor. *Id.* at 743–44. Penalties attached to a consensual relationship are debts under the case Defendants selected. Plaintiff's obligations trace to the same kind of consensual footing: he took title subject to the recorded Declaration — the instrument Defendants themselves attach and invoke as the source of every charge.

The decisions Defendants collect on the other side of the line involve obligations with no consumer transaction behind them. *Gulley* concerned fines levied by the City of Chicago — municipal penalties, as the Eleventh Circuit noted in distinguishing it. *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 951 (11th Cir. 2016). *Turner v. Cook* concerned a million-dollar tort judgment. 362 F.3d 1219, 1222 (9th Cir. 2004). *Spiegel v. Kim*, 952 F.3d 844 (7th Cir. 2020), concerned fees sought from an ousted director as a sanction for board-takeover misconduct, and its framework — tracing the obligation to a consensual transaction or not — is the framework under which *Newman* holds association charges are debts. 952 F.3d 844, 845–47 (7th Cir. 2020). And *Durso v. Summer Brook Preserve Homeowners Ass'n* is a district decision that itself concedes the other box, citing *Newman* and the purchase-transaction cases, 641 F. Supp. 2d 1256, 1263–65 (M.D. Fla. 2008) — and that never addressed service charges, a mixed account, or a collection letter describing the balance as maintenance fees.

Defendants' principal move is to quote the Second Amended Complaint against itself: paragraph 51's statement that a penalty is not a due, an assessment, or a fee for a service rendered, and paragraph 239's statement that the charges are not periodic assessments serviced in the ordinary course. Those paragraphs answer a different question — what the recorded instruments authorize, and what Timmons serviced in the ordinary course — not whether the asserted obligation arises out of a consumer transaction. On that question the statute supplies its own answer: a debt is "any obligation or *alleged* obligation of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5). Defendants asserted the charges as obligations arising under the recorded Declaration and enforceable against Plaintiff's Lot; their own Fine Policy declares such fines "a charge on the land and a continuing lien against the Lot." (SAC ¶ 234; Exs. B, C.) Defendants tied the charges to the covenant relationship created at purchase in

their own enforcement documents. They cannot now locate the same charges outside any transaction.

Three further features of the account distinguish it from the obligations in those decisions. First, seventy-five dollars of the balance is administrative fees and fifteen dollars is a certified-mail charge — ancillary amounts added to, and demanded as part of, the same alleged obligation. *Brown* held the obligation covered where the demand included exactly such a component — a one-hundred-dollar administrative fee — and none of the decisions discussed above addresses such ancillary charges. Doc. 35 itself quotes the Declaration defining assessment purposes to include "management and supervision" and "the employment of attorneys to represent the Association when necessary." Second, the charges were posted to, carried on, and demanded from the same account through which the Association bills and collects its assessments — the account Plaintiff paid by monthly ACH throughout — and *Haddad* makes association-account obligations debts even where the timing and amount of particular assessments remain to be determined. Third, the letter itself described the entire $290 demanded as "delinquent association maintenance fees" while itemizing a $200 default fine. (Ex. H.) Plaintiff does not contend that a periodic assessment sits inside that $290; he paid every assessment as it came due. The point is narrower, and it is Defendants' own: they described the entire sum they demanded as maintenance fees. If the Court concludes that the pure fines fall outside § 1692a(5), it should analyze the administrative and certified-mail charges and that characterization of the demanded balance separately, rather than treat the entire mixed demand as categorically outside the Act. Either the sums are assessment-like maintenance charges — debts under *Haddad* — or the letter misdescribed the debt, which is the § 1692e(2)(A) claim. The characterization cannot defeat coverage and be accurate at the same time.

Defendants close with the argument that unauthorized fines cannot violate § 1692f(1) because that section presupposes a qualifying debt. The argument assumes its conclusion. The pleading alleges the charges are debts, for the reasons above; § 1692f(1) is pleaded alongside claims under §§ 1692e(2)(A), 1692e(5), 1692e(10), and 1692g (SAC ¶ 242), none of which contains § 1692f(1)'s further requirement that the amount be one "expressly authorized by the agreement creating the debt or permitted by law." Each of those provisions of course applies only to a debt within § 1692a(5), and the pleading alleges these charges are such debts. If the Court concludes that pure fines fall outside § 1692a(5), it should separately determine whether the administrative and certified-mail charges are obligations arising from the consumer transaction, and whether the May 30 lien threat concerned a covered debt, rather than treating the mixed account as categorically outside the Act.

**B. Timmons is a debt collector on the pleaded facts, and § 1692a(6)(F)(iii) cannot be resolved against the pleading — Defendants' argument is the one the Sixth Circuit rejected at this same stage.**

Defendants argue from Plaintiff's own Exhibit P that the fines posted on February 6 and February 27, 2025, while the first collection notice issued March 28, 2025 — so Timmons took on the charges before any default, and § 1692a(6)(F)(iii) excludes it. The Sixth Circuit has held that this is the wrong question:

> "[T]he definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition. . . . Thus, a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default . . . . A defendant may not retroactively change the status of the plaintiff it has pursued as an alleged debtor."

*Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362–63 (6th Cir. 2012). The posture was this one: the servicer argued it was not a debt collector "because the loan actually was not in

default at the time of assignment," *id.* at 357, the district court dismissed on the pleadings, and the Sixth Circuit **reversed**, *id.* at 356. The controlling status under *Bridge* is the debt's status — actual or as treated — when the collector takes the debt on. The pleading supplies that timing: Timmons' authority to collect these disputed penalty charges, as distinct from its routine servicing of periodic assessments, arose only after the charges were disputed and delinquent. (SAC ¶¶ 239–40.) And Defendants' own exhibits confirm what that role looked like from its first act: the first collection notice issued March 28, 2025 — the same day the first administrative fee was added to the account — followed by four more fees, a certified-mail charge, and a ten-day letter threatening a lien. (Ex. P; Doc. 35, p. 13.) From the moment its collection role over these charges began, Timmons pursued Plaintiff as an alleged delinquent debtor. Whether the charges were "actually" in default at that point is precisely the recharacterization *Bridge* forecloses.

The district decision Defendants quote confirms the distinction rather than defeating it. In *Cornell v. HOA Management, Inc.*, the exclusion applied because the manager was alleged to collect the association's assessments "as they become due and payable each month" — a standing, pre-default servicing role over periodic assessments. No. 3:21-cv-00298, 2021 U.S. Dist. LEXIS 230020 (E.D. Tenn. Dec. 1, 2021). The Second Amended Complaint pleads the opposite: the charges at issue are violation-based penalty charges that Plaintiff disputed in writing from their inception, and Timmons' authority to collect these particular charges — as distinct from its routine servicing of periodic assessments — arose only after the charges became disputed and delinquent, with the management agreement that establishes the timing in Defendants' possession. (SAC ¶¶ 239–40.) At the pleading stage those allegations are taken as true, and the document that could contradict them is not in the record.

Defendants' answer is the exhibit-trumps principle and the observation that the Third Reminder Notice did not demand payment. But exhibits that do not address an allegation cannot contradict it. Applying the same principle Defendants invoke, the court in *Morris v. Environ Towers I Condominium Ass'n*, No. 18-60586, slip op. (S.D. Fla. June 21, 2018) (ECF No. 22) — a condominium association and its officers moving to dismiss — denied the motion: the defendants' denials "are just that — denials — which the Defendants may properly set forth in an answer, but which are not grounds for dismissal." A notice that says nothing about when Timmons' collection role over disputed charges began does not contradict the paragraph that pleads it.

**C. The § 1692a(6)(F)(i) fiduciary exclusion cannot be applied on this record — and Defendants' own authorities say so.**

The exclusion covers collection activity "incidental to a bona fide fiduciary obligation." Both of the decisions Defendants cite for it state its limit, and neither sustained it at the threshold. In *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 377 (4th Cir. 2006), the defendants were a law firm and one of its attorneys, and the court held their actions "not 'incidental' to" the fiduciary obligation but "central to it" — and reversed the summary judgment entered on a converted motion to dismiss. In *Rowe v. Educational Credit Management Corp.*, 559 F.3d 1028, 1034 (9th Cir. 2009), the court explained that the requirement's function "is to exclude fiduciaries whose sole or primary function is to collect a debt on behalf of the entity to whom the fiduciary obligation is owed" — and reversed the Rule 12(b)(6) dismissal entered on the exclusion.

*Harris*, the case Defendants principally rely on, applied the exclusion on *summary judgment*, with the management agreement in the record, and only because Liberty "did much

more than just collect assessments": it contracted for common-area maintenance, obtained utilities, purchased insurance, investigated claims, and assisted with tax filings — the catalogue Defendants' own brief reproduces. *Harris v. Liberty Community Management, Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012). The Timmons management agreement is not before this Court; it is in Defendants' possession. (SAC ¶ 240.) What the pleading does allege is that collection of delinquent charges is a regular part of the services Timmons provides for compensation (SAC ¶ 241); that Timmons is the entity that issues violation notices, imposes fines, adds administrative fees, maintains the ledger, and sent the ten-day letter; and that its own collection letter describes referral of unpaid accounts to "a collection attorney." (Ex. H.) Whether collection work is casual and of secondary importance to Timmons' role, or central to it, is the *Wilson/Rowe* question — a factual one that cannot be answered against the pleading, on a Rule 12 motion, without the document that would answer it.

Tennessee law adds the final step. *Condominium Management Associates, Inc. v. Fairway Village Owner's Ass'n*, No. W2009-00688-COA-R3-CV, 2010 WL 424592, at *9–10 (Tenn. Ct. App. Feb. 8, 2010), holds that a property manager's relationship with an association is not fiduciary per se and that the existence of a fiduciary relationship is a question of fact. Defendants' attempt to distinguish the case — that it did not address agency — concedes the point that matters: fiduciary status turns on facts, and the facts are not before the Court.

Finally, Defendants argue that Plaintiff cannot simultaneously plead a confidential relationship in Count VI and resist the fiduciary exclusion here. Rule 8(d)(2) and (3) expressly permit alternative and even inconsistent claims, but no inconsistency exists. Count VI pleads a confidential relationship running from Timmons *to Plaintiff*, grounded in its exclusive dominion over his funds, account, and records. (SAC ¶ 261.) The exclusion asks a different question about

a different relationship: whether collection is incidental to a bona fide fiduciary obligation owed *to the Association*. Timmons may owe the Association agency duties and still fail the exclusion because collection is what it is paid to do; and the tension Defendants should address is the one inside their own motion — subsection (F)(i) posits a fiduciary whose collection is secondary, while subsection (F)(iii) posits a servicer whose routine work is collection. Defendants plead both.

### D. The lien threat states a claim under § 1692e(5) on Defendants' own premises.

Section 1692e(5) prohibits threatening "to take any action that cannot legally be taken." The May 30, 2025 letter warned that "[a] lien will be filed on your property and other legal action may be taken to collect the money owed." (Ex. H; SAC ¶ 242(f).) The recorded instruments secure a lien for annual and special assessments; Defendants' own position in this motion is that the charges are not assessments but penalties. If that is so, the instruments authorize no lien for them, and the letter threatened action the documents do not permit. The argument Defendants make against coverage supplies the premise of the violation pleaded against them.

## III. COUNT V STATES A CLAIM UNDER THE TENNESSEE CONSUMER PROTECTION ACT AS AGAINST TIMMONS AND BURKA.

### A. The conduct occurred in trade or commerce.

The Second Amended Complaint pleads the commercial footing in terms: Timmons is a compensated service provider that provides property management and debt collection services to homeowners associations in exchange for fees, and engaged in those services in the regular course of trade or commerce. (SAC ¶ 250.) The Act "is to be liberally construed," and its

coverage turns on whether the defendant acted in a business capacity rather than in a casual or isolated transaction — a distinction under which even the sellers of their own home were covered because they acted in their business capacities. *Fayne v. Vincent*, 301 S.W.3d 162, 170–73, 176 (Tenn. 2009). Whether a particular act is unfair or deceptive is a question of fact. *Id.* at 170.

Defendants' contrary theory — that levying and collecting charges is not trade or commerce even when performed by a compensated business — was presented to the Tennessee Supreme Court and rejected. In *Franks v. Sykes*, 600 S.W.3d 908 (Tenn. 2020), hospitals filed liens for the full amount of their bills, and the intermediate court affirmed a judgment on the pleadings on the reasoning that lien filing was debt-collection activity outside the Act unless the underlying transaction was itself a consumer transaction — resting on the same federal district decision Defendants quote here at the same page. A unanimous Supreme Court **reversed**, holding that a provider "when acting in its business capacity rather than in its professional capacity, is subject to claims under the Act," and that consumers "may state a claim . . . for conduct arising out of the [defendants'] business practices." *Id.* at 915, 908–09. *Franks* is a lien case decided at the pleadings, and it is the controlling answer to this section of the motion.

The decisions Defendants collect do not carry the argument. *Pursell* affirmed dismissal where a bank, after repossession, allegedly "breached an agreement to return to [the borrower] his own property" — and the Court took care to confine the holding "to the facts and circumstances of this case" and to disclaim any general exemption. *Pursell v. First American National Bank*, 937 S.W.2d 838, 841–42 (Tenn. 1996). *Mini Systems* turned on a post-trial factual finding that the conduct was not deceptive, against a contractor who had actually filed suit and a lien. *Mini Sys., Inc. v. Alexander*, No. W2019-01871-COA-R3-CV, 2020 Tenn. App.

LEXIS 530 (Tenn. Ct. App. Nov. 24, 2020). It is not a Rule 12 holding. The conduct pleaded here is not an isolated post-default retrieval of property; it is the regular, compensated enforcement-and-collection service that is Timmons' business.

The two decisions Defendants lead with prove the rule rather than the exception. *Wright* states it: the Act "does not reach debt collection activity unless that activity stems from an underlying transaction that constitutes trade or commerce." *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 609 (W.D. Tenn. 2011). Two features of that case are worth stating plainly. Its holding was that the collector, a law firm, was practicing law when it sent a notice referencing a pending chancery action and offering to settle it; Timmons is not a law firm and that holding has no application to it. And the debt there was unpaid property taxes owed to a municipality — no consumer transaction underlay it at all — and the opinion contrasts that case with one in which a casino's collection efforts did affect trade and commerce because the plaintiff had come to the casino to engage in the casino's own trade. *Id.* at 609–10 (contrasting *Searle v. Harrah's Entertainment, Inc.*, as described in *Wright*, with *Pursell* and *Hunter*). Here the charges arose inside a live, compensated service relationship: Plaintiff paid every periodic assessment as it came due, by automatic transfer, throughout the period at issue and afterward. (SAC ¶ 223; Ex. P.)

*HYC Logistics* is further still from this case, in posture and in substance. It is an order on post-trial motions deciding renewed motions for judgment as a matter of law under Rule 50(b) after a jury verdict, and it *vacated* a TCPA award on a full trial record. *HYC Logistics, Inc. v. OJCommerce, LLC*, No. 2:23-cv-02050, 2025 U.S. Dist. LEXIS 121654, at *24–25 (W.D. Tenn. June 26, 2025) (ECF No. 342). Every fact the court relied on is absent here. The jury had found that OJC *itself* breached first by failing to pay for services already rendered, and that the

defendant held and properly exercised a contractual lien; the plaintiff was *not* seeking or acquiring further services and was in fact trying to end the relationship; and the misrepresentation was made to a third-party port authority with which the defendant had, in the court's words, "no consumer relationship." The court also observed that retrieving the collateral was "not even part of HYC performing its affirmative obligations under the contract." *Id.* Plaintiff did not breach; no lien for fines exists under the recorded Declaration and none was ever filed (SAC ¶ 226; Ex. H); Plaintiff cannot exit the relationship, because the covenants run with his land; and the misrepresentations alleged were made *to Plaintiff himself*, by the parties with whom he has the consumer relationship. Administering the account and enforcing the covenants is not a remedy Timmons applied after a failure to perform; it is the affirmative service it is paid to render.

The court in *HYC Logistics* was explicit about the limits of what it decided. It reasoned that although *ATS* "may stretch how Tennessee defines a 'consumer,' and *Franks* may extend the definition of 'trade or commerce,'" neither pushed the statute on both fronts at once, whereas "the facts here challenge the scope of the TCPA on every issue." *Id.* This case challenges it on none. And on the governing question both opinions return to, the Tennessee Supreme Court has already answered Defendants: *Pursell* "cannot be interpreted to say that no collections activities are covered by the [TCPA]," and whether a collections practice affects trade or commerce is a "fact-intensive inquiry." *Franks v. Sykes*, 600 S.W.3d 908, 915 (Tenn. 2020).

**B. The pleading fits the enumerated practice, and pleads consumer status.**

The count is built on the practice the statute enumerates at Tenn. Code Ann. § 47-18-104(b)(12): "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve . . . ." The consumer transaction is Plaintiff's

purchase of his home subject to the recorded covenants and the compensated services administered under them; the representations are pleaded with dates, documents, and amounts — the false vehicle-status statements of April 25 and May 12, 2025; the false first-instance characterization; the representation of the charges as valid, enforceable obligations; the July 28, 2025 communications; and the May 30, 2025 demand for $290 when Defendants' own ledger showed $240. (SAC ¶¶ 251–52.) Plaintiff's consumer status is pleaded the same way: a homeowner charged on his personal-residence account. (SAC ¶¶ 233–36.)

The pleaded loss is economic and ascertainable: the costs incurred responding to and disputing the unauthorized charges, and the consequential carrying costs arising from the May 2025 withdrawal of the home from the market. (SAC ¶ 257.) Those are losses of money or property within Tenn. Code Ann. § 47-18-109(a)(1). *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 809–10 (Tenn. Ct. App. 2012). The count also pleads its own timeliness under § 47-18-110 and its relation back to the original Complaint (SAC ¶¶ 253–56); the motion recites the limitations period and makes no argument against either.

### C. The particularity argument applies the wrong rules, and the pleading satisfies the right ones.

Defendants ask this Court to dismiss for failure to satisfy Tennessee Rule of Civil Procedure 9.02. Pleading standards in federal court are supplied by the Federal Rules of Civil Procedure, not their state counterparts. *Hanna v. Plumer*, 380 U.S. 460 (1965); *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). And under any standard, the count is pleaded with particularity: each act carries its speaker or defendant group, its date, its document, and its amount — down to the ledger figure the May 30 demand overstated. (SAC ¶¶

251–52.) A motion that must reproduce the pleading's own dates, exhibits, and dollar figures in order to attack them has answered its own particularity argument.

## IV. COUNT VI STATES A DIRECT CLAIM AGAINST TIMMONS FOR BREACH OF A CONFIDENTIAL RELATIONSHIP.

Defendants recite the elements of a confidential-relationship claim from *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727 (Tenn. Ct. App. 2018), which states them from *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 410 (Tenn. 2002): a position to influence or control; use of the confidences to obtain a benefit or advantage; and detriment to the dominated party. Each is pleaded. Timmons held "exclusive dominion and control over Plaintiff's account, its records, and his personal information," received and handled his funds, and was the party on whose administration of that account he necessarily relied. (SAC ¶ 261.) It used that control: fines and fees were entered, carried, and pursued through the ledger only Timmons maintains, as part of the compensated services that are its business. (SAC ¶¶ 238, 241, 265(c).) And the detriment is pleaded — the charges, the collection campaign, and the consequential losses. (SAC ¶¶ 264, 273.)

Defendants contest only the second element, arguing that Plaintiff "failed to plead any facts supporting" it. The element is stated in the disjunctive: the defendant must have used the confidence to obtain "some benefit from, or advantage over, the plaintiff." Plaintiff's theory rests on the second branch. He does not allege that Timmons retained the fine or fee revenue — who ultimately kept the money is a matter for discovery. The alleged advantage is not the bare existence of Timmons' account control but its use. Timmons alone maintains the ledger, which Plaintiff can neither see into nor audit, and it is alleged to have used that position to charge him a $15.00 certified-letter fee for a mailing he never received (SAC ¶ 196), to publish a fee schedule

setting a $20.00 certified-mailing charge exceeding the Association's own recorded cost of approximately $15.00 or less per item (SAC ¶ 195), to pursue the resulting balance, and then to remove the disputed entries without notice after the duty to preserve had attached (SAC ¶¶ 172–89). A party that can enter a charge, enforce it, and erase it without the other party's knowledge holds an advantage over him. Those allegations plausibly describe use of the entrusted position to place Timmons in a superior position over Plaintiff, even though the ultimate recipient of the charge revenue remains a matter for discovery.

Defendants' premise — that any confidence Plaintiff reposed in Timmons was voluntary in the ordinary commercial sense, or absent altogether — is also answered by their own exhibit. The Bylaws they filed provide that a Member's proxies "shall be in writing and filed with the Association's managing agent," and that a Member making a nomination to the Board "shall deliver a written nomination . . . to the Association's managing agent." (Doc. 35-2.) The recorded instruments thus route a homeowner's own governance rights through the managing agent. A homeowner does not select the manager, cannot remove it, cannot audit its books, and must nonetheless hand it his vote, his nomination, his assessments and his personal information. That is the asymmetry the pleading describes, and it is the opposite of an arm's-length dealing between parties of equal footing.

The comparison to *Heflin* itself shows why this pleading survives. There the claim failed on the second element because the bank obtained no benefit from a rogue teller's tip-off to a robber. Here the use of the entrusted position is not an employee's frolic; it is the conduct itself — compensated collection on charges entered in a ledger the homeowner can neither see into nor audit. (SAC ¶ 262.)

*Fairway Village* does not hold otherwise, because it addressed a different relationship. The question there was whether a manager owed fiduciary duties to the *association* — a counterparty that hires the manager, can fire it, and audits its books. The pleading disclaims any per se theory and grounds Timmons' duty in the asymmetry *Fairway Village* never confronted: "an individual homeowner has no oversight capacity over the managing agent: no role in its selection or retention, no access to its books, and no ability to audit the ledger it maintains for his account." (SAC ¶¶ 261–62.) And on Defendants' own reading, *Fairway Village* makes fiduciary status a question of fact — which is a reason to answer, not to dismiss. The contract-standing argument answers a claim the pleading does not assert: the duties alleged "exist independently of the recorded covenants" and do not rest on the management contract. (SAC ¶ 263.) The alternative-pleading objection fails for the reasons stated in Part II.C: Rule 8(d) permits alternatives, and these are not even alternatives — a duty owed to the Association and a confidential relationship with the homeowner whose account the agent exclusively controls can coexist.

What remains is the derivative-standing argument, and the pleading has already narrowed it. The reserve and expenditure practices are alleged "as evidence of the Board's breaches of its duties of care and oversight . . . and not as a separate theory of Association-wide injury." (SAC ¶ 272.) Plaintiff's claim "is premised primarily on individualized harm arising from unauthorized fines and targeted enforcement actions uniquely imposed upon his property." (SAC ¶ 271.) Tennessee has adopted the *Tooley* test, under which the direct-versus-derivative question turns on who suffered the harm and who would receive the recovery. *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 855 (Tenn. 2016). Charges assessed uniquely against Plaintiff's account, and enforcement escalated against him alone, are his injury and his recovery. Defendants' own

parenthetical describes mismanagement claims as "usually" derivative — and this is the unusual posture *Keller*'s test is built to identify. *Kirby Parkway Professional Condominium Ass'n, Inc. v. Cindy-Jarvis Ltd. LP*, No. W2019-02280-COA-R3-CV, 2020 Tenn. App. LEXIS 598 (Tenn. Ct. App. Dec. 30, 2020), finally, is a decision under Tenn. Code Ann. § 48-53-104(b) about challenges to corporate *power to act* — an ultra vires theory this pleading deliberately does not assert.

## V. THE RELIEF DEFENDANTS REQUEST IS NOT SUPPORTED.

Defendants seek dismissal *with prejudice* for pleading defects without addressing Rule 15 at all, and they ask the Court to find the counts "frivolous" and to award attorneys' fees and costs without citing any authority that would support either request.

## CONCLUSION

Three of the decisions Defendants cite for dismissal reversed one. The two statutory exclusions they invoke rest on opposite factual premises about the same charges, and the document that could establish either is in their possession, not the record. The state-law arguments rest on reasoning the Tennessee Supreme Court has rejected and on factual questions Tennessee law does not permit a court to resolve on the pleadings.

The motion should be denied. To the extent the Court finds any allegation insufficient, Plaintiff respectfully requests that dismissal be without prejudice and that he be permitted to seek leave to amend by motion under Rule 15 and Local Rule 15.01, identifying the claim, the defendant, and the additional facts proposed.

Respectfully submitted,

Kevin M. Donovan
6008 Christmas Drive
Nolensville, Tennessee 37135
(615) 428-9896
kevin.donovan@artofplanninglaw.com
Tennessee BPR No. 43740
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on the 11 day of September, 2026, the foregoing was submitted to the Clerk of Court for filing in the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record, including the following, to whom a courtesy copy was also sent by electronic mail:

Marielle Westerman, Esq.
Westerman Law, PLLC
725 Cool Springs Blvd., Ste. 600
Franklin, Tennessee 37067
mwesterman@westerman.law
Counsel for Defendants Bent Creek Homeowners Association, Inc.,
Timmons Properties, Inc., Lynn Burka, Robert Steve Cody,
Melissa Plank, Susannah Millar, Tim Barry, David Raissi,
Jared Burke, and Jeremy Edge

Lauren Paxton Roberts, Esq.
Anna Kate Ferrell, Esq.
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
lauren.roberts@stites.com
akferrell@stites.com
Counsel for Defendants Kaman & Cusimano, LLC,
Scott D. Weiss, Kiel Kovalcik, and Daniel J. Miske

Kevin M. Donovan
Plaintiff, Pro Se