IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

KEVIN M. DONOVAN,

Plaintiff,

v.

BENT CREEK HOMEOWNERS ASSOCIATION, INC., et al.,

Defendants.

Case No. 3:26-cv-00700

Judge Waverly D. Crenshaw, Jr.

**Magistrate Judge Lynda M. Hill**

APPENDIX OF UNREPORTED AUTHORITIES

TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS OF

TIMMONS PROPERTIES, INC. AND LYNN BURKA (DOC. 35)

Submitted pursuant to Local Rule 7.03(b)(5) and as a courtesy to the Court

Tab A — Morris v. Environ Towers I Condominium Ass'n
No. 18-60586 (S.D. Fla. June 21, 2018)

Tab B — Kirby Parkway Professional Condominium Ass'n v. Cindy-Jarvis Ltd. LP
No. W2019-02280-COA-R3-CV (Tenn. Ct. App. Dec. 30, 2020)

**Tab A**

**Morris v. Environ Towers I Condominium Ass'n**

No. 18-60586 (S.D. Fla. June 21, 2018)

Order Denying Motion to Dismiss (ECF No. 22)

Donovan v. Bent Creek Homeowners Association, Inc.,

No. 3:26-cv-00700 (M.D. Tenn.)

United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Pauline Morris, Plaintiff,<br><br>v.<br><br>Environ Towers I Condominium Association, Inc., and others, Defendants. | ) | Civil Action No. 18-60586-Civ-Scola |

**Order on Motion to Dismiss**

This matter is before the Court upon the Defendants Environ Towers I Condominium Association, Inc. ("Association"), Richard Ross, and Michel Houle's (collectively, the "Defendants") motion to dismiss. (ECF No. 11.) The Court has carefully considered all supporting and opposing submissions, the record in this case, and the applicable law. For the reasons set forth below, the Court **denies** the motion to dismiss.

**1. Background**

The Plaintiff Pauline Morris attempted to buy a unit at Environ Towers, where she hoped to live with her severely autistic adult son, Dean. However, after attending a meeting with the Defendants Ross and Houle, who are officers of the Defendant Association, the Plaintiff was informed that the Association had rejected her application to purchase the unit. As a result, the Plaintiff individually, and on behalf of her son, is suing the Defendants for violating the Fair Housing Act, 42 U.S.C. section 3601 *et seq*. (*See* Compl., ECF No. 1.) The Defendants seek dismissal of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mot., ECF No. 11.)

**2. Legal Standard**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A

AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citation omitted). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

**3. Analysis**

In their motion, the Defendants argue that the complaint should be dismissed because the Plaintiff fails to allege that she made a request for reasonable accommodation, and that in any event, the allegations in the complaint are contradicted by the exhibits attached to it. In addition, the Defendants argue that the Plaintiff impermissibly lumps them together, and therefore, they are unable to determine which allegations in the complaint relate to each Defendant. The Court considers each argument in turn.

The FHA forbids discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). "Such discrimination includes 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Overlook Mutual Homes, Inc. v. Spencer*, 415 F. App'x 617, 620-21 (6th Cir. 2011) (quoting 42 U.S.C. § 3604(f)(3)(B)). "To assert a failure to reasonably accommodate claim under

section 3604(f)(3), a plaintiff must plead four elements: (1) the plaintiff is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) the plaintiff requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the plaintiff an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the accommodation." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 (11th Cir. 2016).[1] In this case, the Plaintiff's claim turns on whether she requested a reasonable accommodation.

"However stated, a plaintiff can be said to have made a request for accommodation when the defendant has enough information to know of both the disability and desire for an accommodation." *Id.* at 1226 (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003)) (internal quotations omitted). The "circumstances must at least be sufficient to cause a reasonable housing provider to make appropriate inquiries about the possible need for an accommodation." *Id.* (internal alterations omitted).

The Plaintiff alleges that as part of the closing process for the unit at Environ Towers, she was required to complete an application for occupancy for herself and her son, requesting approval from the Association. (Compl., ECF No. 1 ¶¶ 16-17.) On her son's application, the Plaintiff plainly disclosed that he is disabled, specifically, that he is autistic, which is reflected in the exhibits to the complaint. (*See* ECF No. 1-7 at 1.) In addition, the Plaintiff attached a letter to her son's application, in which she further explains that her son "is nonverbal but independent in some skills," and offers to furnish additional information upon request. (ECF No. 1-7 at 2.) Over a month later, the Association advised the Plaintiff that it would conduct an interview with her and her son. (*Id.* ¶ 25.) During the interview, which was conducted by Defendants Ross and Houle, the Defendants expressed concerns about Dean's ability to abide by Association rules and regulations. (*Id.* ¶¶ 28-30.) In response, the Plaintiff assured Ross and Houle that Dean had never engaged in inappropriate conduct, and that he was always either in her care, or accompanied by a caretaker. (*Id.* ¶ 31.) Thereafter, Defendants Ross and Houle advised the Plaintiff that it was the Association's usual practice to read its rules and regulations to potential occupants to confirm their understanding

---

[1] In their motion, the Defendants discuss *Hunt* at length as supporting their contention that the Court should dismiss the instant complaint. Interestingly though, the Defendants rely on the court's order dismissing the *Hunt* plaintiff's initial complaint. *See Hunt v. Aimco Props., L.P.*, No. 14-80432, 2014 WL 12649013, at *4 (S.D. Fla. June 17, 2014) (Ryskamp, J.). After the plaintiff in *Hunt* amended the complaint, and the district court dismissed it again, the Eleventh Circuit reversed. *Hunt*, 814 F.3d at 1227.

and agreement to comply with the rules. (*Id.* ¶ 32.) The Plaintiff then reiterated to the Defendants that Dean was nonverbal and informed them in addition that he would not understand the rules or be able to express verbal acknowledgment, and stated that she and Dean's caretaker understood and agreed to abide by the rules and ensure that Dean would do so as well. (*Id.* ¶ 33.) Thus, the Plaintiff alleges, the reasonable accommodation she requested was that she and Dean's caretaker be permitted to confirm their understanding of the rules and take responsibility for ensuring that Dean complied. (*Id.* ¶ 50.) Despite being informed of Dean's disability and limitations, the Defendants proceeded to read the rules and regulations to Dean, who was unable as a result of his disability to confirm that he understood. (*Id.* ¶ 34.) The day after the interview, Ross sent an email to the Plaintiff, informing her that the Association had rejected her application to purchase the unit. (*Id.* ¶ 35.) Upon review, these allegations are sufficient.

The Defendants next contend that the complaint should be dismissed because the exhibits attached contradict the allegations that the Plaintiff requested a reasonable accommodation for Dean. When considering a motion to dismiss, in addition to the allegations in the complaint, the district court also considers "the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments," and where those exhibits contradict the complaint's allegations, the exhibits control. *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). Specifically, the Defendants point to an email that the Plaintiff sent in response to their rejection of her application, in which she requested that they reconsider their decision, noting her view that they had applied an unfair standard to interview her disabled son, and reiterating that he is a calm individual with no history of violence or inappropriate behavior. (ECF No. 1-9.) The Defendants also point to Ross's response to that email, in which he states that the Plaintiff was asked if her son required an accommodation in order to participate in the interview, to which the Plaintiff responded no. (ECF No. 1-10.)

Here, the exhibits do not contradict the factual allegations in the complaint. Indeed, none of the attachments contain a reference to her request that she and Dean's caretaker be permitted to agree to the rules and ensure that Dean abide by them; and therefore, the exhibits cannot contradict that allegation. Moreover, the Defendants' denials of the Plaintiff's allegations are just that—denials—which the Defendants may properly set forth in an answer, but which are not grounds for dismissal of the complaint in this case.

Finally, the Defendants argue that the complaint should be dismissed because the Plaintiff impermissibly lumps them together without distinguishing which one of them took the relevant actions. Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), within the *Twombly-Iqbal* plausibility standard. Under this rule, when a complaint alleges that multiple defendants are liable for multiple claims, a court must determine whether the complaint gives fair notice to each defendant. Although a complaint against multiple defendants is usually read as making the same allegation against each defendant individually, *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir. 1997), "at times, a plaintiff's grouping of defendants in a complaint may require a more definite statement." *George & Co. v. Alibaba.com, Inc.*, No. 2:10-cv-719-FtM-29DNF, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) (citing *Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996)) (internal quotations omitted). Indeed, a complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct" fails to satisfy Rule 8. *Lane v. Capital Acquisitions & Mgmt. Co.,* No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr.14, 2006) (Marra, J.).

Without citing case law in support, the Defendants attempt to impose a heightened pleading standard for the Plaintiff's claim requiring that she must "delineate the specifics of each and every alleged conduct" that she asserts the Defendants engaged in individually. However, the complaint does not violate Rule 8, as this is not a case in which the Plaintiff fails to delineate which facts are applicable to each Defendant, nor must the Plaintiff allege anything more specific. As clearly alleged by the Plaintiff, the Defendants Ross and Houle are officers of the Defendant Association, Ross and Houle conducted the interview with the Plaintiff and her son, and the Association, through the acts of Ross and Houle, violated the FHA.

**4. Conclusion**

Accordingly, the Defendants' motion to dismiss (**ECF No. 11**) is **denied**.

**Done and ordered** at Miami, Florida, on June 21, 2018.

Robert N. Scola, Jr.
United States District Judge

**Tab B**

**Kirby Parkway Professional Condominium Ass'n v. Cindy-Jarvis Ltd. LP**

No. W2019-02280-COA-R3-CV (Tenn. Ct. App. Dec. 30, 2020)

Opinion of the Court of Appeals of Tennessee at Jackson

Donovan v. Bent Creek Homeowners Association, Inc.,

No. 3:26-cv-00700 (M.D. Tenn.)

FILED
12/30/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2020 Session

**KIRBY PARKWAY PROFESSIONAL CONDOMINIUM ASSOCIATION INC. v. CINDY-JARVIS LIMITED LP ET AL.**

**Appeal from the Circuit Court for Shelby County**
**No. CT-002434-18 Valerie L. Smith, Judge**

---

**No. W2019-02280-COA-R3-CV**

---

This is an appeal from a case between a nonprofit development management association and a condominium unit owner regarding the unit owner's failure to pay monthly fees as well as a special assessment approved by the Board of the association. The trial court held in favor of the association, finding that it was well within its authority to assess both the monthly fees as well as the special assessment against the unit owner. The unit owner now appeals. For the reasons contained herein, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Jerome C. Payne, Memphis, Tennessee, for the appellants, Cindy-Jarvis Limited, L.P., and Barbara A. Duncan-Cody.

Homer L. Cody, Millington, Tennessee, Pro se.

Brandon F. McNary and Peter D. Baskind, Memphis, Tennessee, for the appellee, Kirby Parkway Professional Condominium Association, Inc.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Kirby Parkway Professional Condominium Association, Inc. ("the Appellee") is a nonprofit development management association. Cindy-Jarvis Limited, L.P. is a limited partnership in which Homer L. Cody and Barbara A. Duncan-Cody are the general partners

(collectively "the Appellants").[1] Cindy-Jarvis Limited, L.P. is the owner of a unit in a professional condominium development located in Memphis, Tennessee. Pursuant to the Master Deed of Kirby Parkway Professional Condominiums ("Master Deed"), the Appellee, through its Board of Managers ("Board"), is charged with administering the general affairs of the development, as well as maintaining its common elements. The Master Deed also enables the Board to assess the unit owners fees relating to the costs of maintenance and administration of the development.

On March 4, 2010, the Board held a meeting at which it passed a special assessment in the amount of $385,000.00 that was to become due from the unit owners on April 1, 2010. This special assessment was designed to fund roof and HVAC replacements on both buildings in the development. Each unit owner was charged for their share of the special assessment based on their ownership interest. In addition to approving the special assessment at the March 4 meeting, the Board also approved a 20% increase in monthly fees, which was to become effective on April 1, 2010. Unit owners were informed of the special assessment and increase in monthly fees by a letter dated March 19, 2010. Several years later, on May 29, 2018, the Appellee initiated a collection action against the Appellants, alleging that they were in arrears for both the special assessment and their monthly fees.

It is undisputed that the funds due for both the special assessment and the monthly fees remained unpaid by the Appellants despite repeated requests for payment by the Appellee over this eight (8) year period. At trial, the Appellants argued that the assessments may have resulted in excess revenues which were owed to tenants. They further argued that the special assessment was intended to "be financed by an increase in the [monthly] assessment for a five-year period."

The trial court ruled in favor of the Appellee, finding that the Appellants had failed to pay $19,277.52 in past due monthly assessments as well as $18,095.00 for the unpaid special assessment. The trial court also concluded that the Appellee had authority to assess both the increase in the monthly fees and the special assessment and that the Appellants were in breach of the Master Deed by failing to pay. Finally, the trial court concluded that the Board had the authority to designate the excess funds received from the assessments as reserves. A judgment against the Appellants was entered in the total amount of $49,829.52, which included an award of attorneys' fees. The Appellants now appeal the trial court's judgment.

## ISSUES PRESENTED

The Appellants raise four issues for our review on appeal:

[1] In the underlying case, the Appellee brought suit against Cindy-Jarvis Limited, L.P. as well as Barbara A. Duncan-Cody and Homer L. Cody.

1. Whether the Appellee's special assessment was actually a special assessment as defined by the Master Deed and its restated bylaws.
2. Whether the Appellants are entitled to setoffs of excess profits and reserves.
3. Whether Tennessee Code Annotated section 28-3-109(a) bars the trial court's subject matter jurisdiction over this matter.
4. Whether the trial court abused its discretion.

The Appellee presents two additional issues for our review:

1. Whether the Appellants' failure to comply with certain Tennessee Rules of Appellate Procedure precludes their brief from consideration by this Court.
2. Whether the Appellants' defense at the trial court was improper as it should have been brought in the form of a derivative complaint.

## DISCUSSION

At the outset, we address the Appellee's assertion that the Appellants' brief fails to comply with the Tennessee Rules of Appellate Procedure and that this failure precludes the brief from consideration by this Court. The Appellee contends that the Appellants' Statement of the Case is deficient under Rule 27(a)(5) of the Tennessee Rules of Appellate Procedure as it "is quite short, but makes sweeping, unsubstantiated statements and claims." Rule 27(a)(5) of the Tennessee Rules of Appellate Procedure provides that a party's statement of the case must "indicate briefly the nature of the case, the course of proceedings, and its disposition in the court below." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000); *see also* Tenn. R. App. P. 27(a)(5). The Appellee also notes that nowhere in the brief, including in the Statement of the Case, is there any citation to the appellate technical record. Finally, the Appellee argues that the Appellants' Statement of Facts is "equally deficient" as it again fails to cite to the record, in noncompliance with Rule 27(a)(6) of the Tennessee Rules of Appellate Procedure, which requires that a party's statement of facts must "[set] forth facts relevant to the issues presented for review with appropriate references to the record." Tenn. R. App. P. 27(a)(6).

Generally, "[o]ur Courts have 'routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief . . . constitutes a waiver of the issue[s] [raised].'" *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (quoting *Bean*, 40 S.W.3d at 55). However, there are times when this Court, "using its discretion afforded it under [Rule 2 of the Tennessee Rules of Appellate Procedure] may waive the briefing requirements to adjudicate the issues on their merits."[2] *Id*. Although in the present case we agree that there are deficiencies in the

[2] Rule 2 of the Tennessee Rules of Appellate Procedure provides that:

For good cause, including the interest of expediting decision upon any matter, the Supreme Court,

Appellants' brief, we have concluded that our review of the matter has not been hindered by them. Accordingly, we will proceed to address the Appellants' issues on appeal in spite of the deficiencies in the Appellants' brief.

The Appellants raise four issues for our review. We briefly turn first to the third issue, which asks us to find a lack of subject matter jurisdiction on the part of the trial court based on Tennessee Code Annotated section 28-3-109(a).[3] However, contrary to the Appellants' framing of this issue, this particular statute pertains not to a trial court's subject matter jurisdiction but rather to the statute of limitations on certain claims. As the Tennessee Supreme Court has previously noted,

> [t]rue statutes of limitations do not constitute grants of subject matter jurisdiction but rather restrict the powers of a court to act on a claim over which it has subject matter jurisdiction. *See Pugh v Brook (In re Pugh)*, 158 F.3d 530, 533-34 (11th Cir. 1998). A statute of limitations defense challenges the sufficiency of a particular claim, not the subject matter jurisdiction of the court in which the claim is filed. *See Grass Valley Terrace v. United States*, 69 Fed. CL. at 347. **Thus, unlike challenges to subject matter jurisdiction which cannot be waived, defenses based on the statute of limitations are affirmative defenses that can be waived unless they are specifically pleaded.** *George v. Building Materials Corp. of Am.*, 44 S.W.3d 481, 486 (Tenn. 2001); *see also United States v. Crossley*, 224 F.3d 847, 858 (6th Cir. 2000); *McLendon v. South Carolina Dep't of Highways & Pub. Transp.*, 313 S.C. 525, 443 S.E.2d 539, 540 (1994).

*Estate of Brown*, 402 S.W.3d 193, 198-99 (Tenn. 2013) (emphasis added). As such, any defense asserting the statute of limitations may be waived if not properly pleaded. Consequently, in the present case, we find the statute of limitations defense waived as the Appellants raised this defense for the first time on appeal rather than before the trial court.

---

Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular cause on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]

Tenn. R. App. 2.

[3] Tennessee Code Annotated section 28-3-109(a) provides:

> The following actions shall be commenced within six (6) years after the cause of action accrued: (1) Actions for the use and occupation of land and for rent; (2) Actions against the sureties of guardians, executors and administrators, sheriffs, clerks, and other public officers, for nonfeasance, misfeasance, and malfeasance in office; and (3) Actions on contracts not otherwise expressly provided for.

Tenn. Code Ann. § 28-3-109(a).

We perceive the remaining issues and arguments offered by the Appellants to be a challenge to the Board's authority by arguing that it was not authorized to order a special assessment or to act in retaining the funds. Additionally, the Appellants contend that the trial court abused its discretion in granting the Appellee a judgment against them. For their part, the Appellee argues that the Appellants are not permitted to even bring such arguments against it in their individual capacity. Specifically, the Appellee asserts that the Appellants are effectively challenging the Board's authority to act as it did in retaining what the Appellants refer to as "excess revenue" obtained from the special assessment and the monthly fees. We agree with the Appellee's analysis of the nature of the Appellants' challenge. The Appellants argue that the Board was required to pay back the special assessment funds to tenants over a period of time from what they referred to as "excess revenue." For the reasons stated below, we conclude that the defense asserted by the Appellants may only have been raised in the form of a derivative complaint for the benefit of the association, not for their individual benefit and, as a result, we find no occasion to disturb the trial court's judgment. Furthermore, to the extent that the Appellants assert that the trial court abused its discretion, we agree with the Appellee that the Appellants' argument on this point is simply a restatement of the Appellants' previous arguments which were ill-founded. As such, we conclude that the Appellants' claims in this regard are also without merit.

The Tennessee Nonprofit Corporation Act ("the Act") provides certain requirements that must be met before a party may challenge the authority of a nonprofit association to act through its board of directors. Tennessee Code Annotated section 48-53-104(b) provides that: "A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights. The proceedings may be brought by . . . a member or members in a derivative proceeding." Furthermore, expanding on the derivative proceeding requirement, Tennessee Code Annotated section 48-56-401(a) provides, "[a] proceeding may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor by: (1) Any member or members having five percent (5%) or more of the voting power or by fifty (50) members, whichever is less[.]" Therefore, in order for a party challenging the authority of a board of directors to act on behalf of a nonprofit association to have standing to assert such challenge, they must satisfy both section 48-53-104(b) and section 48-56-401(a)'s requirements.

This Court previously addressed the applicability of these requirements in *Germantown Manor Homeowners Ass'n, Inc. v. GGAT Development Corp.*, No. W2016-01461-COA-R3-CV, 2017 WL 3668926 (Tenn. Ct. App. Aug. 24, 2017). In that case, a homeowner's association filed suit against owners of lots in a development in order to collect association fees. The lot owners challenged the authority of the homeowner's association's board to assess these fees, arguing that, as majority owners of the lots, "their votes were usurped when the board was empaneled and voted to assess fees without first giving notice of those actions such that [the lot owners] could attend the meetings and vote." *Id.* at *5. The homeowner's association, as a nonprofit corporation, was subject to

the Act and therefore, this Court determined that the authority of its board could only be challenged through a derivative proceeding brought in the right of the corporation to procure a judgment in its favor as set forth in Tennessee Code Annotated section 48-53-104(b) and Tennessee Code Annotated section 48-56-401(a)(1). *Id.* This Court ultimately found that, as members of the homeowner's association with at least 5% or more of the voting power, the lot owners "had standing to bring a derivative proceeding to contest the authority of the board of directors." *Id.* at *5-6. However, the Court noted that the lot owners had not brought their challenge as a derivative proceeding. Thus, this Court held that, even though they had standing, the lot owners had not properly challenged the association's authority to collect assessments. *Germantown Manor Homeowner's Ass'n*, 2017 WL 3668926, at *7.

As we alluded to previously, a derivative proceeding is one that is "brought on behalf of the corporation to redress injury sustained by, or to enforce a duty owed to, the corporation." *Id.* at *6 (citing *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 867-68 (Tenn. Ct. App. 2016)). Here, the Appellants did not initiate suit against the Appellee and challenge the Appellee's Board's authority to retain the excess funds. However, as noted, the Appellants did assert a defense that amounted to a challenge of the Board's authority to retain this "excess revenue" rather than credit the Appellants. Therefore, although it did not initiate the underlying cause of action against the Appellee, it nonetheless challenged its authority to act in its argument at the trial court level. As such, in order for the Appellants to proceed against the Board, it must do so in the form of a derivative proceeding.

Moreover, not only did the Appellants fail to initiate their challenges to the Board's authority in the form of derivative proceeding but, as the Appellee correctly points out, the Appellants do not even have standing to bring such a proceeding. Pursuant to Tennessee Code Annotated section 48-56-401(a), a derivative proceeding may only be brought by "[a]ny member or members having five percent (5%) or more of the voting power or by fifty (50) members, whichever is less." Therefore, in order for the Appellants to have legal standing to bring a derivative proceeding to challenge the Appellee's authority, they must hold 5% or more of the voting power. Here, the evidence in the record on appeal clearly reflects that the Appellants ownership interest only comprises 4.7% of the total voting power within the association. Therefore, even if the Appellants had properly challenged the Appellee's authority by filing a derivative proceeding, it would still fail since the Appellants do not have the requisite statutory standing to bring such a proceeding.

Based on our review of the record and the applicable law, we conclude that, any counterarguments set forth against the Appellee by the Appellants have not been properly asserted in their current form.

## CONCLUSION

For the reasons stated herein, the trial court's judgment is affirmed in its entirety.

s/ Arnold Goldin
ARNOLD GOLDIN, JUDGE