**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **KEVIN M. DONOVAN,**<br>Plaintiff, | Case No. 3:26-cv-00700 |
| v. | Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill |
| BENT CREEK HOMEOWNERS<br>ASSOCIATION, INC., et al.,<br>Defendants. | JURY DEMAND |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JEREMY EDGE'S PETITION TO DISMISS COUNT VII UNDER THE TENNESSEE PUBLIC PARTICIPATION ACT (DOC. 36)**

## INTRODUCTION

Defendant Jeremy Edge petitions this Court to dismiss Count VII under the Tennessee Public Participation Act, Tenn. Code Ann. §§ 20-17-101 to -110 (the "Act" or "TPPA"). The petition should be denied for two independent reasons.[1]

First, the procedural mechanism Edge invokes is unavailable in this forum. Five decisions of this District, issued by three judges, have held that the TPPA's burden-shifting dismissal procedure conflicts with the Federal Rules of Civil Procedure and does not apply in federal court, and the Western District of Tennessee has reached the same conclusion. Four of those decisions denied a defendant's petition on precisely that ground. Edge's brief does not mention this line of

[1] The petition's caption and conclusion cite "T.C.A. § 27-17-104," and its conclusion asks the Court to dismiss "Count VIII." The Tennessee Public Participation Act is codified at Tenn. Code Ann. § 20-17-104, and Count VIII of the Second Amended Complaint states a claim under the Racketeer Influenced and Corrupt Organizations Act. Plaintiff treats both as typographical and responds to the petition as one directed to Count VII under the Tennessee Public Participation Act.

authority, does not cite *Erie* or *Hanna*, and offers no argument that the Act supplies a procedure a federal court may employ. The threshold question is dispositive, and it is unaddressed.

Second, even if the Act applied, the petition fails on its own terms. The Act permits a court to consider "sworn affidavits stating admissible evidence" and "admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d). Edge submitted no affidavit, no declaration, and no exhibit of any kind. His central factual assertion—that he possesses "video and pictorial evidence" and "reports to law enforcement"—appears only as an unsworn statement in a memorandum. Under the very procedure he invokes, that is not evidence. And because, in assessing the prima facie showing, the court views the record in the light most favorable to the party making that showing and disregards countervailing evidence, the material Edge describes would not defeat Count VII at that stage even had he produced it.

Plaintiff establishes a prima facie case on each essential element. Edge published two statements accusing an unnamed resident of stalking, threats, and harassment, and of being a "perpetrator" who walks "a fine line keeping any real legal action unavailable." The statements impute criminal conduct. They are pleaded as false and, if the Court reaches the Act's procedure, Plaintiff's sworn declaration and the exhibits it authenticates supply the corresponding evidentiary showing. And they identify Plaintiff by context—most plainly by locating the accused conduct on the *sidewalk*, the precise place from which Plaintiff had been ordered to stay away five weeks earlier.

The Act is not a one-way instrument: its stated purpose is to protect "the rights of persons to file meritorious lawsuits for demonstrable injury" at the same time it safeguards speech. Tenn. Code Ann. § 20-17-102.

**The petition should be denied.**

## ARGUMENT

### I. THE TPPA'S DISMISSAL PROCEDURE DOES NOT APPLY IN FEDERAL COURT.

#### A. Five decisions of this District, by three judges, have so held; the Western District agrees.

In *FemHealth USA, Inc. v. Williams*, No. 3:22-cv-00565, 2023 WL 5498055 (M.D. Tenn. Aug. 23, 2023), the defendants moved to dismiss under the TPPA, arguing—as Edge argues here—that the plaintiff could not establish a prima facie case. Judge Campbell held that "the burden-shifting framework established by the TPPA is procedural and in direct conflict with Federal Rules of Civil Procedure 8 and 12, which provide the criteria for assessing the sufficiency of a pleading," and concluded that "the procedural mechanisms established by the TPPA do not apply in federal court." The motion was denied. *Id.* (ECF No. 126, at 11, PageID # 1076).

In *Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049 (M.D. Tenn. Jan. 10, 2022), Judge Richardson reached the same result on a defendant's petition, holding that "the TPPA's dismissal provision will not apply in federal court, and the Defendant's petition under the TPPA is denied." *Id.* (ECF No. 87, at 25, PageID # 1165).

In *Mucerino v. Martin*, No. 3:21-cv-00284, 2021 WL 5585637 (M.D. Tenn. Nov. 30, 2021), Judge Trauger denied a defendant's TPPA petition, reasoning that "[i]f the court were to resolve the plaintiffs' claims pursuant to the procedures set forth in the TPPA, it would be adjudicating those claims in a manner not contemplated or authorized by the Federal Rules." The court added that "the determinative issue here is not the degree of the conflict between state and federal law but the existence of that conflict in the first place." *Id.* (ECF No. 33, at 12–13, PageID # 342–43).

And in *Hughes v. Gupta*, 613 F. Supp. 3d 1054 (W.D. Tenn. 2021), the court denied a defendant's TPPA petition, holding that "the TPPA's pleading standard and burden-shifting framework is in direct conflict with Federal Rules of Civil Procedure 8 and 12, which define the criteria for assessing the sufficiency of a pleading before discovery, as well as Federal Rule of Civil Procedure 56, which sets forth the circumstances under which a court must dismiss a case before trial," and concluding that "the TPPA does not apply in federal court." *Id.* at 1058.

In *Doe v. Bucciarelli*, No. 3:24-cv-00974, slip op. (M.D. Tenn. May 22, 2025) (Doc. No. 49), the court observed that "virtually every federal district court in Tennessee has held that the procedural mechanisms of the TPPA conflict with the procedures established in the Federal Rules of Civil Procedure governing dismissal of cases and are, therefore not available in federal court," and "again conclude[d] that the TPPA's procedures do not apply in federal court." *Id.* (Doc. No. 49, at 14, PageID # 333).

Most recently, in *Patriot Angels Consulting Corp. v. Veterans of Foreign Wars of the United States*, No. 3:24-cv-00087, 2026 WL 625680 (M.D. Tenn. Mar. 5, 2026) (Doc. No. 97), Judge Richardson denied a defendant's TPPA petition filed alongside a Rule 12(b)(6) motion, holding that "the TPPA's dismissal provision will not apply in federal court, and the Defendant's TPPA Petition is denied." The court noted that "there is still no Sixth Circuit case law on the applicability of dismissal procedures in anti-SLAPP statutes—like the TPPA—in federal court," and saw "no reason to find differently now than it did in *Lampo Grp., LLC* and *Santoni*." *Id.* (Doc. No. 97).

**B. The reasoning rests on an unavoidable conflict with Rules 8 and 12.**

These decisions follow *The Lampo Group, LLC v. Paffrath*, No. 3:18-cv-01402, 2019 WL 3305143 (M.D. Tenn. July 23, 2019), in which Judge Richardson held that because Rules 8,

12, and 56 are valid under the Rules Enabling Act and govern the same basic question, a state anti-SLAPP motion-to-strike procedure "cannot apply in federal court." *Lampo* addressed California's statute rather than the TPPA, but its analysis is the analysis this Court has since applied to the Act. The governing principle is settled: "when a duly adopted Federal Rule of Civil Procedure collides with a state procedural edict in a federal court: the state requirement yields, and the Federal Rule prevails." *Mucerino*, 2021 WL 5585637, at *6; *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

Two courts of appeals have reached the same conclusion as to comparable statutes. In *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018), the Eleventh Circuit held that the motion-to-strike provision of Georgia's anti-SLAPP statute conflicts with Rules 8, 12, and 56 and "cannot apply in federal court." *Id.* at 1357. The D.C. Circuit reached the same conclusion as to the District of Columbia's statute in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) ("A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. anti-SLAPP Act's special motion to dismiss provision.").

The reason these statutes collide with the Federal Rules is the reason that governs here. A state anti-SLAPP statute of this kind "imposed a requirement that a plaintiff establish a probability that he or she will prevail on the claim," whereas "in federal courts, the plausibility standard under Rules 8(a) and 12(b)(6) does not impose a probability requirement at the pleading stage." *Hughes*, 613 F. Supp. 3d at 1057–58 (discussing *Lampo Group* and citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). Because the state and federal rules "purported to

answer the same question—the applicable standard for granting pretrial judgment to defendants in federal court"—the state requirement yields. *Id.* at 1058.

The conflict here is plain. The Act would require this Court to weigh evidence and decide whether Plaintiff has marshaled "enough evidence to allow the jury to rule in his favor" before any answer has been filed and before any discovery has occurred. Rules 8 and 12 supply a different test—whether the complaint states a plausible claim on its well-pleaded allegations. The two cannot both govern the sufficiency of this pleading.

**C. The Court should state the limits of this authority candidly.**

Plaintiff does not overstate the point. The Sixth Circuit has not decided whether the TPPA's dismissal procedures apply in federal court; *Bucciarelli* and *Santoni* say so expressly, and *Hughes* describes the question as one of first impression in this circuit. Every Tennessee decision cited above is a district court decision, and none binds this Court.

Plaintiff further discloses that courts outside this circuit have divided on whether state anti-SLAPP procedures may be applied in federal court. Compare *Abbas*, 783 F.3d 1328, and *Carbone*, 910 F.3d at 1357, with *Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010) (concluding that Maine's anti-SLAPP statute was substantive and therefore cognizable in federal court), and *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (assuming without deciding that Louisiana's statute applies); both lines are collected in *Hughes*, 613 F. Supp. 3d at 1057. That division has not produced disagreement within Tennessee. Every federal court in this state to reach the question has held the TPPA's dismissal procedures unavailable, and Edge offers no contrary authority—indeed, no argument on the question at all.

**D. What follows from the threshold.**

If the Act's procedures are unavailable, three consequences follow. There is no dismissal "under the Act," so the mandatory fee award of Tenn. Code Ann. § 20-17-107(a) is not triggered. The automatic discovery stay of § 20-17-104(d) does not attach; in this Court, "[d]iscovery is not stayed, including during the pendency of dispositive motions, unless specifically authorized by Fed. R. Civ. P. 26(d) or by order of the Court." L.R. 16.01(g). A stay here requires an order; it does not arrive with a petition. And the with-prejudice dismissal contemplated by § 20-17-105(e) is unavailable.

Plaintiff acknowledges the corollary. As *Mucerino* explained, striking the Act's procedural framework does not displace substantive Tennessee law; a court "will consider any such substantive rules, if necessary, in the context of considering [a] Rule 12(b)(6) motion." 2021 WL 5585637, at *6. Plaintiff therefore answers Edge's substantive arguments below, and they fail as well.

The disposition follows directly. If the TPPA's procedure is unavailable, the petition should be denied. To the extent the Court elects to construe Edge's filing as a motion under Rule 12(b)(6), Count VII states a plausible claim for the reasons given below, and the videos, photographs, and law-enforcement reports Edge describes but has not filed could not be considered without converting the motion under Rule 12(d) and affording Plaintiff a reasonable opportunity to present pertinent material.

## II. EDGE'S UNSUPPORTED ASSERTION OF CONTRARY EVIDENCE CANNOT DEFEAT PLAINTIFF'S PRIMA-FACIE SHOWING.

The Act specifies what a court may consider: "supporting and opposing sworn affidavits stating admissible evidence" and "admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d); *see Charles v. McQueen*, 693 S.W.3d 262 (Tenn. 2024). Edge submitted

neither. Doc. 36 has no attachments. It includes no declaration from Edge, no affidavit from any person, and no exhibit.

The omission is not technical. The entire falsity section of the petition reads: "The Defendant has video and pictorial evidence of the Plaintiff's actions that show that the statements were not false along with reports to law enforcement." Doc. 36, at 6. That is a single unsworn sentence in a memorandum, describing materials that have never been produced to Plaintiff or to the Court. It is argument, not evidence, and § 20-17-105(d) does not permit a court to rest a dismissal on it.

The contrast with *Charles* is instructive. There the petitioner supported her petition with eighteen documentary exhibits, including her own declaration, and the sufficiency of that showing was litigated through the Tennessee Supreme Court. 693 S.W.3d 262.

Edge does cite exhibits filed by Plaintiff, and Plaintiff does not suggest the Court must ignore its own record. The point is narrower, and it disposes of his falsity argument: as to the one assertion on which that argument depends—that videos, photographs, and law-enforcement reports exist and disprove the statements—Edge has submitted nothing. No declaration attests to those materials, and none of them is before the Court.

One feature of the petition deserves mention before the merits. Each of the evidentiary authorities Edge relies on—*Siegfried*, *McGuffey*, *Stones River Motors*, *Piper v. Mize*, No. M2002-00626-COA-R3-CV, 2003 Tenn. App. LEXIS 429 (Tenn. Ct. App. June 10, 2003), and *Block v. Matesic*, 789 F. Supp. 3d 1131 (S.D. Fla. 2025)—was decided on a developed evidentiary record, after an answer and discovery: on summary judgment, or, in the case of *McGuffey*, on directed verdict after the plaintiff put on her proof to a jury. Edge asks this Court

to reach the same results before an answer, before any discovery, and on a record to which he has contributed nothing.

## III. PLAINTIFF ESTABLISHES A PRIMA FACIE CASE ON EACH ESSENTIAL ELEMENT.

Two different standards are in play, and Plaintiff separates them. Under Rule 12 the question is whether Count VII states a plausible claim on its well-pleaded allegations. Under the Act the question is whether Plaintiff has come forward with admissible evidence sufficient to allow a rational jury to find in his favor on each essential element. Where the discussion below relies on the pleading it addresses the first question; where it relies on the Declaration of Kevin M. Donovan and the exhibits it authenticates, it addresses the second.

### A. The standard favors the responding party.

The Act provides that if the petitioning party carries its initial burden, "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim." Tenn. Code Ann. § 20-17-105(b). The court "may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties." *Id.* § 20-17-105(d).

Subsection (c) does not alter this conclusion. It requires dismissal only if the petitioning party "establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c). A defense apparent on the face of the pleading may be decided as a matter of law, and Plaintiff does not contend otherwise. Edge's central defense is not of that kind. He asserts that videos, photographs and reports to law enforcement establish the truth of his statements — a defense that depends entirely on factual material outside the pleading. Subsection (d) identifies

what a court may consider in resolving such a showing: “supporting and opposing sworn affidavits stating admissible evidence” and other “admissible evidence presented by the parties.” Edge submitted none. The Court therefore need not decide what showing might establish a defense under subsection (c) on some other record, because the factual material on which Edge’s defense depends is absent from this one.

The showing subsection (b) requires is a different one, and it is Plaintiff's. To establish a prima facie case under the Act, "a party must present enough evidence to allow the jury to rule in his favor on that issue." *Charles*, 693 S.W.3d 262. In making that assessment, "the court should view the evidence in the light most favorable to the party seeking to establish the prima facie case and disregard countervailing evidence." *Id.* That disposes of Edge's factual assertions at this stage twice over: they are not evidence, and if they were, they would be countervailing evidence the Court is directed to disregard.

The Act is not a one-way instrument. Its stated purpose is to safeguard the rights of persons "to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law" and, "at the same time," to "protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102; *see Charles v. McQueen*, 693 S.W.3d 262 (Tenn. 2024). The second half of that purpose is what this petition asks the Court to disregard. Plaintiff is a resident who was accused in a neighborhood forum of stalking and threatening conduct he did not commit; the Act protects his right to bring that claim as surely as it protects speech on matters of public concern.

Under Tennessee law a defamation plaintiff must show that the defendant published a false and defamatory statement with knowledge of its falsity, with reckless disregard for its truth, or with negligence in failing to ascertain its truth, and that the statement injured his character and

reputation. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999); *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013). Because Plaintiff is a private individual, negligence suffices, and Edge's petition does not contend otherwise. *Charles*, 693 S.W.3d 262. Edge has not raised public-figure status, and the Court need not reach it. *Charles* itself shows why any such contention would fail. The limited-purpose public figure there was the community's developer-affiliated homeowners'-association president, who sued a resident over a review critical of his public role; the court so held because he had voluntarily injected himself into the forefront of the controversy, had attained special prominence in it, and had access to effective channels of communication through which to rebut the statements. *Id.* The roles here are reversed. The Board member is the speaker and the resident is the plaintiff. Whatever public role Edge occupies as a director attaches no public-figure status to the resident he accused, and it carries no privilege to defame a critic of the Association's governance. Plaintiff has never been an officer, director, committee member, or spokesperson of the Association; he is the resident whom the Association's May 19, 2025 directive restricted and whom Edge himself blocked from seeing the very statements at issue—the opposite of the access to effective channels of communication on which *Charles* rests. Donovan Decl. ¶¶ 2, 28–33 & Ex. 4. Nor can Edge supply the missing status through the accusations themselves: *Charles* holds that a defendant cannot make the claimant a public figure by drawing attention to him through the statements sued upon, because the controversy and the plaintiff's participation in it must predate the defendant's statement. *Id.* (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)). And even were the actual-malice measure to apply, the evidence set out in Part III.D below—Edge's own statement in the same thread that no "actual violence" had been perpetrated, and the fact that his response, when asked directly whether there had been "a threat of violence in any way," did not

identify any threat—would permit a jury to find that the accusations were published with knowledge of their falsity or reckless disregard for their truth. Donovan Decl. ¶¶ 5, 18–20 & Ex. 2.

## B. Plaintiff does not dispute that the statements touch a matter of public concern.

Plaintiff does not contest the first step of the Act's framework. Statements about safety within a residential subdivision fall within the Act's definition of a "[m]atter of public concern." Tenn. Code Ann. § 20-17-103(6)(A); *see Doe v. Roe*, 638 S.W.3d 614 (Tenn. Ct. App. 2021). Plaintiff's response rests on the second step, where the burden is his and where he carries it.

## C. Edge conflates publication with privilege; his own authority states the order of operations against him.

Edge argues that "no publication occurred," and then explains that "[t]he reason that no 'publication' occurs is based on the doctrine of 'qualified privilege.'" Doc. 36, at 6. These are distinct doctrines. Publication asks whether the statement was communicated to a third person. Qualified privilege is an affirmative defense that assumes publication and excuses it in defined circumstances. Collapsing the two allows Edge to present a defense that must be pleaded and proved as though it were an element Plaintiff failed to allege.

*Siegfried* holds that "[w]ithout publication, the court will not address the issues of malice, privilege, falsity, or other related questions." Privilege is what a court reaches *after* publication is established. It is not the reason publication is absent.

On publication itself, *Siegfried* does not reach this case. There, the allegedly libelous letter was sent only to the voting members of an incorporated organization "as it was their responsibility to receive and review the charges pursuant to the by-laws of the organization," and the court held that the letter "never left the corporate structure" of that organization. The rule

rests on the principle that "communication among agents of the same corporation" is not communication to a third person.

Edge did not post to the Association. He posted to the "Bent Creek Neighborhood - Uncensored- Facebook group," which is not Bent Creek Homeowners Association, Inc. By Edge's own description, admission to that group turns on residence in the neighborhood rather than membership in the Association.

What the rule requires is absent on this record. The recipients were neighborhood residents. Donovan Decl. ¶¶ 3, 5, 7–8 & Exs. 1–2. Nothing establishes that they were Edge's employees, his agents, officers of a common corporation, or persons under any organizational duty to receive, review, or act upon an accusation of criminal conduct. Nor does the record establish the identity, status, or common-interest relationship of every person who read the posts. That is what the petitioner would have to show, and Edge has offered no evidence of it.

Two further limits bear noting. The sentence Edge quotes—that no publication occurs in "situations involving communications between members of corporations, unincorporated groups, and associations"—is *Siegfried*'s quotation of *Carter v. Willowrun Condominium Ass'n*, 345 S.E.2d 924 (Ga. Ct. App. 1986), a Georgia decision the Tennessee court consulted because it found "no Tennessee case law on point." And *Siegfried* was decided on summary judgment, following the defendant's answer and discovery, on an evidentiary record. Edge invokes it before any answer, before any discovery, and without submitting anything at all.

**D. Conditional privilege cannot be established on this record, and in any event the pleaded claim and the submitted evidence support abuse of any privilege.**

Edge's privilege authority supplies the standard that defeats him. *McGuffey* holds that "[w]hen a statement falls under a conditional privilege, the plaintiff must prove actual malice in

order for the privilege to be lost," and defines actual malice in this setting as statements "made with knowledge that they are false or with reckless disregard to their truth or falsity."

Count VII pleads that standard in its own terms: the statements were "published to the community with knowledge of their falsity or with reckless disregard for their truth." Second Am. Compl. ¶ 280. Whether a privilege has been abused is a question of fact, and the record will not permit it to be resolved in Edge's favor. In the same conversation in which he characterized the conduct as "serious threats" and "stalking," Edge wrote that "[t]here is just so little that can be done until actual violence is perpetrated and then it is too late." And when a resident expressly asked him whether there had been "a threat of violence in any way, or is it just nervous about behaviors," Edge answered without identifying any threat, any threatening words, or any violent act. Donovan Decl. ¶¶ 5, 18–20 & Ex. 2. Edge was present at the June 23 Board meeting when officers responded, *id.* ¶¶ 13–14, and no citation was issued to Plaintiff and no charge was brought, *id.* ¶ 17. *McGuffey* itself was resolved on an evidentiary record. Edge asks this Court to resolve the same question on no record at all.

Plaintiff draws one distinction squarely. What counsel for the Association asserted and then failed to produce, Donovan Decl. ¶¶ 23–27, is not offered as proof of what Edge personally knew. It is offered for a narrower point: Edge's own petition tells this Court that he holds "video and pictorial evidence" and "reports to law enforcement," and none of it is before the Court. *Id.* ¶ 27. Although not conclusive standing alone, the continued failure to identify or produce the evidence invoked to support the accusations reinforces that fault and abuse of privilege cannot be resolved in Edge's favor on this record.

The privilege Edge invokes is, in Tennessee, the common interest privilege, which has been applied to "communications between employees or agents of the same business or

corporation," and which *McGuffey* indicates may extend to others who share an interest in the subject of the communication. Whether it reaches these statements depends on their subject, their recipients, their purpose, and the circumstances of their publication—none of which is established on this record. Plaintiff's principal contention does not depend on the answer: if a conditional privilege were shown to apply, the facts pleaded and set out above—that no arrest, citation, charge or conviction ever followed, and that Edge has produced none of the "video and pictorial evidence" or law-enforcement reports he claims to possess—support the inference that the statements were made with knowledge of their falsity or reckless disregard for it, which is what defeats such a privilege.

Edge's remaining authority on this point, *Block v. Matesic*, 789 F. Supp. 3d 1131 (S.D. Fla. 2025), is an amended omnibus order granting *summary judgment* in the Southern District of Florida, expressly applying Florida's qualified privilege on a fully developed record. It does not state Tennessee law and does not bind this Court. Even there, the privilege yields to a showing of express malice.

**E. The statements are "of and concerning" Plaintiff.**

Edge argues that the statements do not name Plaintiff, that the first refers to "residents" in the plural, and that no other participant in the thread identified the "perpetrator." A statement need not name its subject; it is actionable if it was made "of and concerning" the plaintiff or "referred to the plaintiff by reasonable implication." Doc. 36, at 7 (quoting Edge's authority). The Second Amended Complaint pleads that reasonable implication, and the text of Edge's own statements supplies it.

Edge accused the unnamed person of "attempts to engage with my children *from the sidewalk* while my kids were playing." Second Am. Compl. ¶ 276. Five weeks before those

statements, on May 19, 2025, Lynn Burka directed Plaintiff to cease "visiting their homes, walking past their homes and standing on the sidewalk staring at their house." Second Am. Compl. ¶ 114 & Ex. E; Donovan Decl. ¶¶ 28–29 & Ex. 4. The accusation and the restriction share the same unusual locus. A reader who knew of the restriction—and the Second Amended Complaint alleges that community members did—would understand the reference.

Edge also described the person as one with "the ability *to walk a fine line* keeping any real legal action unavailable." Second Am. Compl. ¶ 276. That describes an antagonist understood to be legally sophisticated. Plaintiff is a licensed attorney residing in the subdivision, and by June 2025 he had raised legal claims against the Association and its Board.

Against this, Edge dismisses paragraph 120 of the Second Amended Complaint—"These statements identify Plaintiff by context and were confirmed by community members as referring to Plaintiff"—as "nothing more than a conclusory statement." It is not. That community members understood the statements to refer to Plaintiff, and said so, is an allegation of fact.

Edge's own authority also identifies precisely what the Second Amended Complaint alleges. In *Stones River Motors*, the claim failed at summary judgment because the plaintiff offered no evidence of third-party understanding: "the plaintiffs should have introduced testimony from readers of the subject article at the time of publication to the effect that such readers had reason to know or understand that it was directed at" the plaintiff, and "[t]his was not done," because the only such proof came "from Mr. Snell himself." 651 S.W.2d at 718. The test is "whether a reasonable third party recipient of the defamatory communication would and did understand it as intended to refer to the plaintiff." *Id.* Paragraph 120 alleges that third-party understanding, and the record supplies circumstantial evidence of it. The contemporaneous exchange supports a reasonable inference that a reader connected Edge's accusations concerning

an unnamed resident with Plaintiff: without prompting, a former Treasurer of the Association, Mike Arone, contacted Plaintiff about Edge's removed security-guard post, described Edge as accusing a resident of threatening the Association, and supplied a screenshot taken from his own account bearing the caption "Comment as Mike Arone." Donovan Decl. ¶¶ 34–36 & Exs. 5–6. Plaintiff had not asked him about any post and did not know of one. *Id.* ¶ 34. That exchange concerned an earlier post Edge removed rather than the June 23 and June 24 statements themselves, and Plaintiff offers it as circumstantial evidence: it shows a reader of Edge's posts about an unnamed resident independently connecting them to Plaintiff. Unlike *Stones River Motors*, where the only proof of third-party understanding came from the plaintiff himself, the understanding here is evidenced by someone other than Plaintiff. It is reinforced by the contextual identification set out above, which does not depend on it.

The same case shows how identification by implication is established. The court there held that an inference of identification was available because the plaintiff dealership "was the only one in the Murfreesboro area that sold new and used Datsuns," so "a plain and ordinary reading might lead one to believe that the letter referred to" the plaintiff. *Id.* at 718. The court nevertheless affirmed judgment for the defendants on other grounds, *id.* at 721–23; its identification analysis is what bears here. A unique attribute shared by the accusation and the plaintiff supplies the reference. Here there are two: the sidewalk and the legal sophistication.

Edge's own authority confirms the point. *Steele* identified three omissions that doomed the complaint before it: there was "no allegation that the statement refers to the plaintiffs by reasonable implication," no allegation that the defendant "made the statement with knowledge of its falsity or defamatory nature as to the plaintiffs," and no allegation "that the statement was made 'of and concerning' the plaintiffs." The Second Amended Complaint supplies all three.

Paragraph 120 pleads identification by context and confirmation by community members. Paragraph 280 pleads knowledge of falsity or reckless disregard. Paragraph 277 pleads that the statements impute criminal conduct to Plaintiff. Under *Steele*, such a claim survives a motion to dismiss when the reasonable implication is alleged. It is alleged here.

**F. Falsity, fault, and injury are pleaded.**

Two distinct showings are at issue, and they are governed by different measures. To the extent Edge's petition operates as a motion to dismiss, the question is whether the Second Amended Complaint states a claim, and its allegations are taken as true. Fed. R. Civ. P. 12(b)(6). To the extent the Court reaches the Act's alternative standard, the question is whether Plaintiff has come forward with "enough evidence to allow the jury to rule in his favor," Tenn. Code Ann. § 20-17-105(b); *Charles*, 693 S.W.3d 262, on evidence viewed in the light most favorable to him. Plaintiff satisfies both. The paragraphs that follow identify, for each element, the allegation that carries it under Rule 12 and the sworn testimony and authenticated exhibit that carry it under § 20-17-105(b).

The statements accuse Plaintiff of stalking, threatening, and harassing residents and their children. Stalking is a criminal offense. Tenn. Code Ann. § 39-17-315. Accusations of "stalking," "threats," and being a "perpetrator" are verifiable assertions of fact, not opinion or rhetorical hyperbole. Second Am. Compl. ¶ 278. The statements are pleaded as false. Second Am. Compl. ¶¶ 278–79. On the alternative standard, falsity is established by sworn testimony: Plaintiff has never stalked, threatened, or harassed any resident, has never threatened, sought out, or attempted to speak with Edge's children, and has never been charged with or convicted of any such offense. Donovan Decl. ¶¶ 9–12. That no charge, arrest, or conviction has ever followed from the conduct Edge describes does not itself establish falsity, but it is consistent with that

testimony — and it underscores that the contrary materials Edge claims to hold, and has not produced, cannot resolve the question at this stage. Plaintiff pleads that Edge published the statements with knowledge of their falsity or reckless disregard for their truth, Second Am. Compl. ¶ 280; Donovan Decl. ¶¶ 18, 20 & Ex. 2, and that he suffered impairment of reputation and standing in the community, humiliation, and mental anguish, Second Am. Compl. ¶ 277. On the alternative standard, Plaintiff testifies that after learning of the statements he experienced humiliation and anxiety arising from knowing that residents of the neighborhood in which he lives and owns his home had been told that he stalked, threatened, and harassed residents and their children. Donovan Decl. ¶ 37.

To the extent Edge suggests that words such as "threaten," "stalk," and "perpetrator" are characterization rather than fact, Tennessee follows Restatement (Second) of Torts § 566: an expression of opinion is actionable where it "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Stones River Motors*, 651 S.W.2d at 720. Edge's petition supplies that implication in his own words. He tells this Court that he possesses "video and pictorial evidence" and "reports to law enforcement" substantiating the accusations, while producing none of it. Statements resting on undisclosed materials of that kind are what § 566 reaches. Edge's own assertion that the accusations rest on undisclosed videos, photographs, and reports supports treating them as factual claims capable of verification rather than protected rhetorical opinion.

The Supreme Court foreclosed the broader version of this defense in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), holding that there is no "wholesale defamation exemption for anything that might be labeled 'opinion,'" because "expressions of 'opinion' may often imply an assertion of objective fact." *Id.* at 18. "Even if the speaker states the facts upon which he bases

his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Id.* at 18–19. The accusation there was that a named person had committed perjury; the Court held it was "not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime," and was "sufficiently factual to be susceptible of being proved true or false." *Id.* at 21. It reversed a summary judgment entered for the speaker. The accusation here is that Plaintiff stalked, threatened and harassed residents and their children — conduct criminal under Tenn. Code Ann. § 39-17-315 — and it is verifiable by the same kind of objective proof.

This District applied that principle five months ago. Reading *Stones River Motors* together with *Milkovich*, the court in *Patriot Angels* explained that even where a characterization rests on disclosed, true, nondefamatory facts — the circumstance in which *Stones River Motors* protects it — it "may ultimately not be protected if the opinion/categorization simultaneously implies 'the allegation of undisclosed defamatory facts as the basis for the opinion,'" and that statements are not protected merely because they rest on *substantially* true facts: "the facts being commented upon have to be 'true and nondefamatory.'" Edge has disclosed no facts at all. He has told this Court instead that undisclosed videos, photographs and law-enforcement reports are the basis for the accusations. That is the situation the rule reaches, not the situation it protects.

Edge's answer is that he possesses proof to the contrary. He has produced none. On the procedure he has chosen, that assertion is neither admissible evidence under § 20-17-105(d) nor a permissible basis for decision under *Charles*, under which the prima facie showing is assessed in the light most favorable to Plaintiff, disregarding countervailing evidence.

**IV. FEES.**

Because the Act's procedures are unavailable in this Court, there can be no dismissal under the Act, and the mandatory award of Tenn. Code Ann. § 20-17-107(a) is therefore not triggered. If the Court instead treats the petition as a motion under Rule 12(b)(6), the Act supplies no fee entitlement at all.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Jeremy Edge's Petition to Dismiss Count VII (Doc. 36) and deny his request for attorney's fees and costs.

Respectfully submitted,

Kevin M. Donovan
6008 Christmas Drive
Nolensville, Tennessee 37135
(615) 428-9896
kevin.donovan@artofplanninglaw.com
Tennessee BPR No. 43740
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on the 11 day of September, 2026, the foregoing was submitted to the Clerk of Court for filing in the Court's CM/ECF system, which will send a notice of electronic filing to the following counsel of record, each of whom is a registered CM/ECF user; a courtesy copy was also transmitted by electronic mail:

Marielle Westerman, Esq.
Westerman Law, PLLC
725 Cool Springs Blvd, Ste. 600
Franklin, TN 37067
mwesterman@westerman.law
Counsel for Defendants Bent Creek Homeowners Association, Inc., Timmons Properties, Inc., Lynn Burka, Robert Steve Cody, Jeremy Edge, David Raissi, Jared Burke, Melissa Plank, Susannah Millar, and Tim Barry

Lauren Paxton Roberts, Esq.
Anna Kate Ferrell, Esq.
Stites & Harbison PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com; akferrell@stites.com
Counsel for Defendants Kaman & Cusimano, LLC, Scott D. Weiss, Kiel Kovalcik, and Daniel J. Miske

Dated: 9/11, 2026

Kevin M. Donovan
Plaintiff, Pro Se