**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE – NASHVILLE DIVISION**

| | |
|---|---|
| KEVIN M. DONOVAN,<br><br>Plaintiff,<br><br>v.<br><br>BENT CREEK HOMEOWNERS ASSOCIATION, INC., et al.,<br><br>Defendants. | CASE NO. 3:26-cv-00700<br><br>District Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill<br><br>JURY DEMAND |

**DEFENDANT JEREMY EDGE'S MOTION AND MEMORANDUM OF LAW TO DECLINE SUPPLEMENTAL JURISDICTION OVER COUNT VII PURSUANT TO 28 U.S.C. § 1367(c)**

Defendant Jeremy Edge ("Edge"), by and through undersigned counsel, respectfully moves this Court, pursuant to 28 U.S.C. § 1367(c)(1) and (c)(4), to decline to exercise supplemental jurisdiction over Count VII of Plaintiff's Second Amended Complaint (Doc. 29)—a Tennessee common-law claim for defamation asserted against Edge individually—and to dismiss Count VII without prejudice to its refiling in the courts of the State of Tennessee. This Motion is filed in addition to, and without waiver of, Edge's pending Petition to Dismiss Count VII under the Tennessee Public Participation Act (Doc. 36), and Edge respectfully requests that the Court resolve the threshold question presented here before reaching that Petition. Pursuant to Local Rule 7.01(a)(2), Edge's supporting memorandum of law is incorporated below. In support of this Motion, Edge states as follows:

## I. BACKGROUND

1. Plaintiff Kevin M. Donovan, an attorney licensed in Tennessee and Michigan who proceeds *pro se*, initiated this action on May 27, 2026, and filed the operative Second Amended Complaint (the "Complaint") on August 14, 2026. (Doc. 29.) The Complaint

runs seventy-nine pages and 379 numbered paragraphs, names fourteen Defendants, and asserts ten counts.

2. The Complaint's federal claims arise under the Fair Housing Act (Counts I and II), the Fair Debt Collection Practices Act (Count IV), and the Racketeer Influenced and Corrupt Organizations Act (Counts VIII and IX), together with a request for declaratory relief (Count X). Its state-law claims are for breach of the recorded covenants (Count III), violation of the Tennessee Consumer Protection Act (Count V), breach of fiduciary duty (Count VI), and defamation (Count VII). (Doc. 29 at 37–74.)

3. Plaintiff invokes federal-question jurisdiction under 28 U.S.C. § 1331 over the federal claims and supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claims. (Doc. 29, ¶¶ 27–28.) Plaintiff does not and could not invoke diversity jurisdiction: Plaintiff and Edge both reside in the Bent Creek subdivision in Nolensville, Williamson County, Tennessee. (*Id.* ¶¶ 5, 17.) Section 1367 is therefore the sole basis on which Count VII is before this Court.[1]

4. Count VII is asserted against Edge alone, "individually." (Doc. 29 at 55.) It rests on two statements Edge posted on June 23, 2025, in a Facebook group called "Bent Creek Neighborhood -Uncensored-," in a thread concerning the Association's decision to retain security. (*Id.* ¶¶ 118–119, 275–276; Doc. 30, Ex. Q.) Neither statement names Plaintiff. The first refers to "residents" who "threaten, stalk, and harass"; the second refers to "serious threats, stalking, attempts to engage with my children from the sidewalk while my kids were playing, and the ability of the perpetrator to walk a fine line keeping any real

---

[1] The Second Amended Complaint also invokes 42 U.S.C. § 3613(a)(1)(A) and 28 U.S.C. § 2201. (Doc. 29, ¶ 29 & Count X.) Neither supplies an independent basis for jurisdiction over a state-law defamation claim between two Tennessee citizens. The Declaratory Judgment Act is procedural and confers no jurisdiction of its own. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).

legal action unavailable." (Doc. 29, ¶¶ 275–276.) Plaintiff alleges the statements "identify Plaintiff by context," impute the crimes of stalking and making threats, and were published "with knowledge of their falsity or with reckless disregard for their truth." (*Id.* ¶¶ 120, 277–280.)

5. On August 31, 2026, Edge filed a Petition to Dismiss Count VII pursuant to the Tennessee Public Participation Act, Tenn. Code Ann. § 20-17-101 *et seq.* (the "TPPA"). (Doc. 36.) The Petition asserts that Edge's statements were made in connection with a matter of public concern—the safety and well-being of the Bent Creek community—and that Plaintiff cannot establish a *prima facie* case on the elements of publication, falsity, and identification. (*Id.* at 2–7.) The Petition remains pending.

6. Whether the TPPA's procedures may be applied at all in a federal court exercising supplemental jurisdiction is an open question. The United States Court of Appeals for the Sixth Circuit has not decided it. Judges of this District have concluded that the TPPA's burden-shifting and evidentiary provisions cannot be reconciled with the Federal Rules of Civil Procedure. *See Mucerino v. Martin*, No. 3:21-cv-00284 (M.D. Tenn. Nov. 30, 2021) (Trauger, J.) (striking TPPA petition); *Lampo Grp., LLC v. Paffrath*, No. 3:18-cv-01402 (M.D. Tenn. July 23, 2019) (Richardson, J.) (holding California's anti-SLAPP statute inapplicable in federal court and observing that the TPPA imposes a standard "different than that dictated by Federal Rules of Civil Procedure 8, 12, and 56"); *see also Hughes v. Gupta*, 613 F. Supp. 3d 1054 (W.D. Tenn. 2021) (denying TPPA petition). Meanwhile, the Tennessee Supreme Court has only recently begun to construe the Act, including in the homeowners-association context. *See Charles v. McQueen*, 693 S.W.3d 262 (Tenn. 2024); *Flade v. City of Shelbyville*, 699 S.W.3d 272 (Tenn. 2024).

## II. LEGAL STANDARD

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Congress codified that discretion in 28 U.S.C. § 1367. Subsection (a) extends supplemental jurisdiction to state-law claims that "form part of the same case or controversy" as the claims within the Court's original jurisdiction. Subsection (c) then provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The statute operates claim by claim: a court may decline jurisdiction over "a claim" that fits one of the enumerated categories while retaining the balance of the action. *Id.*; *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997).

Once a claim falls within one of the four categories, the Court weighs "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord City of Chicago*, 522 U.S. at 173; *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010). That inquiry is to be made "in each case, and at every stage of the litigation." *Cohill*, 484 U.S. at 350. District courts have "broad discretion" in performing it, *Gamel*, 625 F.3d at 951, and the Sixth Circuit reviews the resulting decision only for abuse of that discretion. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210–11 (6th Cir. 2004); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). Throughout, the Court is guided by *Gibbs*' instruction that "[n]eedless decisions

of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726.[2]

## III. ARGUMENT

### A. Count VII Raises Novel and Complex Issues of Tennessee Law. 28 U.S.C. § 1367(c)(1).

Count VII cannot be adjudicated in this forum without the Court first resolving an unsettled question about whether Tennessee's chosen procedural framework for defamation suits arising from protected speech governs at all, and then—whichever way that question is resolved—applying substantive Tennessee defamation and TPPA principles that Tennessee's appellate courts are still in the early stages of defining. Each layer independently satisfies § 1367(c)(1). Together, they present precisely the situation in which a federal court should leave a state-law claim to the state courts.

#### 1. The TPPA and the unsettled question of its application in federal court.

The General Assembly enacted the TPPA in 2019 "to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. To achieve that balance, the Act does not merely restate the elements of defamation; it constructs an integrated procedural and remedial scheme for testing speech-based claims at the threshold. A defendant sued over the exercise of the right of free speech may petition for dismissal. *Id.* § 20-

---

[2] Edge does not concede that Count VII satisfies § 1367(a). Whether Plaintiff engaged in threatening or stalking conduct toward Board members and their families, whether readers of a neighborhood Facebook group understood two unnamed references to be about Plaintiff, and whether Plaintiff's reputation was thereby injured are facts that bear on no federal claim in this case. The Court need not resolve that question, however, because even assuming Count VII falls within § 1367(a), the Court should decline to exercise jurisdiction over it under § 1367(c).

17-104(a). Upon filing, "[a]ll discovery in the legal action is stayed." *Id.* § 20-17-104(d). If the petitioner makes a *prima facie* showing that the action relates to protected expression, "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim." *Id.* § 20-17-105(a)–(b). The court "shall" also dismiss if the petitioner "establishes a valid defense." *Id.* § 20-17-105(c). The court "may base its decision on supporting and opposing sworn affidavits stating admissible evidence," *id.* § 20-17-105(d), a dismissal is with prejudice, *id.* § 20-17-105(e), the ruling is immediately appealable as of right, *id.* § 20-17-106, and a prevailing petitioner "shall" recover costs, reasonable attorney's fees, and, where warranted, sanctions. *Id.* § 20-17-107(a).

Whether that scheme may be applied by a federal court sitting in supplemental jurisdiction is the subject of an acknowledged and deepening split among the circuits. Five circuits have held that materially similar anti-SLAPP procedures conflict with Federal Rules of Civil Procedure 12 and 56 and therefore cannot be applied in federal court; two have held the opposite.[3] The Sixth Circuit has not spoken. Within this District, Judge Richardson has held that California's anti-SLAPP statute cannot apply in federal court and has noted that the TPPA's "prima facie case" requirement is "different than that dictated by Federal Rules of Civil Procedure 8, 12, and 56," *Lampo Grp.*, No. 3:18-cv-01402, slip op. (M.D. Tenn. July 23, 2019), and Judge Trauger has struck a TPPA petition outright, reasoning that "[i]f the court were to resolve the plaintiffs' claims pursuant to the procedures set forth in the TPPA, it would be adjudicating those claims in a manner

[3] See *Klocke v. Watson*, 936 F.3d 240, 244–49 (5th Cir. 2019) (Texas anti-SLAPP statute inapplicable in federal court); *La Liberte v. Reid*, 966 F.3d 79, 86–88 (2d Cir. 2020) (California statute inapplicable); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349–57 (11th Cir. 2018) (Georgia statute inapplicable); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333–37 (D.C. Cir. 2015) (D.C. statute inapplicable); *Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 731–32 (7th Cir. 2015) (declining to apply Washington statute). *But see United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–73 (9th Cir. 1999) (applying California statute); *Godin v. Schencks*, 629 F.3d 79, 86–92 (1st Cir. 2010) (applying Maine statute); *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140–46 (9th Cir. 2022) (adhering to *Newsham* while acknowledging the split).

not contemplated or authorized by the Federal Rules." *Mucerino*, No. 3:21-cv-00284, slip op. (M.D. Tenn. Nov. 30, 2021). Those decisions are thoughtful, but they are not binding on this Court, they have not been reviewed by the Sixth Circuit, and they leave open a series of further questions—including whether the Act's mandatory fee-shifting provision, § 20-17-107, is substantive and thus applicable even if its dismissal procedure is not.[4]

The practical consequence is stark. If this Court retains Count VII and follows *Mucerino*, then Edge—a Tennessee resident sued by a Tennessee resident, on a Tennessee cause of action, over speech in a Tennessee neighborhood about the governance of a Tennessee homeowners association—will be deprived of every protection the General Assembly enacted for exactly this kind of suit: the automatic discovery stay, the threshold evidentiary hearing on sworn proof, the burden on Plaintiff to come forward with evidence rather than allegations, the mandatory fee award, and the right of immediate appeal. He will be so deprived not because Tennessee law does not protect him, but solely because Plaintiff elected to append his defamation claim to a federal complaint. Nothing in § 1367 requires that result, and § 1367(c)(1) exists to permit the Court to avoid it. Where, as here, a state-law claim cannot be resolved without the federal court either (a) predicting how the Sixth Circuit will resolve an open *Erie* question about a state statute, or (b) applying that statute's substantive provisions stripped of the procedural framework the legislature built around them, the claim "raises a novel or complex issue of State law" within the plain meaning of § 1367(c)(1).

[4] Even courts that decline to apply an anti-SLAPP statute's dismissal procedure have divided over whether its fee-shifting provision is "substantive" and therefore applicable in federal court. *Compare Godin*, 629 F.3d at 89–92, *with Abbas*, 783 F.3d at 1337 n.5. A federal court retaining Count VII would thus be required to decide not one but a series of unsettled *Erie* questions about a Tennessee statute—questions a Tennessee court would never confront.

### 2. The substantive Tennessee-law questions embedded in Count VII are themselves novel and evolving.

Even setting the *Erie* question aside, the merits of Count VII turn on questions of Tennessee law that the Tennessee courts are actively working out and on which a federal court would be writing on a nearly blank slate. The Tennessee Supreme Court issued its first substantive construction of the TPPA in July 2024 in a case arising, as this one does, from a homeowners-association dispute. *Charles v. McQueen*, 693 S.W.3d 262 (Tenn. 2024) (addressing limited-purpose public-figure status and the meaning of a "prima facie case" under § 20-17-105 in a suit by an association president over a resident's online review). It followed three months later with *Flade v. City of Shelbyville*, 699 S.W.3d 272 (Tenn. 2024). The Court of Appeals' decisions construing the Act's "matter of public concern" definition—including whether a homeowners-association neighborhood implicates "community well-being" under § 20-17-103—date only from 2021 and 2022. *See Doe v. Roe*, 638 S.W.3d 614 (Tenn. Ct. App. 2021); *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651 (Tenn. Ct. App. 2021); *Charles v. McQueen*, No. M2021-00878-COA-R3-CV (Tenn. Ct. App. Sept. 28, 2022), *rev'd in part*, 693 S.W.3d 262. The doctrine is, in a word, new.

The common-law questions are no more settled. Count VII will require a court to decide (i) whether statements exchanged among members of a homeowners association in a members-only Facebook group are "published" to third parties or instead fall within the qualified privilege Tennessee extends to communications among persons sharing a common interest (*see* Doc. 36 at 5–6); (ii) whether two statements that name no one and refer to "residents" in the plural and to "the perpetrator" are "of and concerning" a particular plaintiff by "context," as Plaintiff alleges (Doc. 29, ¶ 120); and (iii) whether characterizations offered in a heated online debate about neighborhood

security are actionable statements of fact or protected opinion and rhetorical hyperbole. Each of those questions arises at the intersection of traditional Tennessee defamation doctrine and the still-developing law governing speech on private social-media platforms. Tennessee's courts have a paramount interest in answering them for Tennessee's communities, and this Court would gain nothing but risk by answering them first. *See Gibbs*, 383 U.S. at 726; *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (federal courts should be "extremely cautious about adopting substantive innovation in state law") (internal quotation omitted).

### B. Judicial Economy, Convenience, Fairness, and Comity All Favor Declining Jurisdiction.

Because Count VII falls squarely within § 1367(c)(1), the Court proceeds to the *Cohill* factors. Each points the same direction.

**Judicial economy.** This case is at the pleading stage. No scheduling order has entered, no discovery has been taken, and the Court has invested no resources in the merits of Count VII beyond receiving Edge's Petition. *Cf. Musson Theatrical*, 89 F.3d at 1255 (economy weighs against retention where "the district court had not yet invested significant resources" in the state claims). More fundamentally, Count VII is a self-contained dispute that shares almost no proof with the federal claims. The Fair Housing Act, FDCPA, and RICO counts concern the Association's fining authority, its accommodation process, and its collection communications. Count VII, by contrast, will require litigation of whether Plaintiff in fact engaged in threatening or stalking conduct toward Board members and their families; what the members of a private Facebook group understood two unnamed references to mean; whether a qualified privilege attached and, if so, whether it was abused; and what injury Plaintiff's reputation sustained. None of that evidence is relevant to any federal claim. Plaintiff does list Edge's June 2025 posts among

the acts he characterizes as retaliatory under Count II (Doc. 29, ¶ 216(e)), but a retaliation claim turns on protected activity, adverse action, and causal motive—not on the truth of the statements or the reputational harm they caused. Retaining Count VII would therefore graft a separate mini-trial onto an already sprawling case, not streamline it.

**Convenience.** Plaintiff and Edge live in the same subdivision in Williamson County. (Doc. 29, ¶¶ 5, 17.) The other members of the Facebook group—the only witnesses to what the statements were understood to mean—are their neighbors. The Circuit Court for Williamson County sits in Franklin, minutes from Bent Creek. A state forum is at least as convenient as this one for every person with knowledge of Count VII.

**Fairness.** Plaintiff will suffer no prejudice from dismissal without prejudice. Section 1367(d) tolls the limitations period on any claim dismissed under § 1367(c) "while the claim is pending and for a period of 30 days after it is dismissed," 28 U.S.C. § 1367(d), and the Supreme Court has confirmed that this provision stops the limitations clock for the entire period the claim was pending in federal court. *Artis v. District of Columbia*, 583 U.S. 71, 74–75 (2018); *see also Jinks v. Richland County*, 538 U.S. 456, 459–65 (2003) (upholding § 1367(d)).[5] Plaintiff, a member of the Tennessee bar, may refile Count VII in the Circuit Court for Williamson County and litigate it under the full body of Tennessee law—including the TPPA—that governs it. Edge, on the other hand, faces concrete prejudice if the claim remains here. As set out above, he stands to lose the discovery stay, the threshold evidentiary hearing, the mandatory fee award, and the right of interlocutory appeal that Tennessee affords every defendant sued over protected speech. He also loses the ability to have his sworn evidence of the statements' truth considered at the

---

[5] Tenn. Code Ann. § 28-1-105(a) independently permits a plaintiff whose action is dismissed on grounds "not concluding the plaintiff's right of action" to commence a new action within one year. Plaintiff's ability to pursue Count VII in state court is therefore doubly protected.

threshold, as the TPPA expressly permits, Tenn. Code Ann. § 20-17-105(d), because in this forum such evidence could be reached only by converting his motion to one for summary judgment after discovery. Fairness does not permit a plaintiff's choice of forum to strip a defendant of state-created protections on a pure state-law claim when the plaintiff has an equally available forum in which those protections indisputably apply.

**Comity.** Tennessee has declared, by statute, a strong public policy in favor of the early and inexpensive termination of suits that target protected speech on matters of public concern, and it has assigned the development of that policy to its own courts through a mandatory right of immediate appeal. Tenn. Code Ann. §§ 20-17-102, -106. The Tennessee Supreme Court has just begun that work in the homeowners-association setting. *Charles*, 693 S.W.3d 262. Respect for "the rightful independence of the state governments" and for Tennessee's "surer-footed reading" of its own law, *Gibbs*, 383 U.S. at 726 (quotation omitted), counsels that this Court leave Count VII to the courts the General Assembly designated to hear it.

### C. Alternatively, Exceptional Circumstances and Compelling Reasons Support Declining Jurisdiction. 28 U.S.C. § 1367(c)(4).

Should the Court conclude that Count VII does not fit within § 1367(c)(1), the same considerations supply "compelling reasons" under § 1367(c)(4). It is genuinely exceptional for the exercise of supplemental jurisdiction to threaten the wholesale nullification of a state's anti-SLAPP protections on a state-law claim between two citizens of that state—protections that go to the manner in which the claim is tested, the burden the plaintiff must carry, the availability of discovery, the finality of dismissal, and the allocation of fees. That threat is not speculative here; it is the very outcome judges of this District have reached in *Mucerino* and *Lampo*. Where retaining a claim would work so profound a change in the parties' substantive positions, without any

countervailing federal interest, declining jurisdiction is the course "best serv[ing] the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Cohill*, 484 U.S. at 357.

### D. Declining Jurisdiction Over Count VII Leaves the Remainder of the Action Undisturbed.

Section 1367(c) authorizes the Court to decline jurisdiction over "a claim." The relief Edge seeks is correspondingly narrow. Counts II, VI, and IX—the other counts in which Edge is named—and every count against every other Defendant remain before the Court, and nothing in this Motion affects them. Dismissal of Count VII will simply return a single, severable state-law claim to the state courts, where it belongs.[6]

## IV. RELATIONSHIP TO THE PENDING TPPA PETITION (DOC. 36)

Whether the Court will exercise jurisdiction over Count VII is logically antecedent to how the Court would adjudicate it. Edge therefore respectfully requests that the Court take up this Motion first. If the Court declines supplemental jurisdiction, Edge's TPPA Petition (Doc. 36) may be denied as moot, without prejudice to its renewal in state court upon any refiling of Count VII. If the Court instead elects to retain Count VII, Edge requests that the Court proceed to rule on the Petition, and Edge expressly preserves every argument made therein, including his position that the TPPA's substantive protections and fee-shifting provision apply in this Court.

---

[6] A request that the Court decline supplemental jurisdiction is not a Rule 12(b) defense subject to the consolidation and waiver provisions of Rule 12(g)–(h). Section 1367(c) confers a discretion the Court may exercise on its own motion "at every stage of the litigation," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), and the filing of Edge's TPPA Petition (Doc. 36) therefore does not bar this Motion. Edge nonetheless files it promptly, before any responsive pleading on Count VII and before any discovery, so that the Court may address the threshold question at the earliest opportunity.

## V. CONCLUSION

For the foregoing reasons, Defendant Jeremy Edge respectfully requests that the Court enter an order: (1) declining to exercise supplemental jurisdiction over Count VII of the Second Amended Complaint pursuant to 28 U.S.C. § 1367(c)(1) and, alternatively, § 1367(c)(4); (2) dismissing Count VII without prejudice to its refiling in the courts of the State of Tennessee; (3) denying Edge's Petition to Dismiss under the Tennessee Public Participation Act (Doc. 36) as moot, without prejudice to its renewal in state court; or, in the alternative, (4) if the Court retains Count VII, proceeding to adjudicate the Petition (Doc. 36); and (5) granting such other and further relief as the Court deems just.

## CERTIFICATE OF ATTEMPTED CONFERRAL

Although Local Rule 7.01(a)(1) applies by its terms only in cases in which all parties are represented by counsel, undersigned counsel states that on September 18, 2026, she attempted to confer with Plaintiff, who proceeds pro se, by electronic mail sent to the address reflected on the docket, regarding the relief requested in this Motion. Plaintiff has not responded as of the date of filing. Counsel is therefore unable to state Plaintiff's position on the relief requested, and the Motion is presumed to be opposed.

Respectfully submitted,

/s/ Marielle Westerman, Esq.
Marielle Westerman, Esquire
BPR No. 040074
Westerman Law, PLLC
725 Cool Springs Blvd, Ste. 600
Franklin, TN 37067
Telephone No.: (629) 256-6179
Primary Email: mwesterman@westerman.law
*Counsel for Defendant Jeremy Edge*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2026, I electronically filed the foregoing Motion and Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record who are registered CM/ECF users. I further certify that a copy of the foregoing was served by U.S. Mail, postage prepaid, [and by electronic mail,] upon the *pro se* Plaintiff, Kevin M. Donovan, 6008 Christmas Drive, Nolensville, Tennessee 37135.

/s/ Marielle Westerman, Esq.
Marielle Westerman, Esquire
BPR No. 040074
Westerman Law, PLLC
725 Cool Springs Blvd, Ste. 600
Franklin, TN 37067
Telephone No.: (629) 256-6179
Primary Email: mwesterman@westerman.law